# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DANIEL LEWIS LEE                     :
Register Number 21303-009            :
U.S. Penitentiary Terre Haute        :
Terre Haute, IN 47802                :
                                     :
          Plaintiff,                 :
                                     :
     v.                              :     Civil Action No. 1:19-cv-03611
                                     :
WILLIAM P. BARR                      :
Attorney General                     :
U.S. Department of Justice           :     EXECUTION SCHEDULED FOR
950 Pennsylvania Avenue, NW          :     DECEMBER 9, 2019 AT 8:00AM EST
Washington, DC 20530;                :
                                     :
JEFFREY A. ROSEN                     :
Deputy Attorney General              :
U.S. Department of Justice           :
950 Pennsylvania Avenue, NW          :
Washington, DC 20530;                :
                                     :
ROSALIND SARGENT-BURNS               :
Acting Pardon Attorney               :
Office of the Pardon Attorney        :
950 Pennsylvania Avenue, NW          :
Washington, DC 20530;                :
                                     :
KATHLEEN HAWK SAWYER                  :
Director                             :
Federal Bureau of Prisons            :
U.S. Department of Justice           :
320 First St., NW                    :
Washington, DC 20534;                :
                                     :
JEFFREY E. KRUEGER                    :
Regional Director                    :
Federal Bureau of Prisons            :
North Central Region                 :
U.S. Department of Justice           :
400 State Avenue, Suite 800          :
Kansas City, KS 66101;               :
                                     :

1

and                                      :
                                         :
**T.J. WATSON**                          :
**Complex Warden**                       :
**U.S. Penitentiary Terre Haute**        :
**4700 Bureau Road South**               :
**Terre Haute, IN 47802,**               :
                                         :
**In their official capacities; and,**   :
                                         :
**U.S. Department of Justice**           :
**950 Pennsylvania Avenue, NW**          :
**Washington, DC 20530**                 :
                                         :
**Federal Bureau of Prisons**            :
**U.S. Department of Justice**           :
**320 First St., NW**                    :
**Washington, DC 20534**                 :
                                         :
**Office of the Pardon Attorney**        :
**950 Pennsylvania Avenue, NW**          :
**Washington, DC 20530;**                :
                                         :
            **Defendants.**              :

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

This memorandum is respectfully submitted in support of Plaintiff Daniel Lee's motion pursuant to Fed. R. Civ. P. 65 for entry of a Preliminary Injunction enjoining Defendants Attorney General William P. Barr; Deputy Attorney General Jeffrey A. Rosen; Acting Pardon Attorney Rosalind Sargent-Burns; Federal Bureau of Prisons Director Kathleen Hawk Sawyer; Federal Bureau of Prisons Regional Director Jeffrey E. Krueger; and United States Penitentiary Terre Haute, Indiana Complex Warden T.J. Watson, who are all being sued in their official capacities; the United States Department of Justice ("DOJ"); the Federal Bureau of Prisons ("BOP"); and the Office of the Pardon Attorney, from deliberately interfering with and obstructing Mr. Lee's ability to obtain and present favorable, material evidence in the executive

2

clemency process for individuals under a death sentence, in violation of his Fifth Amendment right to due process; and in violation of the First Amendment rights of correctional officers who wish to provide critical information in support of his pending clemency application but have been barred from doing so as a result of Defendants' actions and policies. Mr. Lee further moves to enjoin Defendants from carrying out his scheduled execution until he has had an opportunity to obtain and present this evidence. But for Defendants' actions and policies, favorable, material evidence available from members of the correctional staff at the United States Penitentiary in Terre Haute, Indiana (USP Terre Haute), where Mr. Lee is incarcerated, could be obtained and presented in support of his petition for commutation of his sentence. The evidence, among other things, directly refutes false allegations made by the prosecution at his 1999 capital sentencing proceeding about his "future dangerousness" and propensity for violence in a prison setting. The motion is supported by facts contained in Mr. Lee's Complaint for declaratory and injunctive relief filed on December 2, 2019, *see* Complaint, *Lee v. Barr, et al.,* 1:19-cv-03611, Dkt. 1 (D. D.C.); and this accompanying memorandum in support of this motion and Exhibits, filed on this date.

## I.       Factual Background

Mr. Lee is scheduled to be executed on December 9, 2019, the first federal execution in over sixteen years. *See* Complaint, ¶15. Although his execution has been enjoined by this Court in a separate proceeding,[1] the Government is seeking to stay or vacate that injunction in the U.S.

