## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA


DANIEL LEWIS LEE                          :
                                          :
        **Plaintiff,**                    :
                                          :
        v.                                :       **Civil Action No. 1:19-cv-03611-TSC**
                                          :
**WILLIAM P. BARR, et al.**               :       **CAPITAL CASE**
                                          :
                                          :
        **Defendants.**                   :


### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS COMPLAINT

Plaintiff Daniel Lee has alleged with substantial detail in his Complaint, *see* Dkt. 1[1], that

Defendants deliberately interfered with and obstructed his ability to obtain and present favorable,

material evidence in the executive clemency process established for individuals under a death

sentence. He has alleged that their interference and obstruction violated his Fifth Amendment

right to due process and the First Amendment rights of correctional officers who wish to provide,

in their capacity as private citizens, critical information in support of his clemency application

but who have been barred from doing so as a result of Defendants' actions and policies.[2]

On January 22, 2020, Defendants filed a Motion to Dismiss the Complaint, *see* Dkt. 14.

They assert that Mr. Lee has not sufficiently pled allegations that meet the criteria for

---

[1] Citations to the Complaint are by paragraph, not page number.

[2] Pursuant to Fed. R. Civ. P. 15(a)(1), Mr. Lee has separately filed an Amended Complaint. As reflected in this Response, Mr. Lee believes he has sufficiently pled his original complaint, but out of an abundance of caution, he has amended it to include additional factual support and points of clarification as well as to reflect events that have taken place since the original complaint was filed. A redlined copy of the Amended Complaint is attached as an Exhibit to this Response for the Court's convenience, and cited and referred to (as Exh. 1 _ ) where appropriate.

1

establishing third-party standing, and therefore his First Amendment claim raised on behalf of the correctional officers should be dismissed under Fed. R. Civ. P. 12(b)(1); and that his First Amendment claim and Fifth Amendment due process claims should be dismissed under rule 12(b)(6). As explained below, Defendants' motion misstates relevant law, cherry-picks singular factual allegations from Mr. Lee's well-pled Complaint, and at times misconstrues his allegations. In light of the legal standards applicable at the pleading stage; the plausible allegations made in support of his claims in the Complaint; the additional allegations made in his Amended Complaint; and the anticipated additional factual development that will be necessary, Mr. Lee respectfully requests that Defendants' motion be denied in its entirety. The Court has jurisdiction in this matter, and Mr. Lee has met his pleading burden for the case to proceed.

## I.    Factual and Procedural Background

The Government had planned to execute Daniel Lee by lethal injection on December 9, 2019, which would have made his the first federal execution to take place in over sixteen years. *See* Complaint, ¶ 15. This Court enjoined the Government from carrying out his and other executions in light of a challenge that remains before the courts.[3] The Government has indicated that it intends to execute Mr. Lee if and when no court order prohibits it.[4]

Upon receiving notification of the previously scheduled execution date, Mr. Lee, on August 30, 2019, filed an application for commutation of his sentence with the Defendant Office of the Pardon Attorney, which is part of the cabinet-level agency, Defendant U.S. Department of Justice ("DOJ"). *See id.* at ¶ 16. He did so in compliance with and pursuant to the formal

---

[3] *See In The Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145, Dkt. 51 (D. D.C. Nov. 20, 2019).

[4] *See* Exh. 1(Amended Complaint), ¶ 15.

procedures made available to the public and developed for individuals in federal custody to seek relief from the President in the form of executive clemency, as well as pursuant to specific procedures designed for death-sentenced prisoners seeking such relief. *See id.*; *see also*, 28 C.F.R. §§ 1.1-1.11.

Although his clemency petition remained pending when the Complaint initiating this lawsuit was filed, he has since withdrawn his petition in light of 28 C.F.R. § 1.10(e), which states: "Only one request for commutation of a death sentence will be processed to completion, absent a clear showing of exceptional circumstances." *Id.*; *see also,* Dkt. 13, p. 2-3. While there is uncertainty at this point about whether or when an execution date will be scheduled for Mr. Lee, and about how the events related to the capital clemency process will unfold if and when an execution date is set, Mr. Lee anticipates filing a new application for commutation of his death sentence with the Office of the Pardon Attorney, pursuant to the established procedures, should a new date be scheduled. In that sense, and because Mr. Lee also anticipates Defendants' continued obstruction with his ability to obtain declarations or testimony from the correctional officers who wish to support him, he agrees with Defendants that "the issues presented in the complaint remain live." *See* Dkt. 14, p. 6.

