**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DANIEL LEWIS LEE** | ) | |
| **Register Number 21303-009** | ) | |
| **U.S. Penitentiary Terre Haute** | ) | |
| **Terre Haute, IN 47802** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. <u>1:19-CV03611-TSC</u>** |
| | ) | |
| **WILLIAM P. BARR** | ) | **CAPITAL CASE** |
| **Attorney General** | ) | |
| **U.S. Department of Justice** | ) | |
| **950 Pennsylvania Avenue, NW** | ) | |
| **Washington, DC 20530;** | ) | |
| | ) | |
| **JEFFREY A. ROSEN** | ) | |
| **Deputy Attorney General** | ) | |
| **U.S. Department of Justice** | ) | |
| **950 Pennsylvania Avenue, NW** | ) | |
| **Washington, DC 20530;** | ) | |
| | ) | |
| **ROSALIND SARGENT-BURNS** | ) | |
| **Acting Pardon Attorney** | ) | |
| **Office of the Pardon Attorney** | ) | |
| **950 Pennsylvania Avenue, NW** | ) | |
| **Washington, DC 20530;** | ) | |
| | ) | |
| **KATHLEEN HAWK SAWYER** | ) | |
| **Director** | ) | |
| **Federal Bureau of Prisons** | ) | |
| **U.S. Department of Justice** | ) | |
| **320 First St., NW** | ) | |
| **Washington, DC 20534;** | ) | |
| | ) | |
| **JEFFREY E. KRUEGER** | ) | |
| **Regional Director** | ) | |
| **Federal Bureau of Prisons** | ) | |
| **North Central Region** | ) | |
| **U.S. Department of Justice** | ) | |
| **400 State Avenue, Suite 800** | ) | |
| **Kansas City, KS 66101;** | ) | |

| | |
|---|---|
| **and** | ) |
| | ) |
| **T.J. WATSON** | ) |
| **Complex Warden** | ) |
| **U.S. Penitentiary Terre Haute** | ) |
| **4700 Bureau Road South** | ) |
| **Terre Haute, IN 47802,** | ) |
| | ) |
| **In their official capacities; and,** | ) |
| | ) |
| **U.S. Department of Justice** | ) |
| **950 Pennsylvania Avenue, NW** | ) |
| **Washington, DC 20530** | ) |
| | ) |
| **Federal Bureau of Prisons** | ) |
| **U.S. Department of Justice** | ) |
| **320 First St., NW** | ) |
| **Washington, DC 20534** | ) |
| | ) |
| **Office of the Pardon Attorney** | ) |
| **950 Pennsylvania Avenue, NW** | ) |
| **Washington, DC 20530;** | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

### INTRODUCTION

Twenty years ago, Daniel Lewis Lee was convicted of three counts of murder along with Chevie Kehoe in the Eastern District of Arkansas. Subsequently, after weighing the aggravating and mitigating factors, the jury unanimously decided to impose a sentence of death for Lee for each of the three murder charges. Lee's conviction and sentence were affirmed on appeal, and he has exhausted his post-conviction remedies under § 2255. Lee's execution was scheduled for December 9, 2019, but has been stayed by the U.S. District Courts for the District of Columbia and the Eastern District of Arkansas.

2

Lee filed a complaint asserting he was denied Fifth Amendment due process in his clemency proceeding.  He also asserted a First Amendment Free Speech claim on behalf of corrections staff at the Bureau of Prisons ("BOP") facility.  *See* Compl., Dkt. 1.  Defendants filed a motion to dismiss the complaint on January 22, 2020.  *See* Motion to Dismiss, Dkt. 14.  Plaintiff responded and filed an amended complaint.[1]  *See* Response to Motion to Dismiss, Dkt. 18; Amended Complaint, Dkt. 17.  Because Lee has no third party standing to assert the Free Speech claim and because the amended complaint fails to state a claim upon which relief can be granted as to both claims, the amended complaint should be dismissed.

