## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DANIEL LEWIS LEE** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 1:19-cv-03611** |
| | : | |
| **WILLIAM P. BARR, et al.** | : | |
| | : | |
| **Defendants.** | : | **EXECUTION SCHEDULED FOR** |
| | : | **JULY 13, 2020 AT 8:00AM EST** |

## MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION FOR PRELIMINARY INJUNCTION

This memorandum is respectfully submitted in support of Plaintiff Daniel Lee's motion

pursuant to Fed. R. Civ. P. 65 for entry of a Preliminary Injunction enjoining Defendants

Attorney General William P. Barr; Deputy Attorney General Jeffrey A. Rosen; Acting Pardon

Attorney Rosalind Sargent-Burns; Federal Bureau of Prisons Director Michael Carvajal[1]; Federal

Bureau of Prisons Regional Director Jeffrey E. Krueger; and United States Penitentiary Terre

Haute, Indiana Complex Warden T.J. Watson, who are all being sued in their official capacities;

the United States Department of Justice ("DOJ"); the Federal Bureau of Prisons ("BOP"); and

the Office of the Pardon Attorney, from deliberately interfering with and obstructing Mr. Lee's

ability to obtain and present favorable, material evidence in the executive clemency process for

individuals under a death sentence, in violation of his Fifth Amendment right to due process; and

in violation of the First Amendment rights of correctional officers who wish to provide critical

information in the form of declarations or testimony in support of Mr. Lee's clemency

---

[1] Michael Carvajal replaced Defendant Kathleen Hawk Sawyer as Federal Bureau of Prisons Director after Mr. Lee filed an Amended Complaint in this action. *See* Amended Complaint, *Lee v. Barr, et al.,* 1:19-cv-03611, Dkt. 17, ¶ 6 (D. D.C. Feb. 12, 2020).

1

application but have been barred from doing so as a result of Defendants' actions and policies. Mr. Lee further moves to enjoin Defendants from carrying out his scheduled execution until he has had an opportunity to obtain and present this evidence.

But for Defendants' actions and policies, favorable, material evidence available from members of the correctional staff at the United States Penitentiary in Terre Haute, Indiana (USP Terre Haute), where Mr. Lee is incarcerated, could be obtained and presented in support of his petition for commutation of his sentence. The evidence, among other things, directly refutes false allegations made by the prosecution at his 1999 capital sentencing proceeding about his "future dangerousness" and propensity for violence in a prison setting. The motion is supported by facts contained in Mr. Lee's Amended Complaint for declaratory and injunctive relief filed on February 12, 2020, *see* Amended Complaint, *Lee v. Barr, et al.,* 1:19-cv-03611, Dkt. 17 (D. D.C.); and this accompanying memorandum in support of this motion and Exhibits, filed on this date.

## I.    Factual Background

On the evening of Monday, June 15, 2020, a mere 72 hours after the Court of Appeals for the D.C. Circuit issued its mandate in ongoing litigation surrounding the Government's execution protocol, Mr. Lee received notification that his execution had been scheduled for July 13, 2020. *See In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-5322, Dkt. 53 (D.C. Cir. June 12, 2020); *see also* Defendants' Notice Regarding Execution Dates, *In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 1:19-mc-00145, Doc. 99 (D. D.C. June 15, 2020). His will be the first federal execution in decades. *See* Amended Complaint, ¶15. Defendants scheduled Mr. Lee's execution date for just weeks away knowing full well that doing so would severely curtail his ability to meaningfully utilize the

procedures developed for the public and individuals in federal custody to seek relief from the President in the form of executive clemency, and those specific procedures designed for death-sentenced prisoners seeking such relief.[2] *See* 28 C.F.R. § 1.1-1.11. And they knew full well that doing so would pressure Mr. Lee to litigate, and this Court to consider, the weighty issues surrounding his case, the clemency process, and his execution under immense time constraints.

Nonetheless, the constitutional violations alleged in his Amended Complaint—relating to Defendants' obstruction of and deliberate interference with Mr. Lee's ability to obtain and present evidence from correctional officers, and with the correctional officers' First Amendment rights to speak in support of his clemency petition—continue unabated. In fact, the Office of the Pardon Attorney (OPA)—one of the defendants in this matter—appears to have taken further obstructive action. It is the understanding of the undersigned that OPA recently assisted the U.S. Attorney's Office for the Eastern District of Arkansas in its efforts, in ongoing litigation, to thwart Mr. Lee's ability to obtain and present additional favorable evidence in the clemency process. Despite its refusal to provide counsel with a transcript of the prior meeting between Mr. Lee's attorneys and the Pardon Office (claiming that clemency is not an adversarial process), upon information and belief it provided that same transcript (and potentially other material as well) to the local U.S. Attorney to employ in litigation against a separate effort Mr. Lee has undertaken to gather evidence in support of clemency. *See* Exh. 1, 2020.06.17 Email from

---

[2] Among other requirements, 28 C.F.R. § 1.10 sets forth a time frame of "30 days after the petitioner has received notification from the Bureau of Prisons of the scheduled date of execution" for filing a clemency petition in a capital case, and "15 days after the filing of the petition itself" for submission of "all papers in support of a petition." Although the Government scheduled Mr. Lee's execution date for less than 30 days from when he was notified—a significantly truncated process—he plans to file his clemency petition and supporting papers as soon as possible in advance of the scheduled execution date. *See* § 1.10; *see also* Dkt. 22 (Plaintiff's Notice Regarding Execution Date).

