**G. THOMAS EISELE**
**24 Riverpoint**
**Little Rock, AR 72202**
**(501) 666-0786**

November 7, 2014

Eric H. Holder, Jr.
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001

Christopher R. Thyer
United States Attorney
Eastern District of Arkansas
P.O. Box 1229
Little Rock, Arkansas 72203

Re:    *United States v. Daniel Lewis Lee,*
       Eastern District of Arkansas, Court Case No. 4:97-cr-000243

Attorney General Holder and U.S. Attorney Thyer:

I am the federal judge who presided over the criminal trial of Daniel Lee ("Lee") back in 1999, the result of which was a penalty of death being imposed upon Lee, but not on the ringleader Chevie Kehoe ("Kehoe"). I am 91 years old, and I have not had an active docket for several years.

I was informed by counsel for Daniel Lee ("Lee") in a letter dated October 6, 2014, that settlement discussions were ongoing between the Government and Lee's current counsel regarding whether a life sentence "best serves the interests of justice." I declined Lee's counsel's request for an in-person meeting, but took under advisement whether to write a letter. Since that time, I have given considerable thought to the matter.

I obtained copies of and reviewed the prior opinions in the case for the purpose of squaring my memories of the case with the legal record.[1] I feel compelled to write this letter, which I would not normally do, because I believe that requiring Lee to pay the ultimate penalty – death – is unjust under the peculiar circumstances of this case. Of course, this is nothing more than my view, entitled to no weight other than that which you in your official positions deem appropriate.

All who review the record will recognize the unequal and disparate roles that Kehoe and Lee played in their horrific crime spree, which Kehoe directed and Lee joined intermittently. Kehoe

---

[1]    The facts and opinions expressed herein are consistent with the record in this case and the views expressed in my post-trial rulings and opinions.

**Nov. 7, 2014 - Letter to Holder and Thyer**
**Page 2 of 3**

recruited Lee. Kehoe was the charismatic leader; Lee the obedient follower. Lee "participated in the murder of the adults, but would have no part in the killing of [8-year-old] Sarah Powell so Kehoe had done it alone."[2] There was no question that Kehoe was the more culpable of the two with regard to the criminal acts charged in the indictment and proved at trial.

This clear disparity in culpability was recognized when "the Government announced *in camera* [while the jury was considering the penalty phase in Kehoe's case] that if the jury sentenced Defendant Kehoe to life imprisonment, it would not pursue the death penalty for Defendant Lee."[3] As I wrote in a letter to the parties shortly after the death verdict was returned:

> Before the jury determined that Mr. Lee should die, all of the attorneys in the case appeared to be of a mind that the death penalty would be inappropriate in the case of Mr. Lee because the jury had failed to sentence Mr. Kehoe to death. Everyone seemed to be in agreement that the death penalties for both defendants would have been a possible and appropriate outcome, and life without parole for both defendants would have been a possible and appropriate outcome, but no one believed that it would be appropriate to seek the death penalty for Lee if the death penalty had not been imposed upon Mr. Kehoe.[4]

Initially, I set aside the death penalty based on two issues, both of which are addressed briefly below. The Eighth Circuit set aside my opinion and reinstated the death penalty.

**<u>Death Penalty Protocol</u>:**

I set aside the death penalty after concluding that the United States failed to follow its own "Death Penalty Protocol."[5] While this issue ultimately became about whether Lee had "standing" to require the Attorney General to follow her Death Penalty Protocol, this technical framing of the issue does not capture adequately the events leading up to the holding or its impact.

When the jury handed down its life sentence for Kehoe, whose sentencing phase was first, I believed that Lee's sentence was resolved as well, as had been represented. It was surprising to learn that this was not the case and that formal permission to withdraw the death penalty as to Lee had to be received from Washington, D.C. It was even more surprising to learn that permission was being denied, in direct conflict with the recommendation of the local United States Attorney and her assistants in Little Rock, all of them very capable prosecutors.

The chain of events moved swiftly after the Court was advised that the effort to seek death for Lee would in fact go forward. At that point, the trial had been underway for over two months.

---

[2] 374 F.3d 637 (8th Cir. 2004).
[3] 89 F. Supp. 2d 1017, 1032 (E.D. Ark. 2000), rev'd, 274 F.3d 485 (8th Cir. 2001).
[4] No. 4:97CR00243, 2008 U.S. Dist. LEXIS 109771, at * 182 (E.D. Ark. Aug. 28, 2008) (quoting letter).
[5] 89 F.Supp. 2d at 1041.

**Nov. 7, 2014 - Letter to Holder and Thyer**
**Page 3 of 3**

All were weary. After the announcement of the life sentence for Kehoe, but before the jury had decided Lee's fate, I allowed the jurors to return to their homes. I have often wondered whether I made a mistake in not sequestering the jurors for the entire penalty phase.

**<u>Future Dangerousness (Hare "Psychopathy" Tool):</u>**

I set aside the death penalty after concluding that I erred in allowing the introduction of evidence regarding Lee's future dangerousness during the penalty phase of the trial.[6] In making this finding, I held that introduction of the psychopathy evidence improperly emphasized Lee's "future dangerousness" during sentencing even though Lee "chose neither to perform a risk assessment analysis nor to present rebuttal evidence on the future dangerousness aggravating factor" and "was therefore ill-equipped to handle the Government's discussion of psychopathy."[7] Fifteen years later, there is more reason than ever to question the use of the Hare Psychopathy instrument or prejudicial labeling relied upon at sentencing.[8]

I frequently have second-guessed my own decisions in this case and wondered what, if anything, I could have done differently that might have resulted in a more rational outcome. I have no doubt that all involved did the best they could at the time with the knowledge that they had. Still, the end result leaves me with the firm conviction that justice was not served in this particular case, solely with regard to the sentence of death imposed on Daniel Lewis Lee.

Suffice it to say that, now, more than ever, I agree with my following statement, made in concluding that I was unable to grant Lee post-conviction relief under existing law:

> That Petitioner's death sentence is not redressable under existing legal principles does not mean that it constitutes a fair and rational result under the peculiar and special circumstances of this particular case. Perhaps more than anything else, this case illustrates that the most carefully crafted capital punishment regime in the hands of the humans who must carry it out can never be completely free of arbitrariness in all of its implementations.[9]

I wish you both the best. I remain,

Yours truly,

*G. Thomas Eisele*
G. Thomas Eisele

cc:    Karl Schwartz [Attorney for Daniel Lee]

---

[6] *Id.* at 1032.
[7] 89 F. Supp. 2d at 1030.
[8] *See, e.g.*, Kathleen Wayland & Sean D. O'Brien, Deconstructing Antisocial Personality Disorder and Psychopathy: A Guidelines-Based Approach to Prejudicial Psychiatric Labels, 42 Hofstra L. Rev. 519, 521 (2013).
[9] 2008 U.S. Dist. LEXIS 109771 at *185.