## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DANIEL LEWIS LEE** | ) | |
| **Register Number 21303-009** | ) | |
| **U.S. Penitentiary Terre Haute** | ) | |
| **Terre Haute, IN 47802** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. <u>1:19-CV03611-TSC</u>** |
| | ) | |
| **WILLIAM P. BARR** | ) | |
| **Attorney General** | ) | |
| **U.S. Department of Justice** | ) | |
| **950 Pennsylvania Avenue, NW** | ) | |
| **Washington, DC 20530;** | ) | |
| | ) | |
| **JEFFREY A. ROSEN** | ) | |
| **Deputy Attorney General** | ) | |
| **U.S. Department of Justice** | ) | |
| **950 Pennsylvania Avenue, NW** | ) | |
| **Washington, DC 20530;** | ) | |
| | ) | |
| **ROSALIND SARGENT-BURNS** | ) | |
| **Acting Pardon Attorney** | ) | |
| **Office of the Pardon Attorney** | ) | |
| **950 Pennsylvania Avenue, NW** | ) | |
| **Washington, DC 20530;** | ) | |
| | ) | |
| **MICHAEL CARVAJAL** | ) | |
| **Director** | ) | |
| **Federal Bureau of Prisons** | ) | |
| **U.S. Department of Justice** | ) | |
| **320 First St., NW** | ) | |
| **Washington, DC 20534;** | ) | |
| | ) | |
| **JEFFREY E. KRUEGER** | ) | |
| **Regional Director** | ) | |
| **Federal Bureau of Prisons** | ) | |
| **North Central Region** | ) | |
| **U.S. Department of Justice** | ) | |
| **400 State Avenue, Suite 800** | ) | |
| **Kansas City, KS 66101;** | ) | |

and                                        )
                                           )
**T.J. WATSON**                            )
**Complex Warden**                         )
**U.S. Penitentiary Terre Haute**          )
**4700 Bureau Road South**                 )
**Terre Haute, IN 47802,**                 )
                                           )
**In their official capacities; and,**     )
                                           )
**U.S. Department of Justice**             )
**950 Pennsylvania Avenue, NW**            )
**Washington, DC 20530**                   )
                                           )
**Federal Bureau of Prisons**              )
**U.S. Department of Justice**             )
**320 First St., NW**                      )
**Washington, DC 20534**                   )
                                           )
**Office of the Pardon Attorney**          )
**950 Pennsylvania Avenue, NW**            )
**Washington, DC 20530;**                  )
                                           )
      **Defendants.**    )


## DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR A PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................2

    I.      PROCEDURAL HISTORY...........................................................................2

    II.     LEE'S CLEMENCY PETITION...................................................................5

STANDARD OF REVIEW ....................................................................................................9

ARGUMENT.......................................................................................................................10

    I.      LEE IS UNLIKELY TO SUCCEED ON HIS DUE PROCESS CLAIM .............10

    II.     LEE IS UNLIKELY TO SUCCEED ON HIS FIRST AMENDMENT FREE
          SPEECH CLAIM....................................................................................14

    III.    THE BALANCE OF HARMS WEIGHS AGAINST ENTRY OF A
          PRELIMINARY INJUNCTION .........................................................19

CONCLUSION....................................................................................................................21

## TABLE OF AUTHORITIES

### CASES

*Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014)..............................................................9

*Anderson v. Davis*, 279 F.3d 674 (9th Cir. 2002) ........................................................................13

*Aulaqi v. Obama*, 727 F. Supp. 2d 1 (D.D.C. 2010) ....................................................................15

*Calderon v. Thompson*, 523 U.S. 538 (1998) ..............................................................................20

*Craig v. Boren*, 429 U.S. 190 (1976) ..........................................................................................16

*Duvall v. Keating*, 162 F.3d 1058 (10th Cir. 1998) ...............................................................10, 11

*Faulder v. Tex. Bd. of Pardons & Paroles*, 178 F.3d 343 (5th Cir. 1999) ..................................13

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ............................................................................17, 18

*Gissendaner v. Comm'r Ga. Dep't of Corr.*, 794 F.3d 1327 (11th Cir. 2015) ........................13, 14

*Glossip v. Gross*, 135 S. Ct. 2726 (2015) .....................................................................................9

*Hill v. McDonough*, 547 U.S. 573 (2006) ...................................................................................20

*In re United States*, 197 F.3d 310 (8th Cir. 1999) ........................................................................3

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) .............................................................................14, 15

*Lee v. Hutchinson*, 854 F.3d 978 (8th Cir. 2017) ...................................................................13, 14

*Lee v. United States*, 537 U.S. 1000 (2002)...................................................................................3

*Lee v. United States*, 545 U.S. 1141 (2005)...................................................................................3

*Lee v. United States*, 135 S. Ct. 72 (2014)....................................................................................3

*Lee v. United States*, 137 S. Ct. 1577 (2017).................................................................................3

*Lepelletier v. F.D.I.C.*, 164 F.3d 37 (D.C. Cir. 1999) ..................................................................15

*Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272 (1998) .......................................10, 12, 13, 14

*Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) ..........................................................................17

*Powers v. Ohio*, 499 U.S. 400 (1991) .....................................................................................15, 16

*Rhoades v. Reinke*, 830 F. Supp. 2d 1046 (D. Idaho) ...................................................20

*Sessions v. Morales-Santana*, 137 S.Ct. 1678 (2017) ..................................................15

