**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DANIEL LEWIS LEE** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 1:19-cv-03611** |
| | : | |
| **WILLIAM P. BARR, et al.** | : | |
| | : | |
| **Defendants.** | : | **EXECUTION SCHEDULED FOR** |
| | : | **JULY 13, 2020 AT 8:00AM EST** |

**PLAINTIFF LEE'S REPLY IN SUPPORT OF RENEWED MOTION FOR
PRELIMINARY INJUNCTION**

In opposing Mr. Lee's request for a preliminary injunction, Defendants do not dispute that Plaintiffs will suffer irreparable harm absent injunctive relief, nor do they seriously contest the equities involved in the thwarting of his due process rights and the officers' rights to free speech before his claims can be fully adjudicated. Rather, Defendants' argument is that Mr. Lee is unlikely to succeed on the merits of his claims and so cannot satisfy the likelihood of the success prong. But that is wrong—Mr. Lee has shown that he is likely to succeed on the merits as well.

The relief sought is necessary and appropriate in order to allow Mr. Lee and the correctional officers to exercise their rights unencumbered by Defendants' actions and policies, while Mr. Lee utilizes the mandatory procedures created for pursuing capital clemency relief. If Mr. Lee's execution is allowed to proceed without his having been provided a fair and unobstructed clemency process, he will have been deprived of the Fifth Amendment due process rights to which he is entitled.  By the same token, proceeding with the scheduled July 13, 2020

1

execution will extinguish the First Amendment rights of the officers who wish to provide information in support of Mr. Lee in the clemency process.

## I.    MR. LEE IS LIKELY TO SUCCEED ON THE MERITS OF HIS DUE PROCESS AND FREE SPEECH CLAIMS.

Mr. Lee is likely to demonstrate that Defendants' deliberate interference with his ability to obtain and present material evidence from correctional officers in support of his petition for clemency violates his Fifth Amendment right to due process. He is also likely to demonstrate that Defendants' actions and policies prohibiting correctional officers from expressing support for and providing critical information in support of his clemency petition violate their free speech rights under the First Amendment. *See* Dkt. 17, Amended Complaint, ¶¶ 48-67.

## A.    The Cases That Defendants Rely on in Their Response Do Little to Undercut the Strength of Mr. Lee's Due Process Claims.

Defendants have repeatedly pressed the argument that *Young v. Hayes*, 218 F.3d 850 (8th Cir. 2000)—a case that supports Mr. Lee's due process claims—is based on a "misconception" of *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272 (1998) (O'Connor, J., concurring), in which Justice O'Connor provided but two examples of where due process violations might occur in the clemency context. *See Woodard*, 523 U.S. at 289; *see also, e.g.,* Dkt. 10, p. 14; Opp'n (Dkt. 26), p. 17. But *Young* remains persuasive and instructive, and continues to represent a sound application of the basic principles established in *Woodard* based on the distinct set of facts before it: as in *Young*, Defendants have "deliberately interfered" with Mr. Lee's ability to obtain favorable, material evidence in the capital clemency process, *see* Amended Complaint, ¶¶ 48-54; and, as in *Young*, Defendants have deliberately interfered with Mr. Lee's efforts to present the President with compelling evidence, utilizing the mandatory procedures that the Government

itself has created. *See* Amended Complaint, ¶¶ 55-60; *see also Young,* 218 F.3d at 853. And, that interference, just as in *Young*, is unconscionable and violates Mr. Lee's due process rights. *Id.*

Looking beneath the surface of Defendants' recycled attacks on the merits of Mr. Lee's due process claims, there are factual distinctions between this case and ones on which Defendants rely. Among them is *Winfield v. Steele*, 755 F.3d 629 (8th Cir. 2014)—a case involving a Missouri capital clemency petition's due process claim that state actors obstructed his access to a prison employee's statement—which Defendants argue demonstrates the Eighth Circuit's reversal of course since *Young*. Opp'n (Dkt. 26), p. 17. Setting aside the fact that Defendants' evidence for that reversal is Judge Gruender's concurrence advocating for the abrogation of *Young*, the court in *Winfield* found due process protections were satisfied primarily because "the Department of Corrections now has furnished [the officer's] signed declaration in support of clemency to the governor" and because there was "no evidence that any other state employee has been deterred from speaking in support of clemency for Winfield." *See Winfield v. Steele*, 755 F.3d at 631 (noting "The Department of Corrections responded to Winfield's allegations by ensuring that the governor received [the officer's] signed declaration."). Mr. Lee, on the other hand, has not been able to obtain statements or testimony from any of the officers who have indicated their desire to provide such support precisely because of Defendants' obstruction. The court in *Winfield* went on to explain, "The decision in *Young v. Hayes*, 218 F.3d 850 (8th Cir. 2000), is distinguishable on its facts, and *we express no view* in this opinion on the merits of *Young.*" *Winfield*, 755 F.3d at 631 (emphasis added).