---

[1] *See* Order Granting Motion for Preliminary Injunction, *In re In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-00145, Dkt. 51 (D. D.C. Nov. 20, 2019). After a panel of the Court of Appeals for the District of Columbia entered an order on December 2, 2019 denying the Government's motion to stay or vacate the injunction, the Government filed an application to stay or vacate the injunction in the Supreme Court on the same day. *See* Order, *In re In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-5322, Doc. 1818236 (D.C. Cir. Dec. 2, 2019); *see* Application for a Stay or

Supreme Court. Should the Government succeed in having the injunction lifted, Mr. Lee's execution will proceed as scheduled. He has no remedy at law for the constitutional violations for which he seeks redress, and without the requested relief, he faces the prospect of being executed with those violations standing uncorrected.

Pursuant to the procedures developed for the public and individuals in federal custody to seek relief from the President in the form of executive clemency, and those specific procedures designed for death-sentenced prisoners seeking such relief, Mr. Lee has filed an application for commutation of his sentence with Defendant Office of the Pardon Attorney, which is part of the cabinet-level agency, Defendant U.S. Department of Justice ("DOJ"). *See* Complaint, ¶¶ 16-19; 33-44; *see also,* 28 C.F.R. § 1.1-1.11. His clemency application remains pending as of the date of this filing.

These procedures have been developed, by necessity, over the course of American history as the administrative system generally, and the federal justice system more specifically, have grown in size and complexity.[2] *See* Complaint, ¶¶ 33-44. They have also notably, for more than a half-century, been described in federal regulations formally published for the public,[3] and

---

Vacatur of the Injunction, *In re In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, 19A-615 (filed Dec. 2, 2019). That application remains pending in the Supreme Court as of the date of this filing.

[2] *See e.g.,* Exh. 1, Alex R. Boteler, Clerk of Pardons, Report of Pardon Bureau, U.S. Department of Justice Report to Select Committee of the Senate (April 1887), p. 1-3 (noting then-existing process for Clerk of Pardons' review and investigation of petitions, and describing need for additional staff to assist in handling overwhelming caseload); *see also, e.g.,* Exh. 2. Exec. Order, (June 16, 1893) (pursuant to order of President Cleveland, the review, investigation, and issuing of warrants in connection with petitions for commutation and pardons was consolidated within in the DOJ).

[3] *See* Exh. 3, Collected Clemency Rules, p. 4-9. The "Rules Governing Petitions for Executive Clemency" were first published to the Federal Register in 1962. *See* Complaint, ¶ 41. Prior to their formal publication, they contained a few of the features of the modern day regulations

include substantial requirements for members of the public and death-sentenced prisoners like Mr. Lee to meet, in order to have their petitions for executive clemency properly considered; they, moreover, as is apparent from the regulations, authorize various administrative officials within the DOJ to undertake certain duties in the clemency process, in order to ensure that the cases worthy of relief are before the President. *See* Complaint, ¶¶ 16-19; 33-44.

In the course of attempting to utilize these mandatory procedures and submit evidentiary support for the grounds lodged in his petition, Mr. Lee has learned that Defendant BOP's employees—members of the corrections staff at USP Terre Haute, where he is incarcerated in the Special Confinement Unit (SCU)[4] with other federally death-sentenced prisoners—have critical information they want to provide on behalf of Mr. Lee's commutation effort. *See* Complaint ¶¶ 20-26; *see also* Exh. 5, Declaration of George G. Kouros[5], ¶¶ 3-13 ("Kouros Declaration"). The information these staff members wish to share includes but also goes beyond both the run-of-the-mine positive character evidence typically marshaled by clemency petitioners and that which demonstrates his positive adjustment while in custody, a factor typically considered important for obtaining clemency.[6] The corrections officers' accounts and opinions,

---

pursuant to 28 C.F.R. § 1.1-1.11. *See,* Complaint, ¶ 39-40; *see also, e.g.,* Exh. 3, p. 1-3. After 1962, the rules were revised and amended periodically—the regulations setting forth procedures applicable to petitioners under death sentence went into effect in 2000. *See* 28 C.F.R. § 1.10; *see also* Complaint ¶ 41-42; *see also* Exh. 3, p. 4-9.

[4] *See* Exh. 4, Special Confinement Unit Institution Supplement.

[5] Mr. Kouros is one of Daniel Lee's attorneys.