As set forth in his Complaint, these procedures have been developed, by necessity, over the course of American history as the administrative system generally, and the federal justice system more specifically, have grown in size and complexity. *See* Complaint, ¶¶ 33-44. They have also notably, for more than a half-century, been described in federal regulations formally published for the public, and include substantial requirements for members of the public and death-sentenced prisoners like Mr. Lee to meet, in order to have their petitions for executive clemency properly considered; they, moreover, as is apparent from the regulations, authorize

various administrative officials within the DOJ to undertake certain duties in the clemency process, in order to ensure that the cases worthy of relief are before the President. *See id.*

In the course of attempting to utilize these mandatory procedures and submit evidentiary support for the grounds presented in his petition, Mr. Lee learned that Defendant BOP's employees—members of the corrections staff at USP Terre Haute, where he is incarcerated in the Special Confinement Unit (SCU) with other federally death-sentenced prisoners—have critical information they wish to provide on behalf of Mr. Lee's commutation effort. *See id.* at ¶¶ 20-26. As alleged in the Complaint, the information these staff members wish to share includes but also goes beyond both the run-of-the-mine positive character evidence typically marshaled by clemency petitioners and that which demonstrates his positive adjustment while in custody, the latter a factor typically considered important for obtaining clemency.[5] The corrections officers' accounts and opinions, which in some instances are based on close to twenty years of daily interactions and close contact[6], offer proof—from uniquely positioned Government sources[7]—of one of the central arguments Mr. Lee has made about the worthiness of clemency

---

[5] *See, e.g.,* Section 9-140.113 of the Justice Manual (Standards for Considering Commutation Petitions) (noting "demonstrated rehabilitation" while in custody among factors); *see also, e.g.,* Arkansas State Commutation Application (noting exemplary institutional adjustment among "Reasons for Requesting a Commutation") *available at* https://www.paroleboard.arkansas.gov/Websites/parole/images/CommutationApplication021909. pdf (last visited Feb. 12, 2019).

[6] Defendants seek to reframe and minimize these interactions, referring to them as merely "limited," *see* Dkt. 14, p. 15, and sidestep Mr. Lee's allegations about the substance of those interactions and context in which they have arisen. *See* Complaint, ¶¶ 20-26. The substance and context of the interactions are also discussed in more detail in the Amended Complaint. *See* Exh. 1, ¶¶ 20-29; 63.

[7] Mr. Lee presented evidence from other sources to the Office of the Pardon Attorney to debunk misleading allegations about Mr. Lee posing a "future danger," including from individuals who knew him prior to his arrest and one of the jurors who sentenced him to death. *See* Complaint, ¶ 19.

relief in his case. *See id.* at ¶¶ 17-19; 20-27. That is, their accounts and opinions powerfully and directly refute false allegations made by the prosecution at trial about Mr. Lee's "future dangerousness" and propensity for violence, which were used to secure his death sentence. *See id.*

As described in the Complaint, when Mr. Lee sought to obtain this material evidentiary support from the corrections officers so that it could be presented to the administrative officials within the DOJ—i.e., at the Office of the Pardon Attorney ("OPA")—who are tasked with taking such evidence in the clemency process and, as part of that process, determining whether to make favorable recommendations to the President regarding petitions filed with them, he encountered deliberate interference and obstruction. *See id.* at ¶¶ 27-32. The officials in the OPA made clear during the proceeding held pursuant to 28 C.F.R. 1.10(c), at which Mr. Lee presented his case for clemency, that his alleged "future dangerousness," prison record and prison behavior were matters of grave concern to them. And yet Mr. Lee has been blocked from obtaining and presenting to the OPA the support for his clemency effort and the detailed information available from the corrections officials, who are particularly well-situated to speak on those matters and who wish to do so as private citizens. *See id.* at ¶¶ 20-26, 31, 58-64.

Mr. Lee has sought redress from this Court to prevent deprivations of his rights and the rights of those correctional officers on behalf of whom he has brought this lawsuit. Defendants' actions and policies barring him from access to this evidence violate his due process rights under the Fifth Amendment as well as the First Amendment rights of the correctional officers who wish to provide critical information in support of him in the clemency process but face the prospect of reprisals and other job-related harms for doing so. *See id.* at ¶¶ 21, 45-64.

As discussed in more detail below, and contrary to Defendants' assertions otherwise, Mr. Lee has sufficiently alleged the criteria for establishing third-party standing in connection with his First Amendment Claim, in light of the concrete injury he suffers, the closely aligned interests between him and the SCU officers, and the practical obstacles the officers face in litigating their rights to speak in support of Mr. Lee.[8] *See id*. at ¶¶ 58-64. These constitutional violations, the facts from which they arise, and the relief requested are, moreover, inextricably intertwined. The relief sought is necessary and appropriate in order to allow Mr. Lee and the correctional officers to exercise their rights unencumbered by Defendants' actions and policies, while Mr. Lee utilizes the mandatory procedures created for pursuing capital clemency relief; and if his execution is allowed to proceed without his having been provided a fair and unobstructed clemency process, he will have been deprived of the Fifth Amendment due process rights to which he is entitled, and the First Amendment rights of the officers who wish to provide information in support of him in the clemency process will be meaningless and completely nullified. *See id.* at ¶¶ 45-64.