## BACKGROUND

### I.    PROCEDURAL HISTORY

In 1999, Lee and Chevie Kehoe were tried together in a two-month trial in federal district court in Arkansas.  *United States v. Lee*, 374 F.3d 637, 643 (8th Cir. 2004).  The evidence at trial demonstrated that Lee and Kehoe were members of a white supremacist organization known as the Aryan Peoples' Republic, or the Aryan Peoples' Resistance ("APR"), which Kehoe founded for the purpose of establishing an independent nation of white supremacists in the Pacific Northwest.  *Id.* at 641.  In January 1996, expecting to find valuable property, Kehoe and Lee traveled from Washington to the Arkansas home of William Mueller, a gun dealer who owned a large collection of weapons and ammunition.  *Id.*  When Mueller arrived home with his wife Nancy, and their eight-year-old daughter Sarah Powell, Lee and Kehoe overpowered and incapacitated the Muellers and then questioned Sarah Powell about the location of cash, guns, and ammunition.  *Id.* at 641-42.  After finding $50,000 in cash, guns, and ammunition, they shot the

---

[1] The parties agree the amended complaint is now the operative pleading.  Fed. R. Civ. P. 15(a)(1)(B); *see also Barnes v. District of Columbia*, 42 F. Supp. 3d 111, 117 (D. D.C. 2014).

three victims with a stun gun, placed plastic bags over their heads, and sealed the bags with duct tape. *Id.* at 642. The victims were taken in Kehoe's vehicle to a nearby bayou where Lee and Kehoe tossed their bodies. The victims' bodies were recovered months later in Lake Dardanelle near Russellville, Arkansas. *Id.*

At the end of the trial, the jury convicted Lee and Kehoe of three counts of capital murder in addition to racketeering and conspiracy to commit racketeering. *Id.* at 643. Lee and Kehoe were sentenced in separate penalty phases before the same jury. *Id.* Kehoe's penalty phase was presented first, and he was sentenced to life without release. *Id.* Subsequently, the same jury returned a death verdict against Lee on May 14, 1999. *Id.*

In 2000, the district court granted Lee's post-trial motion for a new sentencing hearing. *United States v. Lee*, 89 F. Supp. 2d 1017 (E.D. Ark. 2000). The Eighth Circuit reversed and reinstated the death sentence, *United States v. Lee*, 274 F.3d 485 (8th Cir. 2001), and the Supreme Court denied certiorari, *Lee v. United States*, 537 U.S. 1000 (2002). The Eighth Circuit then affirmed Lee's conviction and sentence on direct appeal, *Lee*, 374 F.3d 637, and the Supreme Court denied certiorari, *Lee v. United States*, 545 U.S. 1141 (2005). Lee subsequently filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. *See United States v. Lee*, 715 F.3d 215, 217 (8th Cir. 2013). The district court denied his petition, but granted a certificate of appealability. *Id.* The Eighth Circuit again affirmed, and the Supreme Court again denied certiorari. *Id.*; *Lee v. United States*, 135 S. Ct. 72 (2014).

Lee then sought relief in district court from the judgment in his 28 U.S.C. § 2255 case under Rule 60(b) of the Federal Rules of Civil Procedure. *See United States v. Lee*, 792 F.2d 1021, 1022 (8th Cir. 2015). The district court denied his motion, deciding that it lacked jurisdiction to hear the motion. *Id.* The Eighth Circuit affirmed, and the Supreme Court denied certiorari. *Id.*;

4

*Lee v. United States*, 137 S. Ct. 1577 (2017). Lee filed a successive habeas petition in the Eighth Circuit seeking relief in September 2019, which was denied on November 4, 2019. *See Lee v. United States*, No. 19-2432 (8th Cir. 2019). He then filed an application seeking permission to file a second or successive § 2255 on December 4, 2019, and the Eighth Circuit denied the request. *Lee v. United States*, 19-3576 (8th Cir. 2019). On December 6, 2019, Lee also filed a motion in the Eastern District of Arkansas for relief from judgment (on his first § 2255 motion) under Federal Rule of Civil Procedure 60(b). In that action, a stay was entered by the district court, and an appeal of the order entering the stay is currently pending in the Eighth Circuit. *United States v. Lee*, No. 19-3618 (8th Cir. 2019).