AUSA to Counsel for Mr. Lee (filed under seal)[3]; *see also* Exh. 5, Declaration of Elizabeth

Luck, ¶ 4; *see also* Amended Complaint, ¶ 33 n.9. Mr. Lee still has no remedy at law for the

constitutional violations for which he seeks redress, and without the requested relief, he faces the

prospect of being executed with those violations standing uncorrected.

When the Government had previously planned to execute Mr. Lee on December 9, 2019,

he timely filed an application for commutation of his sentence with Defendant Office of the

Pardon Attorney, which is part of the cabinet-level agency, Defendant DOJ. *See* Amended

Complaint ¶¶ 16-19. He did so in compliance with and pursuant to the formal procedures set

forth in 28 C.F.R. § 1.1-1.11. Although his clemency petition remained pending when the

Complaint initiating this lawsuit was filed[4], he later withdrew his petition in light of § 1.10(e),

which states: "Only one request for commutation of a death sentence will be processed to

completion, absent a clear showing of exceptional circumstances." *See also* Dkt. 13, p. 2-3. He

also subsequently withdrew a previously filed Motion for Preliminary Injunction, which the

Court, on December 31, 2019, permitted, without prejudice to renew. *See* Dkt. 13. Now—in light

of the July 13th execution date the Government has chosen—Mr. Lee seeks injunctive relief from

this Court while he simultaneously pursues clemency relief, pursuant to § 1.1-1.11, on a grossly

truncated timeline.

As explained in his Amended Complaint, these formal procedures have been developed,

by necessity, over the course of American history as the administrative system generally, and the

federal justice system more specifically, have grown in size and complexity. *See* Amended

---

[3] Ex. 1 has been filed under seal and Mr. Lee respectfully refers the Court to that document for further details.

[4] As noted previously, Mr. Lee filed an Amended Complaint on February 12, 2020. *See* Dkt. 17.

Complaint, ¶¶ 36-47. They have also notably, for more than a half-century, been described in federal regulations formally published for the public, and include substantial requirements for members of the public and death-sentenced prisoners like Mr. Lee to meet, in order to have their petitions for executive clemency properly considered; they, moreover, as is apparent from the regulations, authorize various administrative officials within the DOJ to undertake certain duties in the clemency process, in order to ensure that the cases worthy of relief are before the President. *See* Amended Complaint, ¶¶ 16-19; 36-47.

In the course of attempting to utilize these mandatory procedures and submit evidentiary support for the grounds raised in his previously filed clemency petition (and which he will raise in his forthcoming petition), Mr. Lee learned that Defendant BOP's employees—members of the corrections staff at USP Terre Haute, where he is incarcerated in the Special Confinement Unit (SCU)[5] with other federally death-sentenced prisoners—have critical information they want to provide on behalf of Mr. Lee's commutation effort. *See* Amended Complaint ¶¶ 20-29; *see also* Exh. 2, Declaration of George G. Kouros[6], ¶¶ 3-13 ("Kouros Declaration"). The information these staff members wish to share includes but also goes beyond both the run-of-the-mine positive character evidence typically marshaled by clemency petitioners and that which demonstrates his positive adjustment while in custody, a factor typically considered important for obtaining clemency.[7] The corrections officers' accounts and opinions, which in some

---

[5] The Special Confinement Unit (SCU) at USP Terre Haute is, as its name suggests, a special unit designed for inmates with "maximum custody" classification and enhanced security measures implemented by specially trained staff.

[6] Mr. Kouros is one of Daniel Lee's attorneys.

[7] *See, e.g.,* Section 9-140.113 of the Justice Manual (Standards for Considering Commutation Petitions) (noting "demonstrated rehabilitation" while in custody among factors); *see also, e.g.,* Arkansas State Commutation Application (noting exemplary institutional adjustment among

instances are based on close to twenty years of daily interactions and close contact, offer proof—

from uniquely positioned Government sources[8]—of one of Mr. Lee's central arguments about

the worthiness of clemency relief in his case. *See* Amended Complaint ¶¶ 17-19; 20-29; *see also*

Exh. 2, Kouros Declaration, ¶¶ 3-13. That is, their accounts and opinions powerfully and directly

refute false allegations made by the prosecution at trial about Mr. Lee's "future dangerousness"

and propensity for violence, which were used to secure his death sentence. *See* Amended

Complaint ¶¶ 17-19; 20-29.