*Shimer v. Washington*, 100 F.3d 506 (7th Cir. 1996) ...................................................17

*Singleton v. Wulff*, 428 U.S. 106 (1976) .......................................................................16

*United States v. Lee*, 89 F. Supp. 2d 1017 (E.D. Ark. 2000)...........................................3

*United States v. Lee*, 274 F.3d 485 (8th Cir. 2001) ........................................................3

*United States v. Lee*, 374 F.3d 637, 643 (8th Cir. 2004) .............................................2, 3

*United States v. Lee*, 715 F.3d 215, 217 (8th Cir. 2013) .................................................3

*United States v. Lee*, 792 F.2d 1021, 1022 (8th Cir. 2015) .............................................3

*Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1268 (11th Cir. 2014) .....................13

*Winfield v. Steele*, 755 F.3d 629 (8th Cir. 2014) ..........................................................13

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ...................................9, 19

*Young v. Hayes*, 218 F.3d 850 (8th Cir. 2000) ........................................................12, 13

## STATUTES

28 U.S.C. § 2241...............................................................................................................4

28 U.S.C. § 2255...........................................................................................................1, 3

## RULES

Fed. R. Civ. P. 60(b) ........................................................................................................3

## REGULATIONS

28 C.F.R. § 1.10................................................................................................................4

28 C.F.R. § 571.41........................................................................................................6, 7

iii

**INTRODUCTION**

Twenty years ago, Daniel Lewis Lee was convicted of three counts of murder along with Chevie Kehoe. Subsequently, after weighing the aggravating and mitigating factors, the jury unanimously decided to impose a sentence of death for Lee for each of the three murder charges. Lee's conviction and sentence were affirmed on appeal, and he has exhausted his post-conviction remedies under § 2255. Lee's execution has been scheduled for July 13, 2020.

Lee seeks a preliminary injunction based on his claims that he will not be afforded due process with respect to his clemency petition and that certain prison officers' free speech rights will be implicated in that he has not been able to obtain sworn statements from those officers in support of his clemency petition. Lee's preliminary injunction fails because his claims under the Fifth Amendment and First Amendment are unlikely to succeed. The decision to grant clemency lies solely with the executive branch, and, as a result, the due process required in any clemency process voluntarily provided by the Executive Branch is at most minimal.

There is ample evidence in Lee's amended complaint and the renewed motion for preliminary injunction demonstrating that he will receive the opportunity to present a clemency petition for the Office of the Pardon Attorney's consideration, and that the petition will be supported by an abundance of evidence, including information—such as work history and disciplinary record—from the Bureau of Prisons ("BOP"). Similarly, Lee's free speech claim is unlikely to succeed because he cannot assert the officers' free speech rights on this matter, nor do the officers have a valid First Amendment claim under the Supreme Court's standard governing public employees' free speech rights.

Lee is unlikely to succeed on the merits, so his motion for preliminary injunction should be denied. Additionally, the balance of equities tips in favor of defendants because there is no

indication that having the statements of the officers will make a difference in the clemency process, where the Office of the Pardon Attorney will have information from the BOP and will have the ability to request additional information from the BOP, and where the ultimate decision resides with the President of the United States. Thus, the Government's interest in avoiding undue delay in carrying out a lawful death sentence weighs in its favor, and Plaintiff's renewed motion for preliminary injunction should be denied.

## BACKGROUND

### I.     PROCEDURAL HISTORY

In 1999, Lee and Chevie Kehoe were tried together in a two-month trial in federal district court in Arkansas. *United States v. Lee*, 374 F.3d 637, 643 (8th Cir. 2004). The evidence at trial demonstrated that Lee and Kehoe were members of a white supremacist organization known as the Aryan Peoples' Republic, or the Aryan Peoples' Resistance ("APR"), which Kehoe founded for the purpose of establishing an independent nation of white supremacists in the Pacific Northwest. *Id.* at 641. In January 1996, expecting to find valuable property, Kehoe and Lee traveled from Washington to the Arkansas home of William Mueller, a gun dealer who owned a large collection of weapons and ammunition. *Id.* When Mueller arrived home with his wife Nancy, and their eight-year-old daughter Sarah Powell, Lee and Kehoe overpowered and incapacitated the Muellers and then questioned Sarah Powell about the location of cash, guns, and ammunition. *Id.* at 641-42. After finding $50,000 in cash, guns, and ammunition, they shot the three victims with a stun gun, placed plastic bags over their heads, and sealed the bags with duct tape. *Id.* at 642. The victims were taken in Kehoe's vehicle to a nearby bayou where Lee and Kehoe tossed their bodies. The victims' bodies were recovered months later in Lake Dardanelle near Russellville, Arkansas. *Id.*

At the end of the trial, the jury convicted Lee and Kehoe of three counts of capital murder in addition to racketeering and conspiracy to commit racketeering. *Id.* at 643. Lee and Kehoe were sentenced in separate penalty phases before the same jury. *Id.* Kehoe's penalty phase was presented first, and he was sentenced to life without release. *Id.* Subsequently, the same jury returned a death verdict against Lee on May 14, 1999. *Id.*

In 2000, the district court granted Lee's post-trial motion for a new sentencing hearing. *United States v. Lee*, 89 F. Supp. 2d 1017 (E.D. Ark. 2000). The Eighth Circuit reversed and reinstated the death sentence, *United States v. Lee*, 274 F.3d 485 (8th Cir. 2001), and the Supreme Court denied certiorari, *Lee v. United States*, 537 U.S. 1000 (2002).[1] The Eighth Circuit then affirmed Lee's conviction and sentence on direct appeal, *Lee*, 374 F.3d 637, and the Supreme Court again denied certiorari, *Lee v. United States*, 545 U.S. 1141 (2005). Lee subsequently filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. *See United States v. Lee*, 715 F.3d 215, 217 (8th Cir. 2013). The district court denied his petition, but granted a certificate of appealability. *Id.* The Eighth Circuit affirmed, and the Supreme Court denied certiorari. *Id.*; *Lee v. United States*, 135 S. Ct. 72 (2014).