Another one of Defendants' cases, *Gissendaner v. Comm'r, Ga. Dep't of Corrections*, 794 F.3d 1327 (11th Cir. 2015), is similarly distinguishable. In *Gissendaner*, by the point at which the capital clemency petitioner there sought injunctive relief and a stay of execution, she

had submitted—and the state clemency board had received—written statements of support from correctional staff members, and one staff members had testified at the board hearing. *See Gissendaner*, 794 F.3d at 1328-29; *see also Gissendaner v. Bryson*, 2015 WL 874817, \*1 (N.D. Ga. Mar. 2, 2015).

In Mr. Lee's case, in contrast to both *Winfield* and *Gissendaner*, Defendants have blocked his ability to gather and present declarations or testimony from correctional officers who wish to support him, wholesale. And, as noted in detail in his Amended Complaint, the unique, personalized accounts of the officers who wish to support Mr. Lee in the clemency process powerfully refute the Government's allegations at trial that Mr. Lee poses a future danger in prison; and those accounts cannot be substituted with or filtered through regular performance evaluation procedures that prison administrators record as a matter of course. *See* Amended Complaint, ¶¶ 20-35.

Defendants also rely on *Anderson v. Davis*, 279 F.3d 674 (9th Cir. 2002), a case in which the Ninth Circuit denied a request for injunctive relief to a capital clemency petitioner who raised a due process-based challenge alleging the California governor had adopted a general policy of not granting clemency in capital cases. There was no issue in *Anderson*, as there is here, about government actors actively interfering with clemency procedures they themselves had created. *Anderson* further demonstrates that the courts since *Woodard* have found due process violations beyond the two examples provided by Justice O'Connor:

> Furthermore Anderson does not claim he has been misled in any way by the Governor, or that he failed to receive adequate notice of the issues to be considered in his request for clemency. In this respect, Anderson's case is easily distinguishable from the claims presented to this Court by way of mandamus in *Wilson v. United States Dist. Court (Siripongs)*, 161 F.3d 1185 (9th Cir. 1998).

*Anderson*, 279 F.3d at 676 (citing the *Wilson* case, where the court upheld the issuance of a temporary restraining order prohibiting a capital clemency petitioner's execution, where he and his counsel reasonably relied on but were misled by clemency authority about issues to be considered); *see Wilson*, 161 F.3d at 1186-88 (9th Cir. 1998).

Mr. Lee has set forth a sound legal basis, supported by detailed facts, demonstrating that Defendants' actions and policies are depriving him of established due process rights to meaningful access in the federal capital clemency process that the Government itself has established. If Defendants are permitted to go forward with his currently scheduled execution, those violations will be complete and rights afforded to him effectively trampled. His due process rights are, moreover, related to and interconnected with the free speech rights of the officers who wish to speak in support of him in the clemency process—a First Amendment claim on which Mr. Lee is also likely to prevail.

**B.      Mr. Lee is Likely to Succeed on the Merits of his First Amendment Claim.**

In their opposition to Mr. Lee's request for injunctive relief on First Amendment grounds, Defendants revisit an argument previously made in their motion to dismiss Mr. Lee's initial Complaint; and again in their motion to dismiss his Amended Complaint, based on his purported failure to include among his well-pled factual allegations that the correctional officers who wish to support him in the clemency process did not first submit their views through an "established procedure outlined in [Federal Bureau of Prisons (BOP)] Program Statement 5840.04." *See* Dkt. 14, p. 14-15; Dkt. 19, p. 15-16; Opp'n (Dkt. 26), p. 20-21. Defendants suggest that, in the absence of such allegations, Mr. Lee cannot establish standing on behalf of the correctional officers who wish to support him. Defendants' continued focus on this policy, as Mr. Lee has explained previously, is nothing more than a red herring.