[6] *See, e.g.,* Section 9-140.113 of the Justice Manual (Standards for Considering Commutation Petitions) (noting "demonstrated rehabilitation" while in custody among factors); *see also, e.g.,* Arkansas State Commutation Application (noting exemplary institutional adjustment among "Reasons for Requesting a Commutation") *available at* https://www.paroleboard.arkansas.gov/Websites/parole/images/CommutationApplication021909.pdf (last visited Dec. 5, 2019).

which in some instances are based on close to twenty years of daily interactions and close contact, offer proof—from uniquely positioned Government sources[7]—of one of the central arguments Mr. Lee has made about the worthiness of clemency relief in his case. *See* Complaint ¶¶ 17-19; 20-27; *see also* Kouros Declaration, ¶¶ 3-13. That is, their accounts and opinions powerfully and directly refute false allegations made by the prosecution at trial about Mr. Lee's "future dangerousness" and propensity for violence, which were used to secure his death sentence. *See id.*

When Mr. Lee sought to obtain this material evidentiary support from the corrections officers so that it could be presented to the administrative officials within the DOJ—the Office of the Pardon Attorney—who are tasked with taking such evidence in the clemency process and making favorable recommendations to the President regarding petitions filed with them, he encountered deliberate interference with and obstruction of his ability to do so.[8] *See* Complaint ¶¶ 27-32. The officials in the Office of the Pardon Attorney made clear during the proceeding, pursuant to 28 C.F.R. 1.10(c), at which Mr. Lee presented his case for clemency, that his alleged "future dangerousness," prison record and behavior were matters of grave concern to them; yet, the evidence—expressions of support containing detailed information from corrections officials

---

[7] Mr. Lee has presented evidence from other sources to the Office of the Pardon Attorney to debunk the "future dangerousness" allegations. *See* Complaint, ¶ 19; *see also, e.g.,* Exh. 6, Declaration of Kathleen Altman (Ms. Altman knew Mr. Lee prior to his arrest in the capital proceeding and described the circumstances in which he saved her son's life); *see also*, Exh. Declaration of Juror 336, ¶¶ 12-16 (a juror who was reluctant to believe Mr. Lee posed a continuing threat of violence, nonetheless sentenced him to death; the juror explained the prosecution's misleading presentation about Lee escaping culpability for a prior murder was important to the jury as a whole and ultimately swayed this juror's vote).

[8] *See* Exhibit attached to Exh. 5, Kouros Declaration (Redacted Email correspondence between Attorney Kouros and USP Terre Haute counsel Siereveld, p. 1-6).

who are particularly well-situated to speak on those matters—has effectively been precluded from consideration in the capital clemency process. *See* Complaint ¶ 30; *see also* Exh. 8, Declaration of Elizabeth Luck[9], ¶¶ 1-5.

Mr. Lee seeks immediate redress from this Court to prevent irreparable harm to him and to the USP Terre Haute correctional officers on behalf of whom he has third party standing to bring this lawsuit. Defendants' actions and policies barring him from access to this evidence violate his due process rights under the Fifth Amendment as well as the First Amendment rights of the correctional officers who wish to provide critical information in support of him in the clemency process but face the prospect of reprisals and other job-related harms for doing so. *See* Complaint ¶¶ 21, 45-64. These constitutional violations, the facts from which they arise, and the relief requested are inextricably intertwined. The relief sought is necessary and appropriate in order to allow Mr. Lee and the correctional officers to exercise their rights unencumbered by Defendants' actions and policies, while Mr. Lee utilizes the mandatory procedures created for pursuing capital clemency relief; and if his execution is allowed to proceed without his having been provided a fair and unobstructed clemency process, he will have been deprived of the Fifth Amendment due process rights to which he is entitled, and the First Amendment rights of the officers who wish to provide information in support of him in the clemency process will be meaningless and completely nullified. *See id.*

## I.   Argument

Courts consider four factors before granting a preliminary injunction: (1) the threat of irreparable injury to the plaintiff if an injunction is not granted; (2) the likelihood that other interested parties will suffer substantial harm if injunctive relief is granted; (3) the interests of the

---

[9] Ms. Luck is one of Mr. Lee's attorneys.

public; and (4) the likelihood of the plaintiff's eventual success on the merits. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). The application of these factors in Mr. Lee's case establishes the necessity for the requested relief.

### A.  Mr. Lee is Substantially Likely to Succeed on the Merits.

At this stage, Mr. Lee need only show a substantial likelihood of eventual success on the merits of his claims for relief, and the Court may issue the requested relief if he can meet that standard as to any one of his claims. Claim One and Claim Two of his Complaint arise under the Due Process Clause of the Fifth Amendment; Claim Three relies on the Free Speech Clause of the First Amendment. *See* Complaint ¶¶ 45-64.