At this early stage of proceedings, Mr. Lee has sufficiently pled facts in support of his Fifth Amendment and First Amendment claims, and Defendants have not met their high burden for establishing the propriety of dismissal under Fed. R. Civ. P. 12(b)(1) or 12(b)(6). Moreover, his Amended Complaint contains additional, updated factual support and points of clarification in connection with his claims, and, as noted below, further fact development is needed.[9] For all

---

[8] He has also provided additional factual support for and clarified some aspects of his allegations relating to the third-party standing criteria in his Amended Complaint. *See* Exh. 1, ¶¶ 22-24, 61-67.

[9] Given the peculiar circumstances of the case, including the uncertainty surrounding the setting of an execution date and how the clemency process will unfold, it should also be noted that some relevant facts could change in the near future.

these reasons, Mr. Lee should be granted the opportunity to prove his case in due course.

## II.    Legal Standards

A complaint need only provide "a short and plain statement … showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When ruling on a motion to dismiss, the Court must accept as true all facts plausibly pleaded in the complaint, drawing all reasonable inferences in the plaintiff's favor. *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017). Plausibility does not mean certainty, or that a claim is more likely to succeed than not—it means that the claim rises "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To the extent inferences must be drawn to show that the defendant is liable, they must merely be reasonable. *Hurd*, 864 F.3d at 678.

Plaintiffs are permitted to plead with less specificity, and even "on information and belief," regarding information in defendants' possession to which plaintiffs would not have access prior to discovery, or where the belief is based on facts that render the allegations plausible. *See Kelleher v. Dream Catcher*, L.L.C., 263 F. Supp.3d 322, 325– 26 (D.D.C. 2017); *see also*, *Evangelou v. District of Columbia*, 901 F.Supp.2d 159, 170 (D.D.C. 2012).

The burden is high for a party seeking to dismiss a claim under Fed. R. Civ. P. 12(b)(6). "Dismissal for failure to state a claim is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Chandler v. D.C. Dep't of Corr.*, 145 F.3d 1355, 1360 (D.C. Cir. 1998) (citation and internal quotation omitted*); see also Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (noting that "the complaint need only set forth 'a short and plain statement of the claim'" and that the complaint need not even "allege every legal element or fact that must be proven") (citation omitted). A motion to dismiss is not an opportunity to evaluate the sufficiency

7

of the evidence supporting the complaint's allegations, and the court must "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (internal quotation marks omitted).

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), which Defendants have argued as one of the bases for dismissal of Mr. Lee's First Amendment claim, courts "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (quoting *Warth v. Seldin*, 422 U.S. 490, 501-02 (1975)). When jurisdiction over a case depends on a factual question, the court may independently review the evidence and conduct additional fact-finding to determine whether it has jurisdiction; it may also allow "the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Haase*, 835 F.2d at 906; *see also Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## III.    Argument

In his Complaint, Mr. Lee sets forth plausible factual allegations in support of three distinct but interrelated claims: 1) that Defendants' deliberate interference with his ability to obtain and present material evidence from correctional officers in support of his petition for clemency violates his Fifth Amendment right to due process; 2) that Defendants' actions and policies stripped him of the basic procedural safeguards he is entitled to in capital clemency proceedings, in violation of his Fifth Amendment right to due process; and 3) that Defendants' actions and policies prohibiting correctional officers from expressing support for and providing

critical information in support of his clemency petition violates their free speech rights under the First Amendment. *See* Complaint, ¶¶ 45-64. As explained below, Defendants, who have raised defenses under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), have not met the exacting requisite standard for dismissal of these claims. *See Chandler,* 145 F.3d at 1360.

A.    **The Facts Alleged in Support of Mr. Lee's Fifth Amendment Due Process Claims Are Sufficiently Pled.**

With respect to Mr. Lee's two Fifth Amendment due process claims, Defendants take the position that the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6), arguing in essence that *Young v. Hayes*, 218 F.3d 850 (8th Cir. 2000)—a case involving deliberate interference by state officials in the course of a death-sentenced prisoner's clemency proceedings and in which Mr. Lee finds support—is "outdated." *See* Dkt. 14, p. 12. Citing a few cases decided since the *Young* decision, and highlighting the concurrence of a sole judge who "advocated the abrogation of *Young*," Defendants urge the Court to completely foreclose Mr. Lee from having any opportunity to prove his claims. *See* Dkt. 14, p. 12. But even the Eighth Circuit, in *Winfield v. Steele*, 755 F.3d 629 (8th Cir. 2014) (*en banc*)—a key case Defendants rely on for dismissal of Mr. Lee's claims—made clear that *Young* was "distinguishable on its facts," and wrote that, "we express no view in this opinion on the merits of" that case. *See Winfield*, 755 F.3d at 631. *Young*, thus, remains good law and instructive here.