In September 2019, Lee filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in the Southern District of Indiana. *Lee v. Warden USP Terre Haute et al.*, No. 2:19-CV-00468-JPH-DLP, Docket Sheet (2019). In that case, the Southern District of Indiana entered a stay of execution, but the stay was vacated by the Seventh Circuit. *See Lee v. Watson*, No. 19-3399, 2019 WL 6718924 (7th Cir. Dec. 6, 2019).

Lee and three other inmates who were scheduled for execution starting in December also filed separate motions for preliminary injunction in the U.S. District Court for the District of Columbia challenging the Government's execution protocol. *In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases, Roane et al. v. Barr*, No. 19-mc-145 (TSC). The district court stayed the execution of all four inmates, and the U.S. Court of Appeals for the District of Columbia Circuit denied the Government's motion to stay or vacate the stay issued by the District Court. The Supreme Court similarly denied the Government's application for a stay or vacatur of the injunction entered by the district court. *In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases, Roane et al. v. Barr*, No. 19A615 (Sup. Ct. Dec. 6, 2019).

Lee filed the complaint in the instant matter on December 2, 2019. *See* Complaint, Dkt. 1. As the execution date neared, Lee also filed a motion for preliminary injunction in this action. *See* Motion for Preliminary Injunction, Dkt. 4. However, Lee has formally withdrawn his clemency application because his execution date is no longer set, so he has also withdrawn his motion for preliminary injunction. *See* Motion to Withdraw, Dkt. 13, ¶ 5. The issues presented in the complaint and amended complaint remain live because Lee anticipates filing an application for commutation of his death sentence as soon as a new execution date is set. *See id.* ¶ 6. Thus, this case falls within the "capable of repetition yet evading review" exception to the mootness doctrine. *See Ralls Corp. v. Comm. on Foreign Investment in United States*, 758 F.3d 296 (D.C. Cir. 2014). Moreover, given that the Supreme Court has repeatedly recognized the compelling interest in the prompt enforcement of lawful capital sentences, *see, e.g.*, *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019), this Court should promptly decide whether Lee's complaint regarding his clemency petition should be dismissed to avoid motions for preliminary injunction in seriatim. Indeed, Lee previously sought a preliminary injunction in this case, despite the fact that this Court had already stayed his execution, and he has indicated his intention to do so again. *See* Motion to Withdraw, Dkt. 13, ¶ 7.

## II.     LEE'S CLEMENCY PETITION

The Department of Justice announced in a press release on July 25, 2019 that it had adopted a lethal injection protocol and that Lee would be executed by lethal injection on December 9, 2019. *See* Am. Compl., Dkt. 17, ¶ 15. Counsel for Lee prepared a formal petition for commutation of his death sentence pursuant to 28 C.F.R. § 1.10, which was filed August 30, 2019. *Id.* ¶ 16. In addition to addressing the petition to the President, Lee's attorneys provided the petition to the Office of the Pardon Attorney for review. *Id.* Lee's attorneys also submitted supplemental

materials to the Office of the Pardon Attorney in support of the petition on September 13, 2019 in accordance with 28 C.F.R. § 1.10. *Id.* At a minimum, portions of Lee's trial record and BOP files, including disciplinary reports, were provided to the Office of the Pardon Attorney for review. *Id.* ¶ 33.

In gathering supplemental information for the petition, counsel for Lee communicated with a BOP officer at Terre Haute about Lee and the type of inmate he was. *Id.* ¶¶ 20, 25-29. According to counsel for Lee, the officer described Lee as a good inmate who was easy to manage. *See id.* ¶ 25. Based on this conversation, counsel for Lee asked the BOP officer if he would be willing to provide a statement on Lee's behalf, and the officer indicated he would have to check with the legal department. *Id.* ¶ 30. Counsel for Lee then contacted BOP counsel seeking to obtain statements from the BOP officer. *Id.* In response to the request, BOP counsel explained the request may fall under BOP Program Statement 5840.04. Id. ¶ 31. Under Program Statement 5840.04, staff has the ability "to record an observation, express an opinion, or provide a recommendation for an inmate…through the unit team, Associate Warden, or Warden." *See* Declaration of Katherine Siereveld ("Siereveld Decl."), Dkt. 10-2, ¶ 6. Staff are not otherwise authorized to express an opinion regarding an inmate. *Id.* ¶ 5. The reasons for this policy and procedure are set forth in Program Statement 5840.04. *See id.* Specifically,

> The reasons for limiting the number of staff authorized to release official information are to: avoid implying "official" sanction of an evaluation or recommendation, when, in fact, it is one staff member's opinion[; and] avoid implying that a staff member's opinion provides a "total" evaluation of the inmate when that staff member's knowledge and perspective about the inmate may be quite limited.