When Mr. Lee sought to obtain this material evidentiary support from the corrections

officers so that it could be presented to the administrative officials within the DOJ—the Office of

the Pardon Attorney—who are tasked with taking such evidence in the clemency process and

making favorable recommendations to the President regarding petitions filed with them, he

encountered deliberate interference with and obstruction of his ability to do so.[9] *See* Amended

Complaint ¶¶ 30-35. The officials in the Office of the Pardon Attorney have already made clear

during the prior proceeding, pursuant to 28 C.F.R. 1.10(c), at which Mr. Lee first presented his

---

"Reasons for Requesting a Commutation") *available at* https://www.paroleboard.arkansas.gov/Websites/parole/images/CommutationApplication021909.pdf (last visited June 22, 2020).

[8] Mr. Lee will present evidence, as he did previously, from other sources to the Office of the Pardon Attorney to debunk the "future dangerousness" allegations. *See, e.g.,* Amended Complaint, ¶ 19; *see also, e.g.,* Exh. 3, Declaration of Kathleen Altman (Ms. Altman knew Mr. Lee prior to his arrest in the capital proceeding and described the circumstances in which he saved her son's life); *see also*, Exh. 4, Declaration of Juror, ¶¶ 12-16 (a juror who was reluctant to believe Mr. Lee posed a continuing threat of violence, nonetheless sentenced him to death; the juror explained the prosecution's misleading presentation about Lee escaping culpability for a prior murder was important to the jury as a whole and ultimately swayed this juror's vote).

[9] *See* Exhibit attached to Exh. 2, Kouros Declaration (Redacted Email correspondence between Attorney Kouros and USP Terre Haute counsel Siereveld, p. 1-6).

case for clemency, that his alleged "future dangerousness," prison record and behavior are matters of grave concern to them; yet, the evidence—expressions of support containing detailed information from corrections officials who are particularly well-situated to speak on those matters—is being precluded from consideration in the capital clemency process. *See* Amended Complaint ¶ 33; *see also* Exh. 5, Declaration of Elizabeth Luck, ¶¶ 1-5.

Mr. Lee seeks immediate redress from this Court to prevent irreparable harm to him and to the USP Terre Haute correctional officers on behalf of whom he has third party standing to bring this lawsuit. Defendants' actions and policies barring him from access to this evidence violate his due process rights under the Fifth Amendment as well as the First Amendment rights of the correctional officers who wish to provide critical information in the form of declarations or testimony in support of him in the clemency process, but face the prospect of reprisals and other job-related harms for doing so. *See* Amended Complaint ¶¶ 21-22, 48-67. These constitutional violations, the facts from which they arise, and the relief requested are inextricably intertwined. The relief sought is necessary and appropriate in order to allow Mr. Lee and the correctional officers to exercise their rights unencumbered by Defendants' actions and policies, while Mr. Lee utilizes the mandatory procedures created for pursuing capital clemency relief.  If Mr. Lee's execution is allowed to proceed without a fair and unobstructed clemency process, Mr. Lee will be deprived of the Fifth Amendment due process rights to which he is entitled, and the First Amendment rights of the officers who wish to provide information in the form of declarations or testimony in support of him in the clemency process will be extinguished. *See id.*

## I.      Argument

Courts consider four factors before granting a preliminary injunction: (1) the threat of irreparable injury to the plaintiff if an injunction is not granted; (2) the likelihood that other

interested parties will suffer substantial harm if injunctive relief is granted; (3) the interests of the

public; and (4) the likelihood of the plaintiff's eventual success on the merits. *Winter v. NRDC,*

*Inc.*, 555 U.S. 7, 20 (2008). The application of these factors in Mr. Lee's case establishes the

necessity for the requested relief.

### A.  Mr. Lee is Substantially Likely to Succeed on the Merits.

At this stage, Mr. Lee need only show a substantial likelihood of eventual success on the

merits of his claims for relief, and the Court may issue the requested relief if he can meet that

standard as to any one of his claims. Claim One and Claim Two of his Complaint arise under the

Due Process Clause of the Fifth Amendment; Claim Three relies on the Free Speech Clause of

the First Amendment. *See* Amended Complaint ¶¶ 48-67.

### 1.  Defendants violated Mr. Lee's Fifth Amendment right to Due Process.

Mr. Lee raises two distinct but interrelated Fifth Amendment due process claims, and as

to both, he can establish a substantial likelihood on the merits.

### a.      Deprivation of Fifth Amendment Right to Due Process—Defendants' Deliberate Interference with Mr. Lee's Ability to Obtain and Present Material Evidence from BOP Correctional Officers in Support of his Petition for Clemency.