Lee then sought relief in district court from the judgment in his 28 U.S.C. § 2255 case under Rule 60(b) of the Federal Rules of Civil Procedure. *See United States v. Lee*, 792 F.2d 1021, 1022 (8th Cir. 2015). The district court denied his motion, deciding that it lacked jurisdiction to hear the motion. *Id.* The Eighth Circuit affirmed, and the Supreme Court denied certiorari. *Id.*; *Lee v. United States*, 137 S. Ct. 1577 (2017). Lee subsequently filed another petition seeking relief pursuant to either 28 U.S.C. § 2255 or Rule 60(b) of the Federal Rules of Civil Procedure, which

---

[1] While the motion for a new sentencing hearing was pending, the Eighth Circuit granted a petition for a writ of mandamus prohibiting subpoenas to then-Attorney General Janet Reno and then-Deputy Attorney General Eric Holder. *In re United States*, 197 F.3d 310 (8th Cir. 1999).

was denied by the district court.  Lee filed an application for certificate of appealability in the Eighth Circuit, which was denied on November 4, 2019.  *See Lee v. United States*, No. 19-2432 (8th Cir 2019).  He then filed a motion seeking permission to file a successive motion under 28 U.S.C. § 2255, which was denied on January 7, 2020.  *Lee v. United States*, 19-3576 (8th Cir. 2019).

In September 2019, Lee filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in the Southern District of Indiana.  *Lee v. Warden USP Terre Haute et al.*, No. 2:19-CV-00468-JPH-DLP, Docket Sheet (2019).  In that case, the Southern District of Indiana entered a stay of execution, which was lifted by the Seventh Circuit.  *See id.* The district court subsequently denied Lee's petition for writ of habeas corpus, and he filed a motion to amend or correct the order that is pending before the district court. *See id.*

Lee and three other inmates who were scheduled for execution starting in December, also filed separate motions for preliminary injunction in this Court challenging the Government's execution protocol.  *In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases, Roane et al. v. Barr*, No. 19-mc-145 (TSC).  The Court enjoined the execution of all four inmates, and the U.S. Court of Appeals for the District of Columbia Circuit denied the Government's initial request to stay or vacate the injunction issued by the District Court.  On April 7, 2020, the Circuit Court of Appeals vacated the preliminary injunction issued by the district court.  Those plaintiffs, along with Lee, have petitioned for a writ of certiorari and sought a stay pending disposition of that petition, and the Supreme Court will consider those requests at its June 25, 2020, conference. *Roane v. Barr*, No. 19A1050, Order in Pending Case (June 18, 2020).  In addition, Lee and other inmates whose executions have now been scheduled for July and August, 2020 have separately

moved for a preliminary injunction on June 19, 2020, and that motion is still pending before this Court.

Lee filed his complaint in this action on December 2, 2019, a week before his previously scheduled execution date. *See* Complaint, Dkt. 1. He then filed a motion for preliminary injunction on December 5, 2019, which he withdrew on December 31, 2019, after his execution scheduled for December 9, 2019, was stayed. *See* Motion for Preliminary Injunction, Dkt. 4. On January 22, 2020, defendants moved to dismiss Lee's complaint. *See* Motion to Dismiss, Dkt. 14. In response, Lee filed an amended complaint on February 12, 2020. *See* Amended Complaint, Dkt. 17. Defendants moved to dismiss the amended complaint on February 26, 2020. *See* Motion to Dismiss, Dkt. 19. Lee responded and defendants filed a reply. After filing a notice regarding the execution date scheduled for July 13, 2020, Lee filed a renewed motion for preliminary injunction on June 22, 2020. *See* Notice Regarding Execution Date, Dkt. 22; Motion for Preliminary Injunction, Dkt. 24.

## II.   LEE'S CLEMENCY PETITION

On June 15, 2020, the BOP notified Lee that the date for his execution had been scheduled for July 13, 2020. *See* Memorandum in Support of Renewed Motion for Preliminary Injunction, Dkt. 24-1, at 2. Subsequently, counsel for Lee filed a notice regarding his execution date indicating that he plans to file a clemency petition. *See* Notice Regarding Execution Date, Dkt. 22. When his execution date was set in 2019, Lee's attorneys went through the process of preparing his petition, which they in turn provided to the Office of the Pardon Attorney for review. *See* Declaration of Kira Gillespie ("Gillespie Decl."), attached as Exhibit 1. Lee's attorneys also submitted supplemental materials to the Office of the Pardon Attorney in support of the petition on September 13, 2019 in accordance with 28 C.F.R. § 1.10. *Id.* Lee's clemency package was

5

voluminous; it included a great amount of information, such as oral statements, a video submission, and a declaration from a jury member. *See* Gillespie Decl., Ex. 1, ¶¶ 4-5.