First, as discussed at length in his response to Defendants' motion to dismiss the Amended Complaint, and as is clear from the Amended Complaint itself, Defendants' post-hoc reliance on Program Statement 5840.04, which they have claimed was "designed precisely to address such a scenario," cannot undo the fact that BOP counsel could not — at the relevant time of the request — identify a policy that squarely fit Mr. Lee's request for permission to obtain statements in support of clemency from the officers, even after she went "up the chain" of BOP command for guidance on the issue. *See* Dkt. 20, p. 13-14; Amended Complaint, ¶¶ 30-35; Opp'n (Dkt. 26), p. 23. Second, and perhaps more to the point, Defendants' belated reliance on Program Statement 5840.04 distracts from and misconstrues both the allegations made in his Amended Complaint and the nature of his First Amendment claim: the correctional officers who want to speak in support of Mr. Lee's clemency application wish to do so in their capacity as *private citizens*. Those officers, however, have been prevented from speaking in support of Mr. Lee in their capacity as private citizens, and they face potential adverse consequences for pursuing their free speech rights. *See* Amended Complaint, ¶¶ 24, 63-64.

    **1.**    **Mr. Lee has demonstrated he has standing to sue on behalf of the correctional officers who wish to support him in the clemency process.**

Mr. Lee has established the basis for bringing this lawsuit on behalf of the correctional officers who wish to support him. Although Defendants essentially treat the allegations Mr. Lee has made in connection with standing to sue as essentially non-existent, he has sufficiently set forth: (1) injury in fact, giving him a sufficiently concrete interest in the outcome of the issue in dispute; (2) the close relationship or alignment of interests between him and the correctional officers; and (3) the hindrance to the officers' ability to protect their own interests. *See Lepelletier v. F.D.I.C.*, 164 F.3d 37, 43 (D.C. Cir. 1999).

Mr. Lee has a life-or-death stake in the outcome of the capital clemency proceeding, and Defendants' actions and policies obstructing the officers' ability to provide information in support of him in the clemency process will affect him adversely. *See, e.g.,* Amended Complaint, ¶¶ 20-35; 62; *Lepelletier,* 164 F.3d at 43 (in case involving third-party standing, plaintiff's alleged loss of business opportunity easily satisfied "concrete interest" requirement); *Shimer v. Washington*, 100 F.3d 506, 508 (7th Cir. 1996) (such policies "hinder the flow of information—a procedural defect which may act to [the clemency petition's] detriment."). Mr. Lee's and the officers' interests are closely aligned and, indeed, they are "inextricably bound up." *See* Amended Complaint, ¶¶ 20, 22-24, 62, 66 (describing nature of their relationship, close interactions, and the basis for the officers' personal opinions about Mr. Lee); *see also Lepelletier*, 164 F.3d at 43; *Aid for Women v. Foulston*, 441 F.3d 1101, 1113 (10th Cir. 2006) (quoting *Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 (1984)); *Singleton v. Wulff*, 428 U.S. 106, 114-115 (1976). And Mr. Lee has shown the "hindrance" or "practical obstacles" preventing the officers from protecting their own interests, namely the threats of reprisal, discipline, discharge, and other potential job-related harms, which chills their speech. *See* Amended Complaint, ¶¶ 21-22, 62; *see also Lepelletier*, 164 F.3d at 43; *Joseph H. Munson Co., Inc.,* 467 U.S. at 956.

Defendants also incorrectly asserted—as they have done previously—that the First Amendment context in which Mr. Lee's claim arises is of no import. *See, e.g.,* Opp'n (Dkt. 26), p. 22. But the Supreme Court, and subsequently courts in this Circuit, have made clear that where the First Amendment is implicated, there are unique concerns and circumstances that justify lessening prudential limitations on standing especially where there is a danger of speech being chilled. *See Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (noting that Court has been

"quite forgiving with" the third-party standing criteria in certain circumstances, including within the context of the First Amendment) (citing *Joseph H. Munson Co., Inc.*, 467 U.S. at 956); *see also, e.g., Reese Brothers, Inc. v. U.S. Postal Service*, 531 F.Supp. 2d 64, 69-70 (D. D.C. 2008) (finding criteria for third-party standing relaxed in light of alleged danger of chilled speech); *Nelson v. International Ass'n of Bridge, Structural, and Ornamental Iron Workers*, 680 F. Supp. 16, 24 (D. D.C. 1988) (noting "normally stringent requirement of injury in fact has been relaxed, however, in the First Amendment context"); *Ryan, LLC v. Lew*, 934 F.Supp.2d 159, 167-68 (D. D.C. 2013); *see also,* Amended Complaint, ¶¶ 21-22, 62.