### 1.  Defendants violated Mr. Lee's Fifth Amendment right to Due Process.

Mr. Lee raises two distinct but interrelated Fifth Amendment due process claims, and as to both, he can establish a substantial likelihood on the merits.

### a.  Deprivation of Fifth Amendment Right to Due Process—Defendants' Deliberate Interference with Mr. Lee's Ability to Obtain and Present Material Evidence from BOP Correctional Officers in Support of his Pending Petition for Clemency.

The Due Process Clause of the Fifth Amendment prohibits the Government from deliberately interfering with a witness's ability to speak with the representatives of a criminal defendant. The law on this matter is well-settled. *See, e.g., Gregory v. United States*, 369 F.2d 185, 187-89 (D.C. Cir. 1966); *United States v. Agostino*, 132 F.3d 1183, 1191 (7th Cir. 1991) ("clear showing that the government instructed the witness not to cooperate with the defendant" violates due process and requires reversal); *United States ex rel. Jones v. DeRobertis*, 766 F.2d 270, 273 (7th Cir. 1985) (right to due process violated "if the state artificially restricted the defendant's ability to obtain evidence" by directing witness not to speak with defense); *United States v. Long*, 449 F.2d 288, 295 (8th Cir. 1971) ("both sides have an equal right and should

8

have an equal opportunity to interview [witnesses].”); *United States v. Gonzalez*, 164 F.3d 1285, 1292 (10th Cir. 1999) (defendant has “a right to be free from prosecution interference with a witness’ freedom of choice about whether to talk to the defense”); *United States v. Walton*, 602 F.2d 1176, 1179-80 (4th Cir. 1979) (“A witness is not the exclusive property of either the government or a defendant; a defendant is entitled to have access to any prospective witness…”).

The Due Process Clause protections afforded to Mr. Lee extend beyond the trial proceeding. *See, e.g., Blackledge v. Perry*, 417 U.S. 21, 28-29 (1974) (due process prohibits prosecutorial retaliation for defendant’s decision to seek retrial); *North Carolina v. Pearce*, 395 U.S. 711 (1969) (due process prohibits judicial vindictiveness in resentencing after defendant prevailed on appeal); *Douglas v. Buder*, 412 U.S. 430, 432-33 (1973) (due process prohibits probation revocation absent violation of express or clearly implied condition of probation).

Importantly, the protections of the Due Process Clause apply to capital clemency proceedings like Mr. Lee’s and the Government is prohibited from arbitrarily or perniciously denying a death-sentenced prisoner access to its clemency process. *See Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 288-89 (1988) (O’Connor, J., concurring); *see also, Young v. Hayes*, 218 F.3d 850, 853 (8th Cir. 2000) (granting stay of execution and remanding case with looming execution date in light of state actor’s deliberate interference with petitioner’s ability to present evidence to Governor in support of clemency petition, which violated Due Process protections).

Like the death-sentenced petitioner in *Young*, Mr. Lee has encountered obstruction and deliberate interference by Government officials; those officials, all of whom are part of the DOJ, have, through their actions and agency policies, thwarted his ability to gather and present favorable, material evidence from important witnesses, USP Terre Haute correctional staff

9

members, that both supports his clemency application and directly and powerfully refutes the claim that he poses a "future danger." As demonstrated by the questions posed to Mr. Lee's counsel by officials in the Office of the Pardon Attorney—officials tasked with reviewing, investigating and deciding whether to make a favorable recommendation on his application—falsehoods about his propensity for violence both matter to key decision-makers in the clemency process and persist unchallenged as a direct result of deliberate interference in that process. *See* Complaint, ¶ 30. This critical point—that Defendants, Government actors who are themselves part of the prosecuting body, are obstructing his access to material evidence that powerfully undermines misrepresentations on which their case for death relies from being presented in the clemency process—sets Mr. Lee's case apart from other death-sentenced petitioners seeking to vindicate due process rights in the clemency context. *See, e.g, Gissendaner v. Comm., Ga. Dept. of Corrections*, 794 F.3d 1327 (11th Cir. 2015); *Baze v. Parker*, 632 F.3d 338 (6th Cir. 2011).

As a result of Defendants' deliberate interference, he, like the petitioner in *Young*, has been deprived of a meaningful opportunity to utilize procedures that he must comply with to pursue executive clemency relief, a fundamental protection afforded to him under the Fifth Amendment.