*Winfield* and the other cases cited by Defendants are also, moreover, factually distinguishable from the allegations made in Mr. Lee's Complaint. The court in *Winfield*, for example, found due process protections were satisfied primarily because "the Department of Corrections now has furnished [the officer's] signed declaration in support of clemency to the governor" and because there was "no evidence that any other state employee has been deterred from speaking in support of clemency for Winfield." *Id.* Mr. Lee's Complaint alleged that he has

not been able to obtain statements or testimony from any of the officers who have indicated their desire to provide such support, because of Defendants' actions and policies.

More to the point, at this early stage of proceedings, the facts as pled, taken as true, and construed liberally in his favor, easily survive Fed. R. Civ. P. 12(b)(6). *Barr,* 370 F.3d at 1199; *Chandler,* 145 F.3d at 1360; *Hurd*, 864 F.3d at 678.

The Government does not—and cannot—claim that Mr. Lee has no due process rights in his capital clemency proceeding. *See* Dkt. 14, at 10.  As the court in *Young* explained, citing *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 288-289 (1998), such a view—that a capital clemency petitioner is afforded no due process protections—is "inconsistent with the position…taken by a majority of the Supreme Court." *Young*, 218 F.3d at 852-53. Rather, the question before this Court at this juncture is whether Mr. Lee has adequately pled his claims that Defendants violated his due process rights in the course of his capital clemency proceeding, a fact-bound inquiry involving a distinct set of allegations and a distinct set of federal clemency procedures, where all reasonable inferences must be drawn in his favor. *See Hurd*, 864 F.3d at 678.

As set forth with specificity in his Complaint, Mr. Lee, like the death-sentenced petitioner in *Young*, alleged he has encountered obstruction and deliberate interference by Government officials; those officials, all of whom are part of the DOJ, have, through their actions and agency policies, thwarted his ability to gather and present favorable, material evidence from important witnesses, USP Terre Haute SCU correctional officers, that both supports his clemency application and directly and powerfully refutes the prosecution's central—and grossly misleading—claim in his trial proceeding that he poses a "future danger." *See* Complaint, ¶¶ 17, 20-32, 45-51. As demonstrated by the questions posed to Mr. Lee's counsel by officials in the

Office of the Pardon Attorney—officials tasked with reviewing, investigating and deciding whether to make a favorable recommendation on his application—falsehoods about his propensity for violence both matter to key decision-makers in the clemency process and persist unchallenged as a direct result of deliberate interference in that process. *See id.* at ¶ 30. The Defendants—Government actors who are themselves part of the prosecuting body—are obstructing his access to material evidence that powerfully undermines misrepresentations on which their case for death relies from being presented in the clemency process. This is an important component of one of his two due process claims, *see id.* at ¶¶ 45-51, and is among the features of his case that distinguishes it from other death-sentenced petitioners seeking to vindicate due process rights in the clemency context. *See, e.g., Noel v. Norris*, 336 F.3d 648, 649 (8th Cir. 2003) ("On the other hand, if the *state actively interferes* with a prisoner's access to the very system that it has itself established for considering clemency petitions, due process is violated.") (emphasis added).

Mr. Lee has also made sufficiently specific factual allegations in his Complaint that support his claim that Defendants' actions and policies have stripped him of basic procedural safeguards he is entitled to in capital clemency proceedings—his second alleged Fifth Amendment-based ground for relief. *See* Complaint, ¶¶ 52-57. As noted previously, that due process protections are afforded to death-sentenced clemency petitioners was acknowledged in *Woodard*; lower courts have since grappled with the contours of the process due, a fact-intensive undertaking that depends on the specific capital clemency procedures and how those procedures were applied in a particular case. With regard to this claim as well, Mr. Lee has met his pleading burden.

As set forth in the Complaint, the review and consideration of requests for clemency were

once an informal, ad hoc undertaking involving only the President and a few of his closest advisors. *See id.* at ¶¶ 36-43. That is no longer the case. A modern day system has been developed over time, operating with the hallmarks of the administrative state—duties related to the handling, investigation, and consideration of clemency petitions, for example, have by and large been delegated to career officials in the Office of the Pardon Attorney, positions created and funded by Congress, and other legislatively created agencies within the DOJ bureaucracy; and formal agency regulations have been promulgated for the general public and these administrative officials to follow. *See id.* at ¶¶ 33-44. At this point, countless persons seeking justice through the different forms of clemency relief, including those potentially eligible for pardon, the almost two hundred thousand in federal custody,[10] and the sixty-two under federal death sentence,[11] who have no direct line to the President, are, thus, by legislative and executive branch design steered to and dependent on this firmly rooted administrative system. *Id.*