*Id.* Siereveld also referred counsel for Lee to 28 C.F.R. § 571.41, a Department of Justice regulation which provides that "[w]hen specifically requested by the U.S. Pardon Attorney, the Director, Bureau of Prisons shall submit a recommendation on the petition," and that "[p]rior to

7

making a recommendation, the Director may request comments from the Warden at the institution where the inmate is confined." *See* Am. Compl., Dkt. 17, ¶ 32; *see also* 28 C.F.R. § 571.41.

Pursuant to § 1.10, the Office of the Pardon Attorney scheduled an in-person hearing with Lee's attorneys to present evidence in support of the clemency petition. *See* Am. Compl., Dkt. 17, ¶ 33. The Office of the Pardon Attorney did not request a recommendation from BOP. *See* Siereveld Decl., Dkt. 10-2, ¶ 10.

Lee's amended complaint asserts he was denied Fifth Amendment due process in his clemency proceeding. He also asserts a First Amendment Free Speech claim on behalf of corrections staff at the BOP facility. Because Lee has no third party standing to assert the Free Speech claim and because the complaint fails to state a claim upon which relief can be granted as to both claims, the amended complaint should be dismissed.

## STANDARD OF REVIEW

Lee's amended complaint fails to state a claim for violation of due process. Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented must be presumed to be true and should be construed liberally in the plaintiff's favor. *Leatherman v. Tarrant Cty. Narcotics & Coordination Unit*, 507 U.S. 163, 164 (1993). Although notice-pleading rules are "not meant to impose a great burden on a plaintiff," *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 347 (2005), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks omitted). A plaintiff must put forth "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

Lee's First Amendment claim relies on his having third-party standing, which he cannot establish. Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the party seeking to invoke federal jurisdiction has the burden to establish that jurisdiction exists. *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 13 (D.D.C. 2010). While a court must grant the plaintiff the benefit of all inferences that can be drawn from the facts alleged in the complaint, "'the Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint.'" *Zaidan v. Trump*, 317 F. Supp. 3d 8, 16 (D. D.C. 2018) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D. D.C. 2006)). In examining a motion to dismiss under Rule 12(b)(1), the Court must "construe the complaint in light of the complaining party," but the factual allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Id.* at 13-14 (internal quotations omitted). Thus, before the Court may address the merits of his First Amendment claim, Lee must demonstrate he has standing to sue as the party invoking federal jurisdiction. *Id.* Third-party standing constitutes a "limited exception[ ]" to the general rule that "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Al-Aulaqi*, 727 F. Supp. 2d at 23 (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)). Because third party standing is the "exception" rather than the norm, the burden is on the plaintiff "to establish that [he] has third party standing, not on the defendant to rebut third party standing." *Id.* (quoting *Amato v. Wilentz*, 952 F.2d 742, 750 (3d Cir.1991)).

9

**ARGUMENT**

**I.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF FOR VIOLATION OF THE FIFTH AMENDMENT PROCEDURAL DUE PROCESS CLAUSE**

Lee asserts that he was denied due process because BOP policy prevented its employees from supporting his application for clemency.  However, Lee's complaint shows that he was given all the process he was entitled.  In *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272 (1998), the Supreme Court considered a due process claim in the context of a clemency proceeding.  Chief Justice Rehnquist, joined by Justices Kennedy, Scalia and Thomas, concluded in the plurality opinion that the Due Process Clause provides no constitutional safeguards as to clemency proceedings.  Specifically, the plurality rejected the notion that a state's "clemency procedures . . . violate due process" simply because they lacked the various procedures the inmate desired.  523 U.S. at 282.  As the plurality explained, where "the ultimate decisionmaker, the Governor, retains broad discretion[,] . . . the Governor's executive discretion need not be fettered by the types of procedural protections sought by respondent.  There is thus no substantive expectation of clemency.  A denial of clemency merely means that the inmate must serve the sentence originally imposed." *Id*. (citations omitted).  The plurality continued, "[p]rocedures mandated under the Due Process Clause should be consistent with the nature of the governmental power being invoked.  Here, the executive's clemency authority would cease to be a matter of grace committed to the executive authority if it were constrained by the sort of procedural requirements that respondent urges." *Id*. at 285.