The Due Process Clause of the Fifth Amendment prohibits the Government from

deliberately interfering with a witness's ability to speak with the representatives of a criminal

defendant. The law on this matter is well-settled. *See, e.g., Gregory v. United States*, 369 F.2d

185, 187-89 (D.C. Cir. 1966); *United States v. Agostino*, 132 F.3d 1183, 1191 (7th Cir. 1991)

("clear showing that the government instructed the witness not to cooperate with the defendant"

violates due process and requires reversal); *United States ex rel. Jones v. DeRobertis*, 766 F.2d

270, 273 (7th Cir. 1985) (right to due process violated "if the state artificially restricted the

defendant's ability to obtain evidence" by directing witness not to speak with defense); *United*

*States v. Long*, 449 F.2d 288, 295 (8th Cir. 1971) ("both sides have an equal right and should have an equal opportunity to interview [witnesses]."); *United States v. Gonzalez*, 164 F.3d 1285, 1292 (10th Cir. 1999) (defendant has "a right to be free from prosecution interference with a witness' freedom of choice about whether to talk to the defense"); *United States v. Walton*, 602 F.2d 1176, 1179-80 (4th Cir. 1979) ("A witness is not the exclusive property of either the government or a defendant; a defendant is entitled to have access to any prospective witness…").

The Due Process Clause protections afforded to Mr. Lee extend beyond the trial proceeding. *See, e.g., Blackledge v. Perry*, 417 U.S. 21, 28-29 (1974) (due process prohibits prosecutorial retaliation for defendant's decision to seek retrial); *North Carolina v. Pearce*, 395 U.S. 711 (1969) (due process prohibits judicial vindictiveness in resentencing after defendant prevailed on appeal); *Douglas v. Buder*, 412 U.S. 430, 432-33 (1973) (due process prohibits probation revocation absent violation of express or clearly implied condition of probation).

Importantly, the protections of the Due Process Clause apply to capital clemency proceedings like Mr. Lee's and the Government is prohibited from arbitrarily or perniciously denying a death-sentenced prisoner access to its clemency process. *See Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 288-89 (1988) (O'Connor, J., concurring); *see also Young v. Hayes*, 218 F.3d 850, 853 (8th Cir. 2000) (granting stay of execution and remanding case with looming execution date in light of state actor's deliberate interference with petitioner's ability to present evidence to Governor in support of clemency petition, which violated Due Process protections).

Just like the death-sentenced petitioner in *Young*, Mr. Lee has encountered obstruction and deliberate interference by Government officials; those officials, all of whom are part of the DOJ, have continued, through their actions and agency policies, to thwart his ability to gather

and present favorable, material evidence from important witnesses, USP Terre Haute correctional staff members, that both supports his clemency application and directly and powerfully refutes the claim that he poses a "future danger." As demonstrated by the questions posed to Mr. Lee's counsel by officials in the Office of the Pardon Attorney—officials tasked with reviewing, investigating and deciding whether to make a favorable recommendation on his application—falsehoods about his propensity for violence both matter to key decision-makers in the clemency process and persist unchallenged as a direct result of deliberate interference in that process. *See* Amended Complaint, ¶ 33. Defendants, Government actors who are themselves part of the prosecuting body, are obstructing his access to material evidence that powerfully undermines misrepresentations on which their case for death relies from being presented in the clemency process. As a result of Defendants' deliberate interference, Mr. Lee, as with the petitioner in *Young*, has been deprived of a meaningful opportunity to utilize procedures that he must comply with to pursue executive clemency relief, a fundamental protection afforded to him under the Fifth Amendment.

In light of the strength of his constitutional claim under the Fifth Amendment, Mr. Lee has met the threshold showing that establishes a substantial likelihood of success on the merits.

> **b.      Deprivation of Fifth Amendment Right to Due Process—Defendants' Actions and Policies Stripped Mr. Lee of the Basic Procedural Safeguards He is Entitled to in Capital Clemency Proceedings.**

The Due Process Clause of the Fifth Amendment also guarantees that Mr. Lee be afforded basic procedural safeguards in clemency proceedings, where the Government has created specific procedures for petitioners to utilize in seeking clemency. *See Woodard*, 523 U.S. at 288-89 (O'Connor, J., concurring); *see also, Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980)

(where government creates discretionary system for jurors, defendant has liberty interest in exercise of that discretion); *see also Young*, 218 F.3d at 853.

As noted above, and in the Amended Complaint, the review and consideration of requests for clemency were once an informal, ad hoc undertaking involving only the President and a few of his closest advisors. That is no longer the case: a modern day system has been developed over time, operating with the hallmarks of the administrative state—duties related to the handling, investigation, and consideration of clemency petitions, for example, have by and large been delegated to career officials in the Office of the Pardon Attorney, positions created and funded by Congress, and other legislatively created agencies within the DOJ bureaucracy; and formal agency regulations have been promulgated for the general public and these administrative officials to follow. *See* Amended Complaint, ¶¶ 36-47. At this point, countless persons seeking justice through the different forms of clemency relief, including those potentially eligible for pardon, the almost two hundred thousand in federal custody,[10] and the sixty-two under federal death sentence,[11] who have no direct line to the President, are, thus, by legislative and executive branch design steered to and dependent on this firmly rooted administrative system. *Id.*

Facing what he and other stakeholders in his case believe is an unjust execution, *see* Amended Complaint, ¶¶ 17-18, Mr. Lee has turned to the traditional "'fail safe' in our criminal justice system." *Herrera v. Collins*, 113 S.Ct. 853, 868 (1993). In order to obtain such relief, he has no choice but to rely on the mandatory clemency process that the Government itself has

---

[10] *See* U.S. DEP'T OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, BUREAU OF JUSTICE STATISTICS, PRISONERS IN 2018 (April 2020), *available at* https://www.bjs.gov/content/pub/pdf/p18.pdf (last visited June 22, 2020).