Additionally, the Office of the Pardon Attorney, in light of the clemency petition, obtained and reviewed records from the BOP regarding Lee's behavior and progress during his incarceration, including a 2016 progress report and SENTRY reports. *Id.* ¶ 6. Those records provided details about Lee's disciplinary history, his completed educational courses, and his work history, including that he had served as an orderly at Terre Haute USP. *Id.* The records showed that Lee had numerous infractions during the early stages of his imprisonment (twenty-two infractions from 2002 through 2008), but fewer infractions during later stages of his imprisonment (seven infractions from 2010 through 2014). *Id.* The records also showed that, since 2014, Lee has had no misconduct noted in his disciplinary record. *Id.*

In gathering supplemental information for the petition, counsel for Lee claims that he learned that members of the corrections staff at USP Terre Haute had critical information they wished to share in support of his clemency petition. *See* Memorandum in Support of Renewed Motion for Preliminary Injunction, Dkt. 24-1, at 5-6. According to counsel for Lee, the officers wish to provide information about his positive adjustment in custody, which he asserts refutes allegations of Lee's "future dangerousness" made by the prosecution at trial. *See id.*

Specifically, counsel for Lee communicated with a BOP officer at USP Terre Haute about Lee and the type of inmate he was. *See* Amended Complaint, Dkt. 17, ¶¶ 20, 25-29. According to counsel for Lee, the officer described Lee as a good inmate who was easy to manage. *See id.* ¶ 25. Based on this conversation, counsel for Lee asked the BOP officer if he would be willing to provide a statement on Lee's behalf, and the officer indicated he would have to check with legal department. *Id.* ¶ 30. Counsel for Lee then contacted BOP counsel seeking to obtain statements

6

from the BOP officer.  *Id.*; Declaration of Katherine Siereveld ("Siereveld Decl."), attached as Exhibit 2, ¶ 3.  In response to the request, BOP counsel explained that, according to BOP Program Statement 5840.04, this type of information could be shared through inmate evaluations and progress reports, which would be provided to the Office of the Pardon Attorney.  *Id.* ¶ 5.  Under Program Statement 5840.04, staff has the ability "to record an observation, express an opinion, or provide a recommendation for an inmate…through the unit team, Associate Warden, or Warden." *Id.* ¶ 6.  Other than opinions submitted by staff to the unit team, associate warden, or warden, staff are not authorized to express an opinion regarding an inmate under Program Statement 5840.04. *Id.* ¶ 5.  The reasons for this policy and procedure are set forth in Program Statement 5840.04.  *See id.*  Specifically,

> The reasons for limiting the number of staff authorized to release official information are to: avoid implying "official" sanction of an evaluation or recommendation, when, in fact, it is one staff member's opinion[; and] avoid implying that a staff member's opinion provides a "total" evaluation of the inmate when that staff member's knowledge and perspective about the inmate may be quite limited.

*See* Program Statement 5840.04, attached as Exhibit A to Siereveld Decl., Ex. 2.  No BOP officer at USP Terre Haute has made a request to, or submitted an observation, opinion, or recommendation for plaintiff, pursuant to Program Statement 5840.04, although they are permitted to do so.  *Id.* ¶ 7.  Additionally, no BOP officer at USP Terre Haute expressed a desire or pursued any avenue, such as an informal request or a union grievance for permission to provide any statement to counsel for Lee in support of his clemency petition.  *Id.* ¶ 8.  Furthermore, an Office of the Pardon Attorney regulation prohibits the BOP from forwarding a recommendation regarding an inmate, unless specifically requested by the U.S. Pardon Attorney under 28 C.F.R. § 571.41. *Id.*

Pursuant to § 1.10, the Office of the Pardon Attorney scheduled an in-person hearing with Lee's attorneys to present evidence in support of the clemency petition. *See* Am. Compl., Dkt. 17, ¶ 33. At the hearing, counsel for Lee did not provide any information that BOP officers had either provided statements or expressed an interest in providing statements in support of plaintiff's clemency petition, nor did they make any comments or ask any questions about their inability to obtain and present such statements from BOP officers. *See* Gillespie Decl., Ex. 1, ¶ 7. In reviewing the clemency petition, the Office of the Pardon Attorney did not request a recommendation from the Director of the BOP regarding plaintiff's clemency petition pursuant to 28 C.F.R. § 571.41. *Id.* ¶ 8. When the December 9, 2019 execution was stayed, counsel for Lee withdrew his petition pursuant to 28 C.F.R. § 1.10(e). *See* Memorandum in Support of Renewed Motion for Preliminary Injunction, Dkt. 24-1, at 4. Lee is in the process of submitting his clemency petition to the Office of the Pardon Attorney again. *Id.*