### 2. Mr. Lee can demonstrate he can succeed on the merits of his First Amendment claim.

One of Defendants' main contentions is that Mr. Lee cannot show that the correctional officers, who are public employees, wish to speak in their capacity as private citizens, or that they wish to speak on a matter of public concern. *See* Opp'n (Dkt. 26), p. 22-23. Speech by a public employee is protected where the employee speaks as a private citizen about a matter of public concern. *See Pickering v. Board of Ed. Of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568 (1968). Defendants gloss over the well-pled allegations regarding the officers' interest in speaking as private citizens, *see* Amended Complaint, ¶¶ 24, 63-64, by attempting to shoehorn those factual allegations into the BOP policy—Program Statement 5840.04—that, as noted previously, they have belatedly claimed applies to Mr. Lee's case (despite its prior equivocations on the matter). Mr. Lee has sufficiently described the nature of the speech at issue and the manner in which the officers' speech has effectively been chilled. Mr. Lee has explained that the officers are not seeking to speak in their capacity as employees, in uniform, or in their on-the-job setting, and that providing expressions of support to the Office of the Pardon Attorney is not part of their job duties. *See id.*; *see also id.* at ¶ 23.

In advancing their strained theory of private speech by public employees, Defendants also try to sidestep *Lane v. Franks*, 573 U.S. 228 (2014), which represents the most recent, and instructive, analysis of the issue. There, the Court explained:

> the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech. The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.

*Lane*, 573 U.S. at 234, 240; *See* Opp'n (Dkt. 26), p. 22-23. While the officers' speech may concern their duties or be informed by those duties, they are providing expressions of support for Mr. Lee's clemency bid as private citizens.

Defendants also promote a highly constrained view of what a "matter of public concern" is under *Pickering*, limiting the contours of the suppressed speech to "whether Lee has been a model inmate." *See* Opp'n (Dkt. 26), p. 23. But, as Mr. Lee has set forth in the Amended Complaint, the anticipated content of the officers' speech is not so limited, as demonstrated by the facts before the Court and under the relevant law. *See* Amended Complaint, ¶ 64. Defendants secured Mr. Lee's death sentence based on the myth that he was a future danger, a myth dispelled, in part, by the personal opinions the officers have formed in getting to know Mr. Lee, and which they wish to share in the clemency process, *see id.* at ¶¶ 20-29; the officers' anticipated speech also pertains to and refutes what Defendants have claimed about him in the public sphere, *see, e.g., id.,* ¶ 26 (noting inaccurate portrayal of Mr. Lee), and relates to the Government's wielding its awesome power to execute him despite grave constitutional violations and serious allegations of misconduct. *See also id.* at ¶¶ 15, 64 (citing Defendants' press release announcing the setting of Mr. Lee's December 2019 execution date).[1] These are matters of

---

[1] *See also* Press Release, U.S. Department of Justice, "Executions Scheduled for Four Federal Inmates Convicted of Murdering Children" (June 15, 2020), *available at*

public concern. Speech, as the Supreme Court explained in *Lane*, "involves matters of public concern 'when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane*, 573 U.S. at 241 (2014) (quoting *Snyder v. Phelps*, 131 S. Ct. 1207, 1216 (2011)).

Finally, Defendants, in claiming that Mr. Lee cannot demonstrate the merits of his First Amendment claim because its interests outweigh the free speech interests of the officers, again rely on Program Statement 5840.04 and list reasons for the "streamlined process" created under that policy. *See* Opp'n (Dkt. 26), p. 23-24. But the balancing of interests at issue here, much like the question of whether the speech relates to a matter of public concern, is a fact-intensive inquiry related to content, form, and context, among other considerations, and Defendants' citations to policy and policy rationales cannot and should not be simply taken at face value, especially where, as noted in the Amended Complaint and discussed previously, Mr. Lee was provided with less than a clear answer regarding the policies being invoked to prohibit the officers' speech. *See, e.g., Lane*, 573 U.S. at 241-42 ("We have also cautioned, however, that a 'stronger showing [of government interests] may be necessary if the employee's speech more substantially involve[s] matters of public concern.") (citing *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)); *Shimer*, 100 F.3d at 510 (court deciding not to take the State's citation of prison policy and rationales at face value in balancing interests between prison guards who wished to participate in clemency process and the State).

---

https://www.justice.gov/opa/pr/executions-scheduled-four-federal-inmates-convicted-murdering-children (last visited July 1, 2020).