In light of the strength of his constitutional claim under the Fifth Amendment, Mr. Lee has met the threshold showing that establishes a substantial likelihood of success on the merits.

**b.    Deprivation of Fifth Amendment Right to Due Process—Defendants' Actions and Policies Stripped Mr. Lee of the Basic Procedural Safeguards He is Entitled to in Capital Clemency Proceedings.**

The Due Process Clause of the Fifth Amendment also guarantees that Mr. Lee be afforded basic procedural safeguards in clemency proceedings, where the Government has created specific procedures for petitioners to utilize in seeking clemency. *See Woodard*, 523 U.S.

10

at 288-89 (O'Connor, J., concurring); *see also, Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980) (where government creates discretionary system for jurors, defendant has liberty interest in exercise of that discretion); *see also Young*, 218 F.3d at 853.

As noted above, and in his Complaint, the review and consideration of requests for clemency were once an informal, ad hoc undertaking involving only the President and a few of his closest advisors. That is no longer the case: a modern day system has been developed over time, operating with the hallmarks of the administrative state—duties related to the handling, investigation, and consideration of clemency petitions, for example, have by and large been delegated to career officials in the Office of the Pardon Attorney, positions created and funded by Congress, and other legislatively created agencies within the DOJ bureaucracy; and formal agency regulations have been promulgated for the general public and these administrative officials to follow. *See* Complaint, ¶¶ 33-44. At this point, countless persons seeking justice through the different forms of clemency relief, including those potentially eligible for pardon, the almost two hundred thousand in federal custody,[10] and the sixty-two under federal death sentence,[11] who have no direct line to the President, are, thus, by legislative and executive branch design steered to and dependent on this firmly rooted administrative system. *Id.*

Facing what he and other stakeholders in his case believe is an unjust execution, *see* Complaint, ¶¶ 17-18, Mr. Lee has turned to the traditional "'fail safe' in our criminal justice system." *Herrera v. Collins*, 113 S.Ct. 853, 868 (1993). In order to obtain such relief, he has no

---

[10] *See* U.S. DEP'T OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, BUREAU OF JUSTICE STATISTICS, PRISONERS IN 2017 (April 2019), available at https://www.bjs.gov/content/pub/pdf/p17.pdf (last visited Dec. 5, 2019).

[11] Federal Capital Habeas Project, *Growth in Federal Death Row Population*, available at https://2255.capdefnet.org/General-Statistics/Growth-Federal-Death-Row-Population (last visited Dec. 5, 2019)

choice but to rely on the mandatory clemency process that the Government itself has created for review and consideration of clemency petitions for individuals under sentence of death. He has sought to follow the requirements, adhere to the deadlines, and utilize the procedures made available to him, pursuant to the regulations formally published for the public and prisoners alike, and those that apply in particular to capital cases; but the Defendants' interference in that process has prevented him from obtaining and presenting significant evidence in support of his petition. As a panel of the Eighth Circuit rightly noted in granting relief to a similarly situated clemency petitioner in *Young*, such "conduct on the part of a state official is fundamentally unfair. It unconscionably interferes with a process that the State itself has created. The Constitution of the United States does not require that a state have a clemency procedure, but, in our view, it does require that, if such a procedure is created, the state's own officials refrain from frustrating it by threatening the job of a witness." *Young*, 218 F.3d at 853.

On this Fifth Amendment ground, too, Mr. Lee has established a substantial likelihood of success on the merits.

**2. Deprivation of First Amendment Rights to Free Speech—Defendants' Actions and Policies Prohibit USP Terre Haute Correctional Staff Members from Exercising Their Rights to Provide Information in Support of Mr. Lee's Petition for Executive Clemency.**

Mr. Lee, in his Complaint, has invoked third party standing to assert a cognizable and compelling claim for relief under the Free Speech Clause of the First Amendment, on behalf of USP Terre Haute correctional staff who wish to provide statements in support of his clemency petition but who have been barred from doing so due to the Defendants' actions and policies. *See* Complaint ¶¶ 21, 58-64.