Facing what he and other stakeholders in his case believe is an unjust execution, *see id.* at ¶¶ 17-18, Mr. Lee has no choice but to rely on the mandatory clemency process that the Government itself has created for review and consideration of clemency petitions for individuals under sentence of death, and as noted in his Complaint, he has sought to follow the requirements and utilize the procedures made available to him, pursuant to the regulations formally published for the public and prisoners alike, and those that apply in particular to capital cases; but Defendants' interference in that process has prevented him from obtaining and presenting

---

[10] *See* U.S. DEP'T OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, BUREAU OF JUSTICE STATISTICS, PRISONERS IN 2017 (April 2019), available at https://www.bjs.gov/content/pub/pdf/p17.pdf (last visited Feb. 12, 2020).

[11] Federal Capital Habeas Project, *Growth in Federal Death Row Population*, available at https://2255.capdefnet.org/General-Statistics/Growth-Federal-Death-Row-Population (last visited Feb. 12, 2020).

significant evidence in support of his petition. *See, e.g., id.* at ¶¶ 20-32, 52-57.

As *Young* rightly points out, such

conduct on the part of a state official is fundamentally unfair. It unconscionably interferes with a process that the State itself has created. The Constitution of the United States does not require that a state have a clemency procedure, but, in our view, it does require that, if such a procedure is created, the state's own officials refrain from frustrating it by threatening the job of a witness.

*Young*, 218 F.3d at 853; *see also, e.g., Noel,* 336 F.3d at 649; *Wilson v. U.S. Dist. Court for Northern Dist. of California*, 161 F.3d 1185, 1186-88 (9th Cir. 1998) (finding petitioner stated claim of violation of due process and upholding issuance of temporary restraining order prohibiting execution where clemency petitioner and his counsel reasonably relied on but were misled by clemency authority about issues to be considered).

The crux of Defendants' argument is that *Young* is outdated. But that is an insufficient basis for dismissal under Fed. R. Civ. P. 12(b)(6), where Mr. Lee's specific and plausible allegations, taken as true, claim Defendants have deprived him of due process protections he is entitled to in his federal capital clemency proceeding. *See Hurd*, 864 F.3d at 678.

**B.    The Facts Alleged in Support of Mr. Lee's First Amendment Claim Are Sufficiently Pled.**

Defendants also seek to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) contending that Mr. Lee has not sufficiently alleged facts to establish he has third-party standing to raise his First Amendment claim on behalf of certain SCU correctional officers, and under rule 12(b)(6) for failing to state a First Amendment claim. But Defendants misstate the relevant law and attempt to cherry-pick facts in a way that distorts the breadth and nature of Mr. Lee's allegations.

It should be noted, as an initial matter, that Defendants set up a "straw man" argument

that focuses on a particular prison policy, Federal Bureau of Prisons (BOP) policy 5840.04. *See* Dkt. 14, p. 14-15, 16-17. They claim this policy "does not prohibit the expression of any views" and creates a "streamlined process" for correctional officers to provide opinions about inmates. *Id.* at 14. They assert that because Mr. Lee failed to allege certain facts related to this policy—for example, that he did not allege "any BOP employee attempted to provide information in accordance with" that policy—that therefore his pleading is insufficient. *Id.* at 14-15. But, the focus on this policy serves to distract from Mr. Lee's allegations and claims: as clearly set forth in his Complaint, when he requested authorization to obtain information from the officers through BOP counsel, she stated his request "may fall under" BOP policy 5840.04, and that she was still "working on getting an answer" to Mr. Lee's request. *See* Complaint, ¶ 28. In short, Mr. Lee's allegations must be taken as true, *see Haase*, 835 F.2d at 906, and what Defendants' have offered up as the basis for dismissal of his well-pled Complaint is not responsive to the actual allegations in it, and if anything, points to the need for additional fact development.

1.    **Mr. Lee's First Amendment claim should not be dismissed under Fed. R. Civ. P. 12(b)(1).**

Three prudential considerations are weighed in determining whether an individual may assert the rights of others: "(1) '[t]he litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute,' (2) 'the litigant must have a close relation to the third party,' and (3) 'there must exist some hindrance to the third party's ability to protect his or her own interests'." *Lepelletier v. F.D.I.C.*, 164 F.3d 37, 43 (D.C. Cir. 1999) (citing *Powers v. Ohio*, 499 U.S. 400, 411 (1991)). If, as required, the material allegations of his complaint are accepted as true, and if the complaint, as required, is construed in his favor, Mr. Lee has met his pleading burden with respect to all three of these considerations. *See Haase*, 835 F.2d at 906. As noted below, he has also, nonetheless, added

14

facts and points of clarification regarding these three criteria in his Amended Complaint.