Justice O'Connor's concurrence, which was joined by Justices Breyer, Ginsburg and Souter, concluded that some minimal procedural safeguards apply to clemency proceedings.  In dissent, Justice Stevens argued that the Due Process Clause applies to all proceedings up to the

10

inmate's final execution, including those involving clemency.   Thus, the Court's narrowest majority holding is that some minimal level of procedural due process applies to clemency proceedings.  *See Duval v. Keating*, 162 F.3d 1058, 1061 (1998).

Lee relies primarily on *Young v. Hayes*, 218 F.3d 850 (8th Cir. 2000), in which a death row inmate brought a Due Process claim against a circuit attorney for allegedly preventing a subordinate attorney from providing information to the Governor in connection with the inmate's clemency petition.  As the Eighth Circuit first made clear, the inmate had not advanced a claim that he "had a 'liberty interest' in the grant of clemency or the right to any particular outcome." *Id*. at 853.  Instead, the claim was that the "State, acting through the Circuit Attorney of the City of St. Louis, ha[d] deliberately interfered with the efforts of petitioner to present evidence to the Governor." *Id*.  The court likened this alleged interference to the "crime of tampering with a witness." *Id*. (citing Missouri criminal law Mo. Ann. Stat. Sec. 575.270(1)).  And, "[s]uch conduct on the part of a state official is fundamentally unfair":  "It unconscionably interferes with a process that the State itself has created.  The Constitution of the United States does not require that a state have a clemency procedure, but, in our view, it does require that, if such a procedure is created, the state's own officials refrain from frustrating it by threatening the job of a witness." *Id*.  As a result, the court granted the petitioner's stay of execution.  In addition to the fact that *Young* is factually distinguishable, the Eighth Circuit's recognition of a procedural due process right in this context in *Young* was based on a misconception of Justice O'Connor's concurrence in *Woodard*, in which the Justice said, "I do not . . . agree with the suggestion in the principal opinion that, because clemency is committed to the discretion of the executive, the Due Process Clause provides no constitutional safeguards." 523 U.S. at 288-89.  Rather, Justice O'Connor said, "the 'life'

11

interest protected by the Due Process Clause itself guarantees 'some minimal procedural safeguards' for state clemency proceedings involving death row inmates." *Id.*

As the Eleventh Circuit has explained, the "key word" in Justice O'Connor's concurrence was "'minimal.'" *Gissendaner v. Comm'r, Ga. Dep't of Corrections*, 794 F.3d 1327, 1333 (11th Cir. 2015) (quoting *Woodard*, 523 U.S. at 288-90). The Eleventh Circuit noted that "the only circumstances that Justice O'Connor's opinion identifies in which due process would be offended are truly outrageous ones, such as (1) 'a scheme whereby a state official flipped a coin to determine whether to grant clemency,' or (2) 'a case where the State arbitrarily denied a prisoner any access to its clemency process.'" *Id.* (quoting *Woodard*, 523 U.S. at 289). Accordingly, the Eleventh Circuit has rejected procedural due process claims of a death row inmate who claimed his rights were denied when the warden ordered prison staff not to speak with inmate's legal team. *Id.* (citing *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1268 (11th Cir. 2014)).