[11] Federal Capital Habeas Project, *Growth in Federal Death Row Population*, *available at* https://2255.capdefnet.org/General-Statistics/Growth-Federal-Death-Row-Population (last visited June 22, 2020).

11

created for review and consideration of clemency petitions for individuals under sentence of

death. He has sought to follow the requirements, adhere to the deadlines, and utilize the

procedures made available to him, pursuant to the regulations formally published for the public

and prisoners alike, and those that apply in particular to capital cases. However, Defendants'

interference in that process has prevented Mr. Lee, and continues to prevent him, from obtaining

and presenting significant evidence in support of his petition. To be clear, Mr. Lee is not seeking

any more process than he believes he is due—he does not request the Government's assistance in

seeking discovery here; nor does he request any expansion of or additions to the existing

clemency process. He simply asks in this case to avail himself of the existing process for capital

clemency petitioners, free from Defendants' deliberate interference. As a panel of the Eighth

Circuit rightly noted in granting relief to a similarly situated clemency petitioner in *Young*, such

"conduct on the part of a state official is fundamentally unfair. It unconscionably interferes with

a process that the State itself has created. The Constitution of the United States does not require

that a state have a clemency procedure, but, in our view, it does require that, if such a procedure

is created, the state's own officials refrain from frustrating it by threatening the job of a witness."

*Young*, 218 F.3d at 853.

Thus, on this Fifth Amendment ground, Mr. Lee has also established a substantial

likelihood of success on the merits.

> **2. Deprivation of First Amendment Rights to Free Speech—Defendants'
> Actions and Policies Prohibit USP Terre Haute Correctional Staff Members
> from Exercising Their Rights to Provide Information in Support of Mr. Lee's
> Petition for Executive Clemency.**

Mr. Lee, in his Amended Complaint, meets third party standing criteria to assert a

cognizable and compelling claim for relief under the Free Speech Clause of the First

Amendment, on behalf of USP Terre Haute correctional staff who wish to provide statements in

support of his clemency petition but who have been barred from doing so due to the Defendants' actions and policies. *See* Amended Complaint ¶¶ 20-24, 61-67; *see also Lepelletier v. F.D.I.C.*, 164 F.3d 37, 43 (D.C. Cir. 1999) (to establish third party standing, "(1) '[t]he litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute,' (2) 'the litigant must have a close relation to the third party,' and (3) 'there must exist some hindrance to the third party's ability to protect his or her own interests.'") (internal citations omitted).

Mr. Lee's claim may be considered because he has a life-or-death stake in the outcome of the capital clemency proceeding and because of the close relationship and alignment of interests between Mr. Lee and the corrections officers, as well as the repercussions the corrections officers face for aggressively pursuing their interest—apparently in violation of policies—in providing declarations or testimony in support of Mr. Lee's application. *See Powers v. Ohio*, 499 U.S. 400, 409-412 (1991) (criminal defendants have standing to assert the interests of minority jurors improperly removed by the state both because of the practical difficulties in expecting jurors to litigate the matter themselves, and because defendants' stake in the outcome of the proceeding assures they will litigate the claim aggressively); *see also Shimer v. Washington*, 100 F.3d 506, 508-09 (7th Cir. 1996) (clemency petitioner allowed to pursue relief for First Amendment violations on behalf of prison guards, where the guards indicated their willingness to write on petitioner's behalf but refrained from doing so in light of restrictive prison policy).

Mr. Lee undoubtedly has a concrete interest in this litigation: he seeks clemency relief, which for him, as noted above, is a matter of life or death. *See* Amended Complaint ¶ 62. The prohibition on correctional staff members' ability to provide information in support of him in the clemency process "will affect him adversely," and may "hinder the flow of information—a

13

procedural defect which may act to his detriment." *See id.*; *see also, Shimer*, 100 F.3d at 508. The information the correctional staff members wish to share is "particularly pertinent," as it is they "who have daily contact with [Mr. Lee] and therefore can realistically assess his person." *Id.; see also,* Amended Complaint ¶¶ 22-24, 62. The information they wish to provide, moreover, has enhanced importance because it refutes false and inflammatory allegations about his purported "future dangerousness." *See id.* at ¶¶ 25-29, 62.