In support of his renewed motion for preliminary injunction, Lee accuses the Office of the Pardon Attorney and the United States Attorney's Office for the Eastern District of Arkansas ("USAO") of colluding in an effort to obstruct Lee from obtaining a copy of the clemency hearing transcript, and to allow the USAO to utilize the transcript in a matter being litigated in the Eastern District of Arkansas regarding juror contact. *See id.* To the contrary, when the instant matter was filed December 2, 2109, against the Office of Pardon Attorney, and other federal defendants, the matter was delegated to the USAO because the issues dealt, in part, with substantive matters addressed at the criminal trial. In the defense of this case, attorneys from the USAO contacted their client, the Office of the Pardon Attorney, and requested a copy of the clemency hearing transcript to assist them in the defense of this case because the crux of the complaint surrounds what was and was not presented at the clemency hearing. The transcript was sent from the Office

of the Pardon Attorney to the USAO on December 5, 2019, well before the juror litigation began in Arkansas in June 2020. *See United States v. Lee*, No. 4:97CR00243, Docs. (sealed) (E.D. Ark. June 2020). Accordingly, the transcript was provided by its client to the USAO in defense of civil litigation against the Office of the Pardon Attorney. The fact that the USAO was given the transcript to understand what information was requested and provided during the clemency hearing before its client, the Office of the Pardon Attorney, in particular since the USAO did not attend the hearing, does not evidence anything unfair or untoward about the clemency process, nor does it demonstrate any violation of Lee's due process or other rights.

## STANDARD OF REVIEW

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest." *Id.* at 20. The "most important factor" is whether the movant has "established a likelihood of success on the merits," *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). The same requirements apply to a preliminary injunction sought in a case involving the death penalty. *See Glossip v. Gross*, 135 S. Ct. 2726, 2736 (2015). As discussed below, Lee's renewed motion for a preliminary injunction should be denied because he has failed to satisfy the requirements for one to be granted.

## ARGUMENT

### I.   LEE IS UNLIKELY TO SUCCEED ON HIS DUE PROCESS CLAIM

Lee asserts that he will be denied procedural due process because the BOP has prevented its employees from supporting his application for clemency.  Lee cannot demonstrate that he is likely to succeed on his claim because he was given and will be given the process to which he is entitled, which was at most minimal.  In *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272 (1998), the Supreme Court considered a due process claim in the context of a clemency proceeding. Chief Justice Rehnquist, joined by Justices Kennedy, Scalia and Thomas, concluded that the Due Process Clause provides no constitutional safeguards as to clemency proceedings.  As the plurality explained, where "the ultimate decisionmaker, the Governor, retains broad discretion[,] . . . the Governor's executive discretion need not be fettered by the types of procedural protections sought by respondent.  There is thus no substantive expectation of clemency.  A denial of clemency merely means that the inmate must serve the sentence originally imposed."  *Id*. (citations omitted).  The Court continued "[p]rocedures mandated under the Due Process Clause should be consistent with the nature of the governmental power being invoked.  Justice O'Connor, joined by Justices Breyer, Ginsburg and Souter, disagreed, concluding that some minimal procedural safeguards apply to clemency proceedings. Justice O'Conner explained, that "the 'life' interest protected by the Due Process Clause itself guarantees 'some minimal procedural safeguards' for state clemency proceedings involving death row inmates." 523 U.S. at 288–89. Thus, the Court's narrowest majority holding is that some minimal level of procedural due process applies to clemency proceedings. *See Duvall v. Keating*, 162 F.3d 1058, 1061 (1998).

Here, the executive's clemency authority would cease to be a matter of grace committed to the executive authority if it were constrained by the sort of procedural requirements that respondent

10

urges." *Id.* at 285. This is particularly the case, where the clemency process at issue clearly satisfies the minimal procedural safeguards required by Justice O'Connor. Lee admits that the Office of the Pardon Attorney allowed Lee's counsel to make "a presentation and submit[] evidence in support of his clemency petition to the presiding officials. During the proceeding, these officials . . . ma[de] clear that they had reviewed parts of his trial record and BOP files, including his disciplinary record." Am. Compl., Dkt. 17, ¶ 33. There is no allegation in the amended complaint that Lee's counsel was prohibited from including in their presentation the comments of the unnamed correctional staffer; that the BOP files and Lee's disciplinary record failed to indicate whether Lee had been involved in violent activity or misbehaved in any way; or that the Office of the Pardon Attorney was unable to obtain any additional information she deemed relevant.

Furthermore, the Office of the Pardon Attorney received and reviewed a voluminous clemency package, which is, upon information and belief, similar to the clemency package that will be prepared in advance of the July 13, 2020 execution date. *See* Gillespie Decl., Ex. 1, ¶ 4. The package included the application, a supporting memorandum, and three packages of exhibits that contained: letters from the sentencing judge and the original prosecuting attorney; declarations and memoranda from mental health professionals; a DNA lab report; a newspaper article; clinical reports and notes from Lee's juvenile incarcerations and stays in mental health facilities; and a letter from the warden addressing petitioner's request to remove his tattoos while in prison. *Id.*

Additionally, the Office of the Pardon Attorney reviewed Lee's judgment and special investigation report from the probation office, oral statements, a video statement with statements from the victims' family, and a declaration from a member of the jury panel. *Id.* ¶ 5. Finally, the Office of the Pardon Attorney had and will have the opportunity to review documents provided by

11

the BOP regarding Lee's behavior and progress, including that he worked as an orderly and had not been cited for disciplinary misconduct since 2014. *Id*. ¶ 6. Pursuant to 28 C.F.R. § 571.41, the Office of the Pardon Attorney may or may not request a recommendation from the Director of the BOP. *Id.* ¶ 8. Based on all of the above, the Office of the Pardon Attorney will have an extensive amount of information for purposes of reviewing Lee's clemency petition, and Lee will receive far more than the minimal due process required by *Woodard*.