## II.    THE REMAINING PRELIMINARY INJUNCTION FACTORS ALSO FAVOR MR. LEE.

The equities in this case are firmly on Mr. Lee's side. Defendants make no serious effort to challenge the balance of equities here. Rather, they trivialize Mr. Lee's and the officers' claims to relief, and claim the Court would be abusing its discretion if it were to grant the requested relief. *See* Opp'n (Dkt. 26), p. 24-25. Mr. Lee, though, has demonstrated he can establish the merits of his claims.

Defendants forgo altogether addressing the irreparable harm to Mr. Lee and the officers in the absence of injunctive relief. *See* Plaintiff's Renewed Motion for Preliminary Injunction (Dkt. 24), p. 21-22 (plaintiff's discussion of irreparable harm). Instead, they submit a litany of cases that generally describe a State's interest in pursuing executions in the name of seeking finality for the victims, mirroring what they have claimed in the public sphere. *See* Opp'n (Dkt. 26), p. 25; *see supra* n.1 (DOJ press release stating, "We owe it to the victims of these horrific crimes, and to the families left behind to carry forward the sentence imposed by our justice system"). But those cases and claims minimize and obscure the extraordinary equities in this case.

As noted in his renewed motion for injunctive relief, those most familiar with this case, including in roles usually supportive of a death sentence, all oppose Mr. Lee's execution. *See* Plaintiff's Renewed Motion for Preliminary Injunction (Dkt. 24), p. 23. Indeed, the victims' family members who faithfully attended every day of the trial have made their opposition to Mr. Lee's execution known publicly and to the Department of Justice directly. They have also made clear that an execution would not honor the actual victims of the crime. *See* Ben Miller & Daniel S. Harawa, *Why the Attorney General's Concern About Crime Victims and Their Families Rings*

*Hollow,* The Appeal (Jan. 6, 2020), https://bit.ly/2BnphAJ (last visited July 2, 2020) (quoting

Earlene Peterson as saying "it would 'shame my daughter that someone has to die for her'").

The rare opposition of the lead prosecutor and trial judge—one sought the death penalty

and the other presided over both the trial and post-conviction proceedings—should give the

Defendants pause. That they were so concerned as to take the remarkable step of speaking up

says volumes about the uniqueness of this case—indeed, it is a consistent theme here reflected

also in the correctional officers who wish to support him in his bid for clemency. Given the lack

of expected support for executing Daniel Lee, in this case, it is difficult to see in whose interest

the sudden rush to execution him might be.

The equities in this case, and the public's important interest in ensuring that the

correctional officers' views about Mr. Lee are voiced in the clemency process, tip in favor of his

request for relief.

## CONCLUSION

For the foregoing reasons, Mr. Lee respectfully requests that this Court issue a

preliminary injunction to prevent ongoing harm to his and the correctional officers'

constitutional rights; enjoin Defendants from deliberately interfering with and obstructing his

ability to obtain and present favorable, material evidence in the executive clemency process;

from infringing upon the free speech rights of the correctional officers and from subjecting the

correctional officers to reprisal for exercising those rights; and, enjoin Defendants from

executing him so that he has an opportunity to obtain and present this evidence to decision-

makers in the clemency process.

12

Respectfully submitted,

/s/ Pieter Van Tol
Pieter Van Tol
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 909-0661
pieter.vantol@hoganlovells.com

/s/ David Victorson
David Victorson
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
(202) 637-5600
david.victorson@hoganlovells.com

/s/ John Nidiry
John Nidiry
Federal Capital Habeas Project
Federal Defender for the District of Maryland
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 807-1267
John_Nidiry@fd.org

Counsel for Daniel Lee

Dated: July 2, 2020

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia using the CM/ECF system on July 2, 2020. Notice of this filing will be sent by email to the all parties that are registered users, including counsel for the Defendants listed below; and the filing may be accessed through the Court's CM/ECF System.

Shannon S. Smith
Assistant United States Attorney
P.O. Box 1229
Little Rock, AR 72203
(501) 340-2600
Shannon.smith@usdoj.gov

Jamie G. Dempsey
Assistant United States Attorney
P.O. Box 1229
Little Rock, AR 72203
(501) 340-2600
Jamie.dempsey@usdoj.gov

Respectfully submitted,

/s/ John Nidiry
John Nidiry
Federal Capital Habeas Project
Federal Defender for the District of Maryland
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 807-1267
John_Nidiry@fd.org

Counsel for Daniel Lee

Dated: July 2, 2020