Because he has a life-or-death stake in the outcome of the capital clemency proceeding, and in light of the repercussions the corrections officers face for aggressively pursuing their

12

interest—apparently in violation of policies—in providing helpful information and/or statements in support of his application, Mr. Lee's claim may properly be considered. *See Powers v. Ohio*, 499 U.S. 400, 409-412 (1991) (criminal defendants have third party standing to assert the interests of minority jurors improperly removed by the state both because of the practical difficulties in expecting jurors to litigate the matter themselves, and because defendants' stake in the outcome of the proceeding assures they will litigate the claim aggressively); *see also Shimer v. Washington*, 100 F.3d 506, 508-09 (7th Cir. 1996) (clemency petitioner readily found to have third party standing to assert First Amendment violations on behalf of prison guards, where the guards indicated their willingness to write on petitioner's behalf but refrained from doing so in light of restrictive prison policy). Mr. Lee undoubtedly has a concrete interest in this litigation that is intertwined with his Fifth Amendment due process rights: the prohibition on correctional staff members' ability to provide information in support of him in the clemency process "will affect him adversely," and may "hinder the flow of information—a procedural defect which may act to his detriment." *Id.* at 508. The information the correctional staff members wish to share is "particularly pertinent," as it is they "who have daily contact with [Mr. Lee] and therefore can realistically assess his person." *Id.* The information they wish to provide, moreover, has enhanced importance because it refutes false and inflammatory allegations about his "future dangerousness."

The fact that the correctional officers may have elected to remain silent, rather than to speak and potentially lose their jobs or suffer other adverse consequences, does not affect justiciability. *See Steffel v. Thompson*, 415 U.S. 452, 458-59 (1974) (petitioner who elects to remain silent, rather than to speak and risk prosecution, may still challenge a statute under First Amendment; "it is not necessary that petitioner first expose himself to actual arrest or

13

prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights").

Public employees, like the USP Terre Haute correctional officers who wish to provide material information in support of Mr. Lee's clemency petition in their capacity as private citizens and outside their official job duties, have a constitutionally protected interest in freedom of speech that cannot be suppressed under threat of reprisal, discipline, or discharge. *See e.g., Garcetti v. Ceballos,* 126 S.Ct. 1951, 1958 (2006) ("The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens"); *Pickering v. Board of Education*, 391 U.S. 563, 574 (1968) (noting that "it is apparent that the threat of dismissal from public employment is…a potent means of inhibiting speech.").

The USP Terre Haute corrections officers' prohibited speech also clearly addresses a matter of public concern that outweighs their employer's interests here: it relates to the Government wielding its awesome power to execute Mr. Lee—notably what could be the first execution by the Federal Government in over sixteen years—despite grave constitutional violations and serious allegations of official misconduct; and their ability to speak as private citizens to administrative officials involved in the exercise of the "'fail safe'" remedy of clemency, *see Herrera*, 113 S.Ct. at 868, and provide an accurate picture of Mr. Lee's good character and behavior in prison, surely outweighs the interest of their employer "in promoting efficiency of the public services it performs through its employees." *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968); *see also Connick v. Myers*, 461 U.S. 138, 147-48 (1983); *Garcetti*, 126 S.Ct. at 1956-59; *Eberhardt v. O'Malley*, 17 F.3d 1023, 1026 (7th Cir. 1994) ("The greater the potential social, as distinct from purely private, significance of the employee's

14

speech, the less likely is the employer to be justified in seeking to punish or suppress it."). Notably, courts around the country have recognized that statements on equally or less pressing matters occupy "the highest rung of hierarchy of First Amendment values." *Connick*, 461 U.S. at 145; *see Barnard v. Jackson County, Mo.*, 43 F.3d 1218, 1225 (8th Cir.), *cert denied*, 516 U.S. 808 (1995) (collecting cases); *see, e.g., Buzek v. County of Saunders*, 972 F.2d 992, 995 (8th Cir. 1992) (letter written voluntarily by police officer on defendant's behalf at sentencing was a matter of public concern).

In light of the above, Mr. Lee has demonstrated a strong likelihood of success on the merits.

### B. Mr. Lee, and the Correctional Officers he has Sued on Behalf of, Will Suffer Irreparable Harm Unless the Preliminary Injunction is Issued.

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." 11 Wright & Miller, *Federal Practice and Procedure*: Civil § 2948. When the deprivation of a constitutionally protected right is involved, no further showing of irreparable injury should be required. *Deerfield Med. Center v. City of Deerfiend*, 661 F.2d 328, 338 (5th Cir. 1981) (determination that the constitutional right to privacy was either threatened or in fact being impaired "mandates a finding of irreparable injury"); *see also, Vitek v. Jones*, 445 U.S. 480, 486 (1979) (while prisoner was "under threat" of being transferred to a mental hospital in the future, his challenge to procedures governing transfer was not moot).