Although Defendants essentially treat them as non-existent, Mr. Lee has made plausible allegations regarding his "sufficiently concrete interest" in the outcome of this litigation: he has a life-or-death stake in the outcome of the capital clemency proceeding, and Defendants' actions and policies obstructing the SCU correctional officers' ability to provide information in support of him in the clemency process will affect him adversely. *See, e.g.,* Complaint, ¶¶ 20-32; 59[12]; *Lepelletier*, 164 F.3d at 43 (in case involving third-party standing, plaintiff's alleged loss of business opportunity easily satisfied "concrete interest" requirement). As the Seventh Circuit—in a case that Defendants have rather baldly asserted was wrongly decided—shrewdly observed, such a prohibition may "hinder the flow of information—a procedural defect which may act to [the clemency petitioner's] detriment." *Shimer v. Washington,* 100 F.3d 506, 508 (7th Cir. 1996)[13]. The information the correctional officers in Mr. Lee's case wish to share is "particularly pertinent," as it is they "who have daily contact with [Mr. Lee] and therefore can realistically assess his person." *Id.*; *see also,* Complaint, ¶ 59.[14] The information they wish to provide the OPA, moreover, has enhanced importance because it refutes false and inflammatory allegations about his "future dangerousness." *Id.*

---

[12] *See also* Exh. 1, ¶ 62.

[13] *See* Dkt. 14, at 16. Contrary to Defendants' position, the *Shimer* decision was not wrongly decided and remains persuasive and instructive in its third-party standing analysis at the summary judgment stage. The Seventh Circuit panel in that case properly considered the criteria for the plaintiff's assertion of third-party standing on behalf of corrections officers, and, moreover, correctly incorporated relevant First Amendment jurisprudence into its analysis. 100 F.3d at 508-09. *See also, infra* p. 17-18 (discussing the import of the First Amendment in evaluating third-party standing).

[14] *See also,* Exh. 1, ¶ 62.

Mr. Lee has also plausibly alleged, in his Complaint and now his Amended Complaint, the close relationship between him and the SCU officers who wish to speak on his behalf. *See id.* ¶¶ 20-32, 59 (describing both the nature of their relationship, close interactions, and basis for the SCU officers' opinions about Mr. Lee).[15]  *Lepelletier*, 164 F.3d at 43. The "close relationship" factor requires only an alignment of interests such that "the plaintiff will act as an effective advocate of the third party's interests." *Lepelletier*, 164 F.3d at 44; *see also*, *Aid for Women v. Foulston*, 441 F.3d 1101, 1113 (10th Cir. 2006) ("The concern behind the 'close relationship' element is whether 'the third party can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal'" (quoting *Sec'y of State of Md. v. Joseph H. Munson Co, Inc.*, 467 U.S. 947, 956 (1984)). Here, the interests of Mr. Lee and the correctional officers, as is clear from his Complaint, are neatly aligned: simply put, the officers seek to support him in the capital clemency process with detailed information, and Mr. Lee wants to include their support for him in the capital clemency process on which his life depends. As such, he can reasonably be expected to frame the issues in this litigation and present them with necessarily zeal, in the face of Defendants' obstruction. In that sense, Mr. Lee's due process rights in this case are "inextricably bound up" with the officers' First Amendment rights: "If Mr. Lee's execution is allowed to proceed before the USP Terre Haute correctional officers who wish to provide such information to support him in the clemency process have the opportunity to do so, the exercise of their free speech rights in this context will be meaningless and completely nullified." Complaint, ¶ 63; *see also Singleton v. Wulff*, 428 U.S. 106, 114-115 (1976).

Mr. Lee has also met his pleading burden regarding "hindrance" to the correctional officers' ability to protect their own interests. *Lepelletier*, 164 F.3d at 43. As alleged in his

---

[15] *See* Exh. 1, ¶¶ 20, 22-24, 34, 62.

Complaint and, with additional factual support in his Amended Complaint, these officers face threats of reprisal, discipline, discharge, and other possible job-related harms, which effectively chills their protected speech and thwarts their ability to assert their rights. *See* Complaint, ¶¶ 21, 62.[16] Such circumstances represent the sort of "practical obstacles" contemplated in the third-party standing context. *See Joseph H. Munson Co, Inc.*, 467 U.S. at 956; *see also Pennsylvania Psychiatric Soc. v. Green Spring Health Services, Inc.*, 280 F.3d 278, 290 (3rd Cir. 2002) (explaining that "a party need not face insurmountable hurdles to warrant third-party standing") (citing *Powers v. Ohio*, 499 U.S. 400, 415 (1991)).