Since *Young*, the Eighth Circuit has adjusted course and fallen in line with the Eleventh Circuit. For example, in *Winfield v. Steele*, 755 F.3d 629, 632 (8th Cir. 2014), another clemency challenge in which a prison staff member was dissuaded from filing a letter in support of a Missouri inmate's clemency, the court held that Missouri's clemency process, while not "ideal," had provided "minimal procedural safeguards" and did "not approach the arbitrariness contemplated by Justice O'Connor in *Woodard*: a coin flip or an arbitrary denial of access to any clemency process application." In his concurrence, Judge Gruender advocated the abrogation of *Young*, noting that it "lacks support in relevant Supreme Court authority," and explaining that the majority approach of the appellate courts is to "take[] to heart Justice O'Connor's emphasis on the word 'minimal.'" *Id.* at 632 (Gruender, J., concurring) (citing *Faulder v. Tex. Bd. of Pardons & Paroles*, 178 F.3d 343, 344-45 (5th Cir. 1999) (focusing on whether the "extreme situations" identified by

12

Justice O'Connor were present); *Anderson v. Davis*, 279 F.3d 674, 676–77 (9th Cir. 2002) (identifying ways in which a state might violate procedural due process in its operation of clemency procedures); *Duvall v. Keating*, 162 F.3d 1058, 1061 (10th Cir. 1998)).

Most recently, in *Lee v. Hutchinson*, 854 F.3d 978 (8th Cir. 2017), involving a similar challenge in the clemency context, the Eighth Circuit's per curiam opinion does not even mention *Young*; instead, the court cited the Eleventh Circuit's holding in *Gissendaner* and ruled that despite clear violations of Arkansas law, regulations, and policy during the clemency process, Arkansas had still provided the minimal procedural safeguards required by the Constitution. *Id*. at 981 (citing *Woodard*, 523 U.S. at 289). Thus, *Young* is outdated; Lee's reliance on it and his failure to cite the Eighth Circuit's more recent case law demonstrates that his Due Process argument is unsupportable.

Rather, the clemency process at issue here clearly satisfies the minimal procedural safeguards required by Justice O'Connor. Lee admits that the Office of the Pardon Attorney allowed Lee's counsel to make "a presentation and submit[] evidence in support of his clemency petition to the presiding officials. During the proceeding, these officials . . . ma[de] clear that they had reviewed parts of his trial record and BOP files, including his disciplinary record." Am. Compl., Dkt. 17, ¶ 33. There is no allegation in the amended complaint that Lee's counsel was prohibited from including in their presentation the comments of the unnamed correctional staffer or any records counsel deemed relevant; that the BOP files and Lee's disciplinary record failed to indicate whether Lee had been involved in violent activity or misbehaved in any way; or that the Office of the Pardon Attorney was unable to obtain any additional information she deemed relevant. Therefore, Lee's amended complaint fails to state a claim for violation of the Due Process Clause of the Fifth Amendment.

II.    **LEE HAS NO THIRD PARTY STANDING TO ASSERT BOP EMPLOYEES' FIRST AMENDMENT FREE SPEECH CLAIM AND IN ANY EVENT THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF FOR VIOLATION OF THE FIRST AMENDMENT**

Lee also asserts a claim on behalf of BOP employees at USP Terre Haute Correctional Facility that Defendants' policy prohibits them from exercising their right to free speech. Lee's claim should be dismissed because 1) he lacks third-party standing to bring the claim and 2) the amended complaint fails to state a claim for relief for violation of the First Amendment Free Speech Clause.

### A.  Standing

Lee does not have third-party standing to assert the First Amendment rights of BOP employees.  "A party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of third parties.'"  *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (citation omitted).  Third party standing constitutes a "limited exception[]" to that general proposition and the plaintiff bears the burden of establishing third party standing.  *Al Aulaqi*, 727 F. Supp. 2d at 23.  As the D.C. Circuit has explained,

> The Supreme Court has articulated three prudential considerations to be weighed when determining whether an individual may assert the right of others: (1) '[t]he litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute,' (2) 'the litigant must have a close relation to the third party,' and (3) 'there must exist some hindrance to the third party's ability to protect his or her own interest.

*Lepelletier v. F.D.I.C.,* 164 F.3d 37, 43 (D.C. Cir. 1999) (citation omitted); *see Kowalski*, 543 U.S. at 129-30; *see also Powers v. Ohio*, 499 U.S. 400, 411 (1991); *see, e.g.*, *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017) (son could assert father's rights because father's failure to assert a claim in his own right "stems from disability" because the father was deceased).