As noted in his Amended Complaint, Mr. Lee and the corrections officers also have a sufficiently close relationship, and his interest in presenting declarations or testimony from those officers is identical to and closely aligned with the officers' interest in expressing their support for him. *See id.* at ¶¶ 20, 22-24, 34, 62 (describing the nature of their relationship, close interactions, and basis for the SCU officers' opinions about Mr. Lee); *see also Lepelletier*, 164 F.3d at 44; *see also*, *Aid for Women v. Foulston*, 441 F.3d 1101, 1113 (10th Cir. 2006) ("The concern behind the 'close relationship' element is whether 'the third party can reasonably be expected properly to frame the issues and resent them with the necessary adversarial zeal'" (quoting *Sec'y of State of Md. v. Joseph H. Munson Co, Inc.*, 467 U.S. 947, 956 (1984)). And because those interests are so inextricably connected, Mr. Lee will serve as a zealous advocate on behalf of the officers, who face serious consequences and obstacles, including discipline, loss of pay, and possible termination among others—for pursuing this lawsuit on their own behalf, effectively chilling their speech. *See* Amended Complaint ¶¶ 21-22, 62. Such circumstances represent the sort of "practical obstacles" contemplated in the third-party standing context. *See Joseph H. Munson Co, Inc.*, 467 U.S. at 956; *see also Pennsylvania Psychiatric Soc. v. Green Spring Health Services, Inc.*, 280 F.3d 278, 290 (3rd Cir. 2002) (explaining that "a party need not face insurmountable hurdles to warrant third-party standing") (citing *Powers*, 499 U.S. at 415).

14

The fact that the correctional officers may have elected to remain silent, rather than to speak and potentially lose their jobs or suffer other adverse consequences, does not affect justiciability. *See Steffel v. Thompson*, 415 U.S. 452, 458-59 (1974) (petitioner who elects to remain silent, rather than to speak and risk prosecution, may still challenge a statute under First Amendment; "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights").

The USP Terre Haute correctional officers, moreover, wish to provide material information in support of Mr. Lee's clemency petition in their capacity as private citizens, outside their official job duties, and, as such, they have a constitutionally protected interest in freedom of speech that cannot be suppressed under threat of reprisal, discipline, or discharge. *See* Amended Complaint ¶¶ 24, 63-64; *see also Lane v. Franks*, 573 U.S. 228, 234, 239-40 (2014) ("the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech. The critical question…is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."); *see also Garcetti v. Ceballos,* 126 S.Ct. 1951, 1958 (2006) ("The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens"); *Pickering v. Board of Education*, 391 U.S. 563, 574 (1968) (noting that "it is apparent that the threat of dismissal from public employment is…a potent means of inhibiting speech."). Here, although the officers' suppressed speech may very well be informed by their on-the-job time and experience with Mr. Lee, they are not seeking to speech as employees in uniform or in their on-the-job prison setting, and

15

providing expressions of support to the Offiec of the Pardon Attorney is not encompassed in their job duties. *See* Amended Complaint ¶ 23.

The USP Terre Haute corrections officers' prohibited speech also clearly addresses a matter of public concern. *See Lane*, 573 U.S. at 241 (speech "involves matters of public concern 'when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'") (internal citations omitted). As noted in his Amended Complaint, the officers' speech relates to the Government's highly publicized interest[12] in carrying out Mr. Lee's execution—notably what could be the first execution by the Federal Government in over sixteen years—"despite grave constitutional violations and serious allegations of official misconduct," and refutes the "future dangerousness" ground on which his death sentence rests. Amended Complaint ¶ 64. It also relates to subject matters—the restarting of federal executions, Mr. Lee's execution, his clemency bid, the inequities in his case, among them—that have garnered much attention in the public sphere. *Id.* And the correctional officers' ability to speak as private citizens to administrative officials involved in the exercise of the "'fail safe'" remedy of clemency, *see Herrera*, 113 S.Ct. at 868, and provide an accurate picture of Mr. Lee's good character and behavior in prison, surely outweighs the interest of their employer "in promoting efficiency of the public services it performs through its employees." *See* Amended Complaint ¶ 64; *see also Pickering*, 391 U.S. at 568; *Connick v. Myers*, 461 U.S. 138, 147-48 (1983); *Garcetti*, 126 S.Ct. at 1956-59; *Eberhardt v. O'Malley*, 17 F.3d 1023, 1026 (7th Cir.

---

[12] *See* Amended Complaint ¶ 15; *see also* Press Release, U.S. Department of Justice, "Executions Scheduled for Four Federal Inmates Convicted of Murdering Children" (June 15, 2020), *available at* https://www.justice.gov/opa/pr/executions-scheduled-four-federal-inmates-convicted-murdering-children (last visited June 22, 2020)

1994) ("The greater the potential social, as distinct from purely private, significance of the employee's speech, the less likely is the employer to be justified in seeking to punish or suppress it."). Courts around the country have recognized that statements on equally or less pressing matters occupy "the highest rung of hierarchy of First Amendment values." *Connick*, 461 U.S. at 145; *see Barnard v. Jackson County, Mo.*, 43 F.3d 1218, 1225 (8th Cir.), *cert denied*, 516 U.S. 808 (1995) (collecting cases); *see, e.g., Buzek v. County of Saunders*, 972 F.2d 992, 995 (8th Cir. 1992) (letter written voluntarily by police officer on defendant's behalf at sentencing was a matter of public concern).