Lee relies primarily on *Young v. Hayes*, 218 F.3d 850 (8th Cir. 2000), in which a death row inmate brought a Due Process claim against the district attorney for allegedly preventing a subordinate attorney from providing information to the Governor in connection with inmate's clemency petition. As the Eighth Circuit first made clear, the inmate had not advanced a claim that he "had a 'liberty interest' in the grant of clemency or the right to any particular outcome." *Id*. at 853. Instead, the claim was that the "State, acting through the Circuit Attorney of the City of St. Louis, ha[d] deliberately interfered with the efforts of petitioner to present evidence to the Governor." *Id*. The court likened this to the "crime of tampering with a witness." *Id*. (citing Missouri criminal law Mo. Ann. Stat. Sec. 575.270(1)). And, "[s]uch conduct on the part of a state official is fundamentally unfair": "It unconscionably interferes with a process that the State itself has created. The Constitution of the United States does not require that a state have a clemency procedure, but, in our view, it does require that, if such a procedure is created, the state's own officials refrain from frustrating it by threatening the job of a witness." *Id*. As a result, the court granted the petitioner's stay of execution.

The Eighth Circuit's recognition of a procedural due process right in this context in *Young* was based on a misconception of Justice O'Connor's concurrence in *Woodard.* As the Eleventh Circuit has explained, the "key word" in Justice O'Connor's concurrence was

12

"'minimal.'" *Gissendaner v. Comm'r, Ga. Dep't of Corrections*, 794 F.3d 1327, 1333 (11th Cir. 2015) (quoting *Woodard*, 523 U.S. at 288-90).  The Eleventh Circuit noted that "the only circumstances that Justice O'Connor's opinion identifies in which due process would be offended are truly outrageous ones, such as (1) 'a scheme whereby a state official flipped a coin to determine whether to grant clemency,' or (2) 'a case where the State arbitrarily denied a prisoner any access to its clemency process.'" *Id*. (quoting *Woodard*, 523 U.S. at 289).  Accordingly, the Eleventh Circuit has rejected procedural due process claims of a death row inmate who claimed his rights were denied when the warden ordered prison staff not to speak with inmate's legal team. *Id.* (citing *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1268 (11th Cir. 2014)).

Since *Young*, the Eighth Circuit has adjusted course and fallen in line with the Eleventh Circuit.  For example, in *Winfield v. Steele*, 755 F.3d 629, 632 (8th Cir. 2014), another clemency challenge in which a prison staff member was dissuaded from filing a letter in support of a Missouri inmate's clemency, the court held that Missouri's clemency process, while not "ideal," had provided "minimal procedural safeguards" and did "not approach the arbitrariness contemplated by Justice O'Connor in *Woodard*: a coin flip or an arbitrary denial of access to any clemency process application.  In his concurrence, Judge Gruender advocated the abrogation of *Young*, noting that it "lacks support in relevant Supreme Court authority," and explaining that the majority approach of the appellate courts is to "take[] to heart Justice O'Connor's emphasis on the word 'minimal.'" *Id*. at 632 (Gruender, J., concurring) (citing *Faulder v. Tex. Bd. of Pardons & Paroles*, 178 F.3d 343, 344–45 (5th Cir.1999) (focusing on whether the "extreme situations" identified by Justice O'Connor were present); *Anderson v. Davis*, 279 F.3d 674, 676–77 (9th Cir. 2002) (identifying ways in which a state might violate procedural due process in its operation of clemency procedures); *Duvall*, 162 F.3d at 1061.  Most recently, in *Lee v. Hutchinson*, 854 F.3d

13

978 (8th Cir. 2017), involving a similar challenge in the clemency context, the Eighth Circuit's per curiam opinion does not even mention *Young*; instead, the court cited the Eleventh Circuit's holding in *Gissendaner* and ruled that despite clear violations of Arkansas law, regulations, and policy during the clemency process, Arkansas had still provided the minimal procedural safeguards required by the Constitution. *Id*. at 981 (citing *Woodard*, 523 U.S. at 289). Thus, *Young* is outdated; Lee's reliance on it and his failure to cite the Eighth Circuit's more recent case law demonstrates that his Due Process argument is unsupportable.

In sum, this is certainly not the sort of extreme situation that Justice O'Connor's concurrence contemplated to constitute a due process violation. Lee has received ample process and therefore, he cannot demonstrate a likelihood of success on his Fifth Amendment Procedural Due Process claim.

## II.    LEE IS UNLIKELY TO SUCCEED ON HIS FIRST AMENDMENT FREE SPEECH CLAIM

Lee also asserts a claim on behalf of BOP employees at USP Terre Haute Correctional Facility that defendants' actions and policies prohibit them from exercising their right to free speech. Lee cannot demonstrate a likelihood that he will succeed on this claim, as he lacks standing to assert the claim and has not shown an infringement of the correctional staff's right to free speech under the First Amendment.

### A.    Standing

Lee does not have third-party standing to assert the First Amendment rights of BOP employees. "A party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of third parties.'" *Kowalski v. Tesmer,* 543 U.S. 125, 129 (2004) (citation omitted). Third party standing constitutes a "limited exception[]" to that

14

general proposition and the plaintiff bears the burden of establishing third party standing. *Aulaqi v. Obama*, 727 F. Supp. 2d 1, 23 (D.D.C. 2010). As the D.C. Circuit has explained,

> The Supreme Court has articulated three prudential considerations to be weighed when determining whether an individual may assert the right of others: (1) '[t]he litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute,' (2) 'the litigant must have a close relation to the third party,' and (3) 'there must exist some hindrance to the third party's ability to protect his or her own interest.