Although no further showing of irreparable injury may be required, the gravity of harm here, if the requested relief is not granted, bears mention—it is no less than the irreversible taking of Mr. Lee's life by the Government, without his ever having had a meaningful

15

opportunity to pursue the clemency process or present the evidence from corrections officers supporting his petition, which is material to a central issue in his case. For this reason, his injury will undoubtedly be irreparable. *See*, *e.g., Wainright v. Booker*, 473 U.S. 935, 935 n.1 (1985) (Powell, J., concurring in decision to vacate stay of execution) ("The third requirement—that irreparable harm will result if a stay is not granted—is necessarily present in capital cases."); *Evans v. Bennett*, 440 U.S. 1301, 1306 (1979) (granting stay of execution in light of the "obviously irreversible nature of the death penalty"); *Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995) (in acknowledging that "[t]here can be no doubt that a defendant facing the death penalty at the hands of the state faces irreparable injury," court notes importance of "substantial grounds" upon which relief may be granted). Mr. Lee's harm is thus imminent and would be beyond remediation if injunctive relief did not issue.

The correctional officers, too, will suffer irreparable harm, if injunctive relief is denied. Their paramount free speech rights, to speak on Mr. Lee's behalf, and his right to have the critical information they possess meaningfully presented in his clemency process are inextricably intertwined. If not enjoined, the Defendants would irreversibly and completely extinguish those rights by executing him. *See also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably causes irreparable injury").

### C. The Irreparable Injury That Mr. Lee and the Correctional Officers Will Suffer if the Injunction is not Granted Outweighs Any Harm to Defendants Occasioned by an Injunction.

Mr. Lee cannot identify any substantial harm that would be suffered by Defendants by an injunction in these circumstances, where he seeks a meaningful opportunity to present all relevant evidence in his clemency effort before he is executed. The Defendants' interest in

16

carrying out the execution of Mr. Lee before he can fully utilize the capital clemency process, free from Defendants' deliberate interference in that process, and before he is able to gather and present essential information from the correctional officers to the Office of the Pardon Attorney, does not constitute "substantial harm."

Nor do Defendants have a claim to a truncated process based on the interest of the family of the victims or other stakeholders in this case. The extraordinary circumstances of Mr. Lee's case weigh in favor of an injunction. As noted previously and in his Complaint, the victims' surviving family members,[12] the judge who presided at trial and sentenced Mr. Lee to death,[13] and the lead trial prosecutor[14]—the most important public and private stakeholders in this case— all oppose his execution and have expressed support for his clemency application. *See* Complaint, ¶ 17.

Should the Defendants cite to the logistical steps they may have already undertaken toward executing Mr. Lee, those, first, pale in comparison to the irreparable injury to Mr. Lee, and his and the correctional officers' important constitutional rights, and, moreover, can be ceased, if needed, to prevent harm.

Finally, to the extent that Defendants assert harm to their penological interests in operating safe and secure prisons if the Court enjoins them to permit the correctional officers' to exercise their free speech rights in connection with Mr. Lee's clemency process, that harm is

---

[12] *See, e.g.,* Exh. 9, Letter of Victims' family member #1; Exh. 10, Letter of Victims' family member #2; *see also*, Earlene Peterson, et. al., *Attorney General William Barr Claims This Execution Is For Us—But We Don't Want It,* Newsweek, (Dec. 5, 2019, https://www.newsweek.com/william-barr-wants-federal-execution-victim-families-not-us-1475764).
.

[13] *See* Exh. 11, Judge Eisele letter to AG Holder and US Atty Thyer.

[14] *See* Exh. 12, Letter of AUSA Stripling to AG Holder and US Atty Thyer.

certainly outweighed by the injury Mr. Lee would suffer if he were executed despite the

deprivation of his due process rights; and, notably, the prison employees' right to speak on

matters of grave public concern, as is the case here, outweighs Defendants' interest in promoting

workplace efficiency. *See Pickering*, 391 U.S. at 570-73; *see also, Shimer*, 100 F.3d at 509-10

(where Defendants' asserted existence of various penological interests, court, refusing to take

such claims at face value, remanded case for further factual findings regarding those assertions).

As such, the balance of harms tips overwhelmingly in favor of Mr. Lee and the

correctional officers.

### D.  Issuance of the Preliminary Injunction Would Serve the Public Interest.

The public interest also weighs in favor of an injunction. There is no public interest in an

unconstitutional execution, and here important due process and free speech rights are at stake.

Rather, injunctive relief would vindicate the public's interest in making sure that the Federal

Government does not violate the U.S. Constitution.