It should, moreover, be noted that, contrary to the Government's assertion, *see* Dkt. 14, at 16, the Supreme Court, and subsequently courts in this Circuit, have made clear that within the context of free speech under the First Amendment, there are particular concerns and circumstances that justify a lessening of prudential limitations on standing, especially where there is a danger of speech being chilled. *See, Kowalski v. Tesmer,* 543 U.S. 125 (2004) (noting that the Court has been "quite forgiving with" the third-party standing criteria in certain circumstances, including within the context of the First Amendment) (citing *Joseph H. Munson Co., Inc.*, 467 U.S at 956; *see also, e.g., Reese Brothers, Inc. v. U.S. Postal Service*, 531 F. Supp. 2d 64, 69-70 (D. D.C. 2008) (finding criterion for third-party standing relaxed in light of alleged danger of chilled speech); *Nelson v. International Ass'n of Bridge, Structural, and Ornamental Iron Workers*, 680 F. Supp. 16, 24 (D. D.C. 1988) (noting "normally stringent requirement of injury in fact has been relaxed, however, in the First Amendment context"); *Ryan, LLC v. Lew*, 934 F.Supp.2d 159, 167-68 (D. D.C. 2013) (noting that plaintiff "correctly points out that the Supreme Court has seen fit to relax the 'hindrance' component of third-party standing in the free

---

[16] *See* Exh. 1, ¶¶ 21-22, 62.

speech context" and concluding that "the more forgiving approach to prudential standing requirements developed in the Speech Clause context should logically extend to claims under the Petition Clause."); *see also*, Complaint ¶ 21, 62; Exh. 1, ¶¶ 21-22, 62.

In light of the above, and considering the allegations he has set forth, the Court should deny Defendants' motion to dismiss for lack of standing.

### 2. Mr. Lee's First Amendment claim should not be dismissed under Fed. R. Civ. P. 12(b)(6).

In addition to sufficiently establishing the basis, under Fed. R. Civ. P. 12(b)(1), for third-party standing, Mr. Lee has met his pleading burden under Rule 12(b)(6) for stating a First Amendment claim on behalf of the SCU corrections officers. Mr. Lee's showing on his First Amendment claim is further supported by the updated, additional facts and points of clarification in his Amended Complaint.

Speech by a public employee is protected where the employee speaks as a private citizen about a matter of public concern, and where the employee's speech interest outweighs "the interests of the government employee, as an employer, in promoting the efficiency of the public services it performs through its employees." *See Pickering v. Board of Ed. Of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568 (1968); *Connick v. Myers*, 461 U.S. 138, 143 (1983); *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *Lane v. Franks*, 573 U.S. 228, 231 (2014).

Defendants, in seeking dismissal of Mr. Lee's First Amendment ground, apparently misconstrue his allegations—the officers do not wish to "provide [their] views and observations of Lee as [] prison guard[s]," and the fact that they may be "allowed to record" views and observations of him as part of their official duties, presumably pursuant to BOP policy 5840.04,

18

is, at least at this stage of the proceeding, immaterial to his claim.[17] As set forth in the Complaint, the USP Terre Haute correctional officers "wish to provide material information in support of Mr. Lee's clemency petition in their capacity *as private citizens*" but their ability to do so, as Mr. Lee has alleged, is being suppressed under threat of reprisal, discipline, or discharge. *See* Complaint, ¶¶ 21, 60-62.[18] Although the officers' suppressed speech is surely informed by their on-the-job time and experience with Mr. Lee, the officers are not speaking as employees in uniform or in their on-the-job prison setting, and providing expressions of support to the Office of the Pardon Attorney is not encompassed in their job duties.[19]

Defendants, moreover, take the same misguided approach to the meaning of "private citizen" speech that the Supreme Court cautioned against in *Lane*, a case involving the erroneous dismissal of a lawsuit at the summary judgment stage: "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech. The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id*. at 234, 240.

---

[17] As noted previously, as alleged in the Complaint, Mr. Lee's counsel were told that their request to collect statements from officers "*may*" fall under the policy—Bureau of Prisons policy statement 5840.04—Defendants rely so heavily on to dismiss his claim. *See* Complaint, ¶ 28. (Emphasis added.) At a minimum, the applicability of the policy creates a fact issue to be fleshed out in discovery rather than being decided on a motion to dismiss.

[18] Mr. Lee has, in the Amended Complaint, provided additional allegations related to the officers' speech in their capacity as private citizens. *See* Exh. 1, ¶¶ 24, 63-64.

[19] *See id*. at ¶ 23.

While discovery may be necessary to determine more precise contours of the officers' duties,[20] the allegations in Mr. Lee's Complaint—and now, in his Amended Complaint—taken as true and construed in his favor, suffice at this stage of the proceedings. *See Haase*, 835 F.2d at 906; *see also, e.g., Buddenburg v. Weisdack*, 939 F.3d 732, 740 (6th Cir. 2019) (finding plaintiff's allegations regarding her speech as a private citizen sufficient to survive motion to dismiss); *Montero v. City of Yonkers, New York*, 890 F.3d 386, 398 (2d. Cir. 2018) ("Because the district court did not squarely determine whether Montero's union speech was made *pursuant* to Montero's employment duties, its decision that the remarks necessarily failed to qualify as citizen speech protected by the First Amendment was thus at best premature.")