Lee's amended complaint does not include allegations sufficient to support his claim that he has third party standing in this matter. First, the amended complaint fails to allege sufficient facts indicating that Lee has suffered an injury in fact. As an initial matter, the policy statement does not prohibit the expression of any views; it merely requires that if an employee wishes to express his views, he does so through a streamlined process set forth in the policy. The amended complaint alleges that an employee verbally represented to Lee's counsel that he or she would be willing to provide statements regarding Lee's "future dangerousness." *See* Am. Compl., Dkt. 17, ¶¶ 20-28. The amended complaint further alleges that the employee represented to counsel that "several" other employees would be willing to do the same and that authorization by the BOP would be required in order for them to provide statements. *Id.* Lee's counsel contacted counsel for the BOP and was referred to Program Statement 5840.04, which outlines the procedures for staff recommendations and correspondence to agencies and persons about BOP inmates, and 28 C.F.R. § 571.41. *Id.* ¶¶ 30-32.

The amended complaint alleges that the "actions and policies" of the BOP interfered with the BOP employee's ability to present information during the clemency process. However, there is no factual allegation in the amended complaint that any BOP employee attempted to provide information in accordance with the established procedure outlined in Program Statement 5840.04 and had the request denied. Nor is there any allegation that defendants hindered any employee's efforts to make such an attempt. In other words, the existence of the policy does not chill any BOP employee's speech. Because there is no allegation that any corrections staff was unable to provide their views about Lee, Lee in turn could not have suffered an injury in fact based on the challenged policy actions of the defendants. Plaintiff has amended the complaint in attempt to get around this problem, alleging that the officers have not come forward with statements because, "upon

15

information and belief" they "face official sanctions, including . . . loss of pay and possible termination . . . for attempting to do so." *See* Am. Compl., Dkt. 17, ¶ 22.  He further alleges he should be granted third-party standing because the officers "face grave obstacles—loss of pay, discipline, demotions, unwanted transfers, and possible termination among them . . . ." *Id.* ¶ 62. These inferences cannot be drawn from the facts alleged in the amended complaint, and the Court should not accept those inferences as true.  *See Zaidan*, 317 F. Supp. 3d at 16.

Moreover, Lee and his prison guards cannot reasonably be characterized as having a close relationship based on the complaint.  There is no indication that Lee and the guards deal with each other in any fashion other than the limited interaction necessary for the guards to perform their job function.  More importantly, there is no showing of any hindrance to the BOP employee's ability to protect his own First Amendment interests.  There is no allegation in the complaint that BOP employees are unable to advocate for their own rights.  Nor is there any allegation that BOP employees face systemic practical challenges to filing suit, *cf. Powers*, 499 U.S. at 414 (permitting criminal defendants to raise equal-protection challenges to race-based peremptory strikes due to the limited potential equitable relief, small financial stake, and cost of litigation, all of which keeps jurors from raising the claims themselves); *Singleton v. Wulff*, 428 U.S. 106, 117 (1976) (allowing physicians to challenge a law excluding abortions from Medicaid coverage because women may be chilled from filing suit due to a desire to protect their privacy and because of the risk that the case would soon be moot).  Finally, there is no indication that the First Amendment claim of the BOP employee would be imminently moot, *cf. Singleton,* 428 U.S. at 117 (pregnant women); *Craig v. Boren,* 429 U.S. 190, 192, 97 S. Ct. 451 (1976) (men aged eighteen to twenty).

The Seventh Circuit case Lee cites—*Shimer v. Washington*, 100 F.3d 506, 508-09 (7th Cir. 1996)—was wrongly decided.  There the court made no attempt to assess the relationship between

16

the prison guard and the inmate, or determine whether there is any hindrance to the prison guards' ability to advocate their own First Amendment rights.  All the court said was that the general rule against third party standing is relaxed in the First Amendment context and that there was a potential chilling effect on the prison guard's protected speech.  The Supreme Court, however, has never held that the third-party standing standard is more relaxed in the First Amendment context.  Accordingly, *Shimer* is inapposite.