In light of the above, Mr. Lee has demonstrated a strong likelihood of success on the merits of his First Amendment claim.

### B. Mr. Lee, and the Correctional Officers he has Sued on Behalf of, Will Suffer Irreparable Harm Unless the Preliminary Injunction is Issued.

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." 11 Wright & Miller, *Federal Practice and Procedure*: Civil § 2948. When the deprivation of a constitutionally protected right is involved, no further showing of irreparable injury should be required. *Deerfield Med. Center v. City of Deerfield*, 661 F.2d 328, 338 (5th Cir. 1981) (determination that the constitutional right to privacy was either threatened or in fact being impaired "mandates a finding of irreparable injury"); *see also, Vitek v. Jones*, 445 U.S. 480, 486 (1979) (while prisoner was "under threat" of being transferred to a mental hospital in the future, his challenge to procedures governing transfer was not moot).

Although no further showing of irreparable injury may be required, the gravity of harm here, if the requested relief is not granted, bears mention—it is no less than the irreversible

17

taking of Mr. Lee's life by the Government, without his ever having had a meaningful opportunity to pursue the clemency process or present the evidence from corrections officers supporting his petition, which is material to a central issue in his case. For this reason, his injury will undoubtedly be irreparable. *See*, *e.g., Wainright v. Booker*, 473 U.S. 935, 935 n.1 (1985) (Powell, J., concurring in decision to vacate stay of execution) ("The third requirement—that irreparable harm will result if a stay is not granted—is necessarily present in capital cases."); *Evans v. Bennett*, 440 U.S. 1301, 1306 (1979) (granting stay of execution in light of the "obviously irreversible nature of the death penalty"); *Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995) (in acknowledging that "[t]here can be no doubt that a defendant facing the death penalty at the hands of the state faces irreparable injury," court notes importance of "substantial grounds" upon which relief may be granted). Mr. Lee's harm is thus imminent and would be beyond remediation if injunctive relief did not issue.

The correctional officers, too, will suffer irreparable harm, if injunctive relief is denied. Their paramount free speech rights, to speak on Mr. Lee's behalf as private citizens, and his right to have the critical information they possess meaningfully presented in his clemency process are inextricably intertwined. If not enjoined, the Defendants would irreversibly and completely extinguish those rights by executing him. *See also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably causes irreparable injury").

**C. The Irreparable Injury That Mr. Lee and the Correctional Officers Will Suffer if the Injunction is not Granted Outweighs Any Harm to Defendants Occasioned by an Injunction.**

Mr. Lee cannot identify any substantial harm that would be suffered by Defendants by an injunction in these circumstances, where he seeks a meaningful opportunity to present all

18

relevant evidence in his clemency effort before he is executed. The Defendants' interest in carrying out the execution of Mr. Lee in a matter of weeks (after intentionally curtailing his ability to meaningfully utilize the capital clemency process) does not constitute "substantial harm"; nor does their interest in executing him before he is able to gather and present essential information from the correctional officers to the Office of the Pardon Attorney constitute "substantial harm."

The extraordinary circumstances of Mr. Lee's case also weigh in favor of an injunction. Contrary to what Defendants have continued to state publicly—that the rush to execute Mr. Lee honors the wishes of the family of the victims or other stakeholders in this case, *see* Press Release, U.S. Department of Justice, "Executions Scheduled for Four Federal Inmates Convicted of Murdering Children" (June 15, 2020), *available at* https://www.justice.gov/opa/pr/executions-scheduled-four-federal-inmates-convicted-murdering-children (last visited June 22, 2020)—the facts shows that the victims' surviving family members,[13] the judge who presided at trial and sentenced Mr. Lee to death,[14] and the lead trial prosecutor[15] all oppose his execution and have expressed support for his clemency application. *See* Amended Complaint, ¶ 17.

Should the Defendants cite to the logistical steps they may have already undertaken toward executing Mr. Lee, those, first, pale in comparison to the irreparable injury to Mr. Lee,

---

[13] *See, e.g.,* Exh. 6, Letter of Monica Veillette; Exh. 7, Letter of Kimma Gurel; *see also*, Earlene Peterson, et. al., *Attorney General William Barr Claims This Execution Is For Us—But We Don't Want It,* Newsweek, (Dec. 5, 2019, https://www.newsweek.com/william-barr-wants-federal-execution-victim-families-not-us-1475764) (last visited June 22, 2020).

[14] *See* Exh. 8, Judge Eisele letter to AG Holder and US Atty Thyer.

[15] *See* Exh. 9, Letter of AUSA Stripling to AG Holder and US Atty Thyer.

and his and the correctional officers' important constitutional rights, and, moreover, can be ceased, if needed, to prevent harm.

Finally, to the extent that Defendants assert harm to their penological interests in operating safe and secure prisons if the Court enjoins them in order to permit the correctional officers' to exercise their free speech rights in connection with Mr. Lee's clemency process, that harm is certainly outweighed by the injury Mr. Lee would suffer if he were executed despite the deprivation of his due process rights; and, the prison employees' right to speak on matters of grave public concern, as is the case here, outweighs Defendants' interest in promoting workplace efficiency. *See Pickering*, 391 U.S. at 570-73; *see also, Shimer*, 100 F.3d at 509-10 (where Defendants' asserted existence of various penological interests, court, refusing to take such claims at face value, remanded case for further factual findings regarding those assertions).

As such, the balance of harms tips overwhelmingly in favor of Mr. Lee and the correctional officers.

**D.  Issuance of the Preliminary Injunction Would Serve the Public Interest.**

The public interest also weighs in favor of an injunction. There is no public interest in an unconstitutional execution, and here important due process and free speech rights are at stake. Rather, injunctive relief would vindicate the public's interest in making sure that the Federal Government does not violate the U.S. Constitution.

Moreover, clemency is an integral part of the criminal justice system in which the public has an undoubted interest. As the Supreme Court noted in *Herrera*, "[c]lemency is deeply rooted in our Anglo-American tradition of law, and is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted." *Id.* at 411-12 (footnote omitted).

To the extent that the Defendants assert that the public has an interest in executions being

20

carried out, as noted above, Mr. Lee seeks injunctive relief only to have a meaningful opportunity to pursue the clemency process, and present material evidence from key witnesses, unencumbered by Defendants' deliberate interference. *See e.g., Harris v. Johnson*, 323 F. Supp. 2d 797, 810 (S.D. Tex. 2004); *see also Cooey v. Taft*, 430 F. Supp. 2d 702, 708 (S.D. Ohio 2006) ("the public interest only is served by enforcing constitutional rights and by the prompt and accurate resolution of disputes concerning those constitutional rights. By comparison, the public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights.") Here, the public interest would not be served by rushing to judgment where such extraordinary circumstances and equities exist. Moreover, as noted above, this is a case where the Government's assertion of the public interest in carrying out his execution is, in fact, relatively underwhelming in light of the views expressed by the key public and private stakeholders in the case. Under these circumstances, pressing urgently toward an execution date cannot be said to be strongly in the public's interest.

In light of the above, it seems implausible to suggest that the requested relief will not serve the public interest.

## Conclusion

Mr. Lee has demonstrated that all of the relevant factors weigh heavily in favor of a preliminary injunction. He has established a substantial likelihood of success on the merits. Any alleged harm to the Defendants cannot outweigh the irreparable harm to Mr. Lee if he is executed before this case can run its course; nor can it outweigh the harm to him or the USP Terre Haute correctional officers, if Defendants are allowed to continue deliberately interfering with his ability to gather material evidence from them in support of his clemency petition. These circumstances call for the intervention of this Court, and the relief requested should be granted.

For the foregoing reasons, Mr. Lee respectfully requests that this Court issue a preliminary injunction to prevent ongoing harm to his and the correctional officers' constitutional rights; enjoin Defendants from deliberately interfering with and obstructing his ability to obtain and present favorable, material evidence in the executive clemency process; from infringing upon the free speech rights of the correctional officers and from subjecting the correctional officers to reprisal for exercising those rights; and, enjoin Defendants from executing him so that he has an opportunity to obtain and present this evidence to decision-makers in the clemency process.

Respectfully submitted,

/s/ Pieter Van Tol
Pieter Van Tol
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 909-0661
pieter.vantol@hoganlovells.com

/s/ David Victorson
David Victorson
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
(202) 637-5600
david.victorson@hoganlovells.com

/s/ John Nidiry
John Nidiry
Federal Capital Habeas Project
Federal Defender for the District of Maryland
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 807-1267
John_Nidiry@fd.org

Counsel for Daniel Lee

Dated: June 22, 2020

22

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia using the CM/ECF system on June 22, 2020. Notice of this filing will be sent by email to the all parties that are registered users, including counsel for the Defendants listed below; and the filing may be accessed through the Court's CM/ECF System.

Shannon S. Smith
Assistant United States Attorney
P.O. Box 1229
Little Rock, AR 72203
(501) 340-2600
Shannon.smith@usdoj.gov

Jamie G. Dempsey
Assistant United States Attorney
P.O. Box 1229
Little Rock, AR 72203
(501) 340-2600
Jamie.dempsey@usdoj.gov


Respectfully submitted,

/s/ John Nidiry
John Nidiry
Federal Capital Habeas Project
Federal Defender for the District of Maryland
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 807-1267
John_Nidiry@fd.org

Counsel for Daniel Lee

Dated: June 22, 2020

23