*Lepelletier v. F.D.I.C.,* 164 F.3d 37 (D.C. Cir. 1999) (citation omitted); *see Kowalski*, 543 U.S. at 129-30; *see also Powers v. Ohio*, 499 U.S. 400, 411 (1991); *see, e.g.*, *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017) (son could assert father's rights because father's failure to assert a claim in his own right "stems from disability," i.e., the father was deceased).

First, the amended complaint fails to allege sufficient facts indicating that Lee has suffered an injury in fact. As an initial matter, the policy statement does not prohibit the expression of any views; it merely requires that if an employee wishes to express his views, he does so through a streamlined process set forth in the policy. The amended complaint alleges that an employee verbally represented to Lee's counsel that he or she would be willing to provide statements regarding Lee's "future dangerousness." *See* Am. Compl., Dkt. 17, ¶¶ 20-28. The amended complaint further alleges that the employee represented to counsel that "several" other employees would be willing to do the same and that authorization by the BOP would be required in order for them to provide statements. *Id.* Lee's counsel contacted counsel for the BOP and was referred to Program Statement 5840.04, which outlines the procedures for staff recommendations and correspondence to agencies and persons about BOP inmates, and 28 C.F.R. § 571.41. *Id.* ¶¶ 30-32.

The amended complaint alleges that the "actions and policies" of the BOP interfered with the BOP employee's ability to present information during the clemency process. However, there

15

is no factual allegation in the amended complaint that any BOP employee attempted to provide information in accordance with the established procedure outlined in Program Statement 5840.04 and had the request denied.  Nor is there any allegation that defendants hindered any employee's efforts to make such an attempt.  In other words, the existence of the policy does not chill any BOP employee's speech.  Because there is no allegation that any corrections staff was unable to provide their views about Lee, Lee in turn could not have suffered an injury in fact based on the challenged policy actions of the defendants.

Moreover, Lee and his prison guards cannot reasonably be characterized as having a close relationship based on the complaint.  There is no indication that Lee and the guards deal with each other in any fashion other than the limited interaction necessary for the guards to perform their job function.  More importantly, there is no showing of any hindrance to the BOP employee's ability to protect his own First Amendment interests.  There is no allegation in the amended complaint that BOP employees are unable to advocate for their own rights.  Nor is there any allegation that BOP employees face systemic practical challenges to filing suit, *cf. Powers*, 499 U.S. at 414 (permitting criminal defendants to raise equal-protection challenges to race-based peremptory strikes due to the limited potential equitable relief, small financial stake, and cost of litigation, all of which keeps jurors from raising the claims themselves); *Singleton v. Wulff*, 428 U.S. 106, 117 (1976) (allowing physicians to challenge a law excluding abortions from Medicaid coverage because women may be chilled from filing suit due to a desire to protect their privacy and because of the risk that the case would soon be moot).  Finally, there is no indication that the First Amendment claim of the BOP employee would be imminently moot, *cf. Singleton*, 428 U.S. at 117 (pregnant women); *Craig v. Boren*, 429 U.S. 190, 192 (1976) (men aged eighteen to twenty).

16

The Seventh Circuit case Lee cites—*Shimer v. Washington*, 100 F.3d 506, 508-09 (7th Cir. 1996) (clemency petitioners may assert First Amendment violations on behalf of prison guards where the guards have indicated their willingness to write on petitioner's behalf but refrained from doing so in light of restrictive prison policy)—was wrongly decided.  There the court made no attempt to assess the relationship between the prison guard and the inmate, or determine whether there is any hindrance to the prison guards' ability to advocate their own First Amendment rights. All the court said was that the general rule against third party standing is relaxed in the First Amendment context and that there was a potential chilling effect on the prison guard's protected speech.  The Supreme Court, however, has never said that the third-party standing standard is more relaxed in the First Amendment context.  Accordingly, *Shimer* is inapposite.

### B.    The BOP Employee's First Amendment Right to Support Lee's Clemency Petition

The standard governing a BOP employee's asserted First Amendment right to support an inmate's clemency petition is *Pickering v. Board of Education*, 391 U.S. 563, 574 (1968) and its progeny.  As the Supreme Court explained in *Garcetti v. Ceballos*, 547 U.S. 410, 418–20 (2006), "*Pickering* and the cases decided in its wake identify two inquiries to guide interpretation of the constitutional protections accorded to public employee speech. The first requires determining whether the employee spoke as a citizen on a matter of public concern.  If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech."  *Id.* at 418 (citation omitted).  "If the answer is yes, then the possibility of a First Amendment claim arises." *Id.*

Here, the BOP employee referenced by Lee is not attempting to speak as a private citizen. He is trying to provide his views and observations of Lee as a prison guard pursuant to his duties as a prison guard—views and observations he or she would not have obtained but for the prison

17

guard position, and that he otherwise is allowed to record as part of his official duties. In fact, BOP's policy on processing BOP employees' views about an inmate's clemency petition is designed precisely to address such a scenario. Thus, he is speaking in his capacity as the prison guard. *See Garcetti*, 547 U.S. at 421 ("The controlling factor in Ceballos' case is that his expressions were made pursuant to his duties as a calendar deputy. . . . We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline"). Moreover, the matter of whether Lee has been a model inmate (including whether he poses a danger to others) is inherently a matter of private concern—it concerns only Lee's clemency, which is a highly discretionary decision for the President in the first place. Accordingly, the BOP employee would have no cognizable First Amendment claim even if he decides to press it.

Even if the Court were to find that the BOP employee is speaking as a private citizen on a matter of public concern, BOP may still restrict his First Amendment expression to the extent necessary for BOP to "operate efficiently and effectively." *See Garcetti*, 547 U.S. at 418-20. Again, as the Supreme Court explained in *Garcetti*, "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services. . . . Public employees, moreover, often occupy trusted positions in society. When they speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions." *Id.* at 419.

Here, BOP clearly has a legitimate government interest in a streamlined process of providing information about an inmate's clemency application, particularly given the number of

18

federal inmates in its custody, the possibility of individual guard bias, and potential inmate influence.  BOP's policy statement provides that "[s]taff who want to record an observation, express an opinion, or provide a recommendation for an inmate must do so through the inmate's unit team, Associate Warden, or Warden."  *See* BOP Program Statement 5840.04, attached as Exhibit A to Siereveld Decl, Ex. 2.  This is so the unit team can then "combine and balance recommendations based on a knowledge of the inmate's history, adjustment, and progress in all areas."  *Id.*  As the BOP has explained, "the reasons for limiting the number of staff authorized to release official information are to: avoid implying "official" sanction of an evaluation or recommendation, when, in fact, it is one staff member's opinion[; and] avoid implying that a staff member's opinion provides a "total" evaluation of the inmate when that staff member's knowledge and perspective about the inmate may be quite limited."  *Id.*  These are compelling reasons, and they clearly outweigh any BOP officer's desire to express his views through the inmate's counsel as opposed to the institutional process governing the presentation of such views.  More importantly, here there is no contention that the Office of the Pardon Attorney is somehow unaware of Lee's record at the prison due to the existence of this streamlined process.  To the contrary, as discussed above, Lee's prison record was and will be fully available to the Pardon Attorney, such that Lee cannot establish that he will be injured by the BOP employees' alleged inability to express their views about Lee's behavior as an inmate.

### III.   THE BALANCE OF HARMS WEIGHS AGAINST ENTRY OF A PRELIMINARY INJUNCTION

In balancing the factors required by *Winter*, 555 U.S. at 20, it would be an abuse of discretion for the court to stay execution on the basis of such meritless claims as the two advanced by Lee, including one that is not even asserting Lee's own rights but the right of others.  The Supreme Court has repeatedly recognized that "a stay of execution is an equitable remedy.  It is

not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). Here, it is inappropriate to stay Lee's execution on the basis of the alleged inadequacy of the clemency process—when Lee's procedural due process rights in the process is at most minimal and he was given more than minimal due process—and of any BOP's employee asserted First Amendment right to support Lee's clemency petition—when there is no indication that any BOP employee could not himself advocate for his own rights, among other defects. The exercise of the Court's equitable power is particularly inappropriate here because there is no indication that provision of any BOP employee's letter would make any difference to the President's ultimate decision whether to grant a pardon to Lee, given the gravity of Lee's crime and the fact that Lee's prison record, *inter alia*, is already before the responsible Pardon Attorney.

The Supreme Court also has recognized that "the victims of crime have an important interest in the timely enforcement of a [death] sentence." *Hill*, 547 U.S. at 584. The impact "upon the families of victims and their communities" will "only be compounded by a stay of the execution." *Rhoades v. Reinke*, 830 F. Supp. 2d 1046, 1048–49 (D. Idaho), *aff'd*, 671 F.3d 856 (9th Cir. 2011). Once the "lengthy [post-conviction proceedings] have run their course," "finality acquires an added moral dimension," and "[o]nly with real finality can the victims of crime move forward." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998). "To unsettle these expectations," the Supreme Court said, "is to inflict a profound injury to the 'powerful and legitimate interest in punishing the guilty,' an interest shared by the [government] and the victims of crime alike." *Id*. For all these reasons, the balance of equities tip against granting a stay of execution.

20

## CONCLUSION

For the foregoing reasons, this Court should deny Lee's renewed motion for a preliminary injunction.

Respectfully submitted,

CODY HILAND
United States Attorney
Eastern District of Arkansas

By:

*/s/     Jamie G. Dempsey*

_____
SHANNON S. SMITH (AR Bar No. 94172)
JAMIE G. DEMPSEY (AR Bar No. 2007239)
Assistant United States Attorney
P.O. Box 1229
Little Rock, AR 72203
501.340.2600
shannon.smith@usdoj.gov
jamie.dempsey@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2020, I caused a true and correct copy of foregoing to be served on all counsel of record listed below via the Court's CM/ECF system.

Ruth Friedman
John Paul Nidiry
Federal Capital Habeas Project
Federal Defender for the District of Maryland
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
ruth_friedman@fd.org
john_nidiry@fd.org

David S. Victorson
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC  20004
david.victorson@hoganlovells.com

Pieter Van Tol
HOGAN LOVELLS US LLP
390 Madison Ave
New York, NY  10017
pieter.vantol@hoganlovells.com

*/s/    Jamie G. Dempsey*

Assistant United States Attorney

22