Moreover, clemency is an integral part of the criminal justice system in which the public

has an undoubted interest. As the Supreme Court noted in *Herrera*, "[c]lemency is deeply rooted

in our Anglo-American tradition of law, and is the historic remedy for preventing miscarriages of

justice where judicial process has been exhausted." *Id.* at 411-12 (footnote omitted).

To the extent that the Defendants assert that the public has an interest in executions being

carried out, as noted above, Mr. Lee seeks injunctive relief only to have a meaningful

opportunity to pursue the clemency process, and present material evidence from key witnesses,

unencumbered by Defendants' deliberate interference. *See e.g., Harris v. Johnson*, 323 F. Supp.

2d 797, 810 (S.D. Tex. 2004); *see also Cooey v. Taft*, 430 F. Supp. 2d 702, 708 (S.D. Ohio 2006)

("the public interest only is served by enforcing constitutional rights and by the prompt and

accurate resolution of disputes concerning those constitutional rights. By comparison, the public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights.") Here, the public interest would not be served by rushing to judgment where such extraordinary circumstances and equities exist. Moreover, as noted above, this is a case where the Government's assertion of the public interest in carrying out his execution is, in fact, relatively underwhelming in light of the views expressed by the key public and private stakeholders in the case. Under these circumstances, pressing urgently toward an execution date cannot be said to be strongly in the public's interest.

In light of the above, it seems implausible to suggest that the requested relief will not serve the public interest.

### Conclusion

Mr. Lee has demonstrated that all of the relevant factors weigh heavily in favor of a preliminary injunction. He has established a substantial likelihood of success on the merits. Any alleged harm to the Defendants cannot outweigh the irreparable harm to Mr. Lee if he is executed before this case can run its course; nor can it outweigh the harm to him or the USP Terre Haute correctional officers, if Defendants are allowed to continue deliberately interfering with his ability to gather material evidence from them in support of his clemency petition. These circumstances call for the intervention of this Court, and the relief requested should be granted.

For the foregoing reasons, Mr. Lee respectfully requests that this Court issue a preliminary injunction to prevent ongoing harm to his and the correctional officers' constitutional rights; and enjoin Defendants from deliberately interfering with and obstructing his ability to obtain and present favorable, material evidence in the executive clemency process; from infringing upon the free speech rights of the correctional officers; and from subjecting the

correctional officers to reprisal for exercising those rights. Should the Government succeed in vacating the preliminary injunction that is currently in place, *see supra* n.1, Mr. Lee requests that this Court enjoin Defendants from executing him so that he has an opportunity to obtain and present this evidence to decision-makers in the clemency process.

Respectfully submitted,

/s/ Ruth Friedman

Ruth Friedman
Federal Capital Habeas Project
Federal Defender for the District of Maryland
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 344-0600
Ruth_Friedman@fd.org

/s/ John Nidiry

John Nidiry
Federal Capital Habeas Project
Federal Defender for the District of Maryland
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 807-1267
John_Nidiry@fd.org

Counsel for Daniel Lee

Dated: December 5, 2019

**Certificate of Service**

I, Ruth Friedman, hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District for the District of Columbia using the CM/ECF system on this 5th day of December, 2019. This Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction was served via this court's CM/ECF electronic case filing system upon:

WILLIAM P. BARR
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530;

JEFFREY A. ROSEN
Deputy Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530;

ROSALIND SARGENT-BURNS
Acting Pardon Attorney
Office of the Pardon Attorney
950 Pennsylvania Avenue, NW
Washington, DC 20530;

KATHLEEN HAWK SAWYER
Director
Federal Bureau of Prisons
U.S. Department of Justice
320 First St., NW
Washington, DC 20534;

JEFFREY E. KRUEGER
Regional Director
Federal Bureau of Prisons
North Central Region
U.S. Department of Justice
400 State Avenue, Suite 800
Kansas City, KS 66101;

T.J. WATSON
Complex Warden
U.S. Penitentiary Terre Haute
4700 Bureau Road South
Terre Haute, IN 47802,

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530;

Federal Bureau of Prisons
U.S. Department of Justice
320 First St., NW
Washington, DC 20534;

Office of the Pardon Attorney
950 Pennsylvania Avenue, NW
Washington, DC 20530;

Respectfully submitted,


/s/ Ruth Friedman

Ruth Friedman
Federal Capital Habeas Project
Federal Defender for the District of Maryland
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 344-0600
Ruth_Friedman@fd.org

Counsel for Daniel Lee


Dated: December 5, 2019

22