Defendants also argue the Complaint should be dismissed because the matters the officers wish to speak about are "inherently a matter of private concern," but Mr. Lee has sufficiently alleged that it is of "public concern," in light of the anticipated content of the officers' speech. Their speech relates to the Government's highly publicized interest[21] in carrying out Mr. Lee's execution "despite grave constitutional violations and serious allegations of official misconduct," and refutes the "future dangerousness" ground on which his death sentence rests.  Complaint, ¶ 61.[22] It also relates to subject matters—the restarting of federal executions, Mr. Lee's execution, his clemency bid, the inequities in his case, among them—that have garnered much attention in

---

[20] *See id.* at ¶ 23 (noting that SCU officers' job descriptions are, upon information and belief, not publicly accessible).

[21] *See* Complaint, ¶ 15 (citing Defendants' press release announcing the setting of Mr. Lee's execution date).

[22] He has also alleged additional factual support in connection with the public concern involved here. *See* Exh. 1, ¶ 64.

the public sphere.[23] Speech "involves matters of public concern 'when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Lane*, 573 U.S. at 241 (2014) (quoting *Snyder v. Phelps*, 131 S.Ct. 1207, 1216 (2011)). This is a fact-bound inquiry that "turns on the 'content, form, and context' of the speech." *Lane*, 573 U.S. at 241 (citing *Connick*, 461 U.S. at 147-48). While further fact development may be necessary in connection with determining the content, form, and context of the speech at issue, at this early stage of the proceeding, Mr. Lee has more than sufficiently pled facts relating the correctional officers' speech being a matter of public concern.

Finally, Defendants assert their interest outweighs the interests Mr. Lee has delineated in his Complaint on behalf of the officers. *See* Dkt. 14, 17-18; Complaint, ¶¶ 20-32; 59; 61.[24] But the balancing of these interests, much like the question of whether the speech relates to a matter of public concern, is a fact-intensive inquiry relating to content, form, and context, among other considerations, and Defendants' citations to policy and policy rationales cannot simply be taken at face value, especially where, as alleged in the Complaint, Mr. Lee was provided with a less than clear answer regarding the policies being invoked to prohibit the officers' speech.[25] *See e.g., Lane*, 573 U.S. at 242 ("We have also cautioned, however, that a 'stronger showing [of government interests] may be necessary if the employee's speech more substantially involve[s] matters of public concern.'") (citing *Connick*, 461 U.S. at 152); *Shimer*, 100 F.3d at 510 (in light of necessary speculation involved in balancing interests between prison guards who wished to

---

[23] *See* Exh. 1, ¶ 64.

[24] *See* Exh. 1, ¶ 64.

[25] *See* discussion *supra* 13-14; *see also, supra* note 17.

participate in clemency process and the State, and refusing to take State's citation of prison policy and rationales at face value, court remands case at summary judgment stage "for further fact-finding to illuminate challenged policy.")

Mr. Lee has alleged plausible allegations in his Complaint to establish his First Amendment claim. He has also provided additional factual support for his claim, and points of clarification, in his Amended Complaint. While further fact development may be necessary to determine the merits of his claim, at this juncture, Mr. Lee has met his pleading burden under Fed. R. Civ. P. 12(b)(6).

### Conclusion

For the reasons stated herein, Defendants' Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

/s/ John Nidiry
John Nidiry
Federal Capital Habeas Project
Federal Defender for the District of Maryland
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 807-1267
John_Nidiry@fd.org

/s/ David Victorson
David Victorson
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
(202) 637-5600
david.victorson@hoganlovells.com

/s/ Pieter Van Tol
Pieter Van Tol
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 909-0661
pieter.vantol@hoganlovells.com

Counsel for Daniel Lee

Dated: February 12, 2020

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia using the CM/ECF system on February 12, 2020. Notice of this filing will be sent by email to the all parties that are registered users, including counsel for Defendants listed below; and the filing may be accessed through the Court's CM/ECF System.

Shannon S. Smith
Assistant United States Attorney
P.O. Box 1229
Little Rock, AR 72203
(501) 340-2600
Shannon.smith@usdoj.gov

Jamie G. Dempsey
Assistant United States Attorney
P.O. Box 1229
Little Rock, AR 72203
(501) 340-2600
Jamie.dempsey@usdoj.gov


Respectfully submitted,

/s/ John Nidiry
John Nidiry
Federal Capital Habeas Project
Federal Defender for the District of Maryland
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 807-1267
John_Nidiry@fd.org

Counsel for Daniel Lee


Dated: February 12, 2020

24