### B.  Failure to State a Claim for Relief

Assuming Lee has standing to bring the claim, the amended complaint fails to state a claim for relief for a violation of the First Amendment Free Speech Clause. The standard governing a BOP employee's asserted First Amendment right to support an inmate's clemency petition is articulated in *Pickering v. Board of Education*, 391 U.S. 563, 574 (1968) and its progeny.  As the Supreme Court explained in *Garcetti v. Ceballos*, 547 U.S. 410, 418–20 (2006), "*Pickering* and the cases decided in its wake identify two inquiries to guide interpretation of the constitutional protections accorded to public employee speech. The first requires determining whether the employee spoke as a citizen on a matter of public concern.  If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* at 418 (citation omitted).  "If the answer is yes, then the possibility of a First Amendment claim arises." *Id.*

Here, the BOP employee referenced by Lee is not attempting to speak as a private citizen. He is trying to provide his views and observations of Lee as a prison guard—views and observations he or she would not have obtained but for the prison guard position, and that he otherwise is allowed to record as part of his official duties.  In fact, BOP's policy on processing BOP employees' views about an inmate's clemency petition is designed precisely to address such

17

a scenario. Thus, he is speaking in his capacity as the prison guard. *See Garcetti*, 547 U.S. at 421 ("The controlling factor in Ceballos' case is that his expressions were made pursuant to his duties as a calendar deputy. . . . We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline"). Moreover, the matter of whether Lee has been a model inmate (including whether he poses a danger to others) is inherently a matter of private concern—it concerns only Lee's clemency, which is a highly discretionary decision belonging solely to the President in the first place. Accordingly, the BOP employee would have no cognizable First Amendment claim even if he had been injured by the policy and decided to challenge it.

Even if the Court were to find that the BOP employee is speaking as a private citizen on a matter of public concern, the BOP may still restrict his First Amendment expression to the extent necessary for BOP to "operate efficiently and effectively." *See Garcetti*, 547 U.S. at 418-20. Again, as the Supreme Court explained in *Garcetti*, "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services. . . . Public employees, moreover, often occupy trusted positions in society. When they speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions." *Id.* at 419.

Here, BOP clearly has a legitimate government interest in a streamlined process of providing information about an inmate's clemency application, particularly given the number of federal inmates in its custody, the possibility of individual guard bias, and potential inmate influence. BOP's policy statement provides that "[s]taff who want to record an observation,

18

express an opinion, or provide a recommendation for an inmate must do so through the inmate's unit team, Associate Warden, or Warden." *See* BOP Program Statement 5840.04, ¶ 7(b) (attached to Siereveld Declaration, Doc. 10-2, as Exhibit B). This is so that the unit team can then "combine and balance recommendations based on a knowledge of the inmate's history, adjustment, and progress in all areas." *Id.* As the BOP has explained, "the reasons for limiting the number of staff authorized to release official information are to: avoid implying "official" sanction of an evaluation or recommendation, when, in fact, it is one staff member's opinion[; and] avoid implying that a staff member's opinion provides a "total" evaluation of the inmate when that staff member's knowledge and perspective about the inmate may be quite limited." *Id.* ¶ 7(c). These are compelling reasons, and they clearly outweigh any BOP employee's desire to express his views through the inmate's counsel as opposed to the institutional process governing the presentation of such views.

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be granted.

Respectfully submitted,

CODY HILAND
United States Attorney
Eastern District of Arkansas

By:
*/s/ Shannon S. Smith*
SHANNON S. SMITH (AR Bar No. 94172)
JAMIE G. DEMPSEY (AR Bar No. 2007239)
Assistant United States Attorney
P.O. Box 1229
Little Rock, AR 72203
501.340.2600
shannon.smith@usdoj.gov
jamie.dempsey@usdoj.gov

19

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2020, I caused a true and correct copy of foregoing to

be served on all counsel of record listed below via the Court's CM/ECF system.

Ruth Friedman
John Paul Nidiry
Federal Capital Habeas Project
Federal Defender for the District of Maryland
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
ruth_friedman@fd.org
john_nidiry@fd.org

David S. Victorson
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC  20004
david.victorson@hoganlovells.com

Pieter Van Tol
HOGAN LOVELLS US LLP
390 Madison Ave
New York, NY  10017
pieter.vantol@hoganlovells.com

*/s/ Shannon S. Smith*_____
Assistant United